FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
1/6/2022 5:19 PM
KATHLEEN VIGIL CLERK OF THE COURT
Cherry Morfin

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT

No.   D-101-CV-2022-00034

Case assigned to Wilson, Matthew Justin

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of
ROLANDA LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

        Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL,
EDWARD KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW MEXICO,
AND NEW MEXICO DEPARTMENT OF TRANSPORTATION,

        Defendants.

## COMPLAINT FOR WRONGFUL DEATH, NEGLIGENCE, NEGLIGENCE *PER SE*, DRAM SHOP, INTENTIONAL SPOLIATION OF EVIDENCE, AND LOSS OF CONSORTIUM

COME NOW Plaintiffs, Barry Green, as Personal Representative of the Wrongful Death Estate of Rolanda Lahi, deceased, and Feliz Rael, as Guardian ad Litem of A.S. and A.S., minor children, by and through their attorneys, DeLara | Supik | Odegard P.C., and for their Complaint for Wrongful Death, Negligence, Negligence *Per Se*, Dram Shop, Intentional Spoliation of Evidence, and Loss of Consortium, state and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    This is an action for wrongful death and other damages due to injuries sustained by Rolanda Lahi due to an automobile crash on September 12, 2021 that occurred in Albuquerque, New Mexico.

2.      Plaintiff Barry Green brings this lawsuit in his capacity as personal representative of the wrongful death estate of Rolanda Lahi, deceased.

3.      Plaintiff Barry Green was appointed the Personal Representative for purposes of the Wrongful Death Act on December 8, 2021 in Cause No. D-101-CV-2021-02560 and is a resident of Santa Fe, Santa Fe County, State of New Mexico.

4.      Plaintiff Feliz Rael brings this lawsuit in her capacity as Guardian ad Litem of Rolanda Lahi's two minor children, A.S. and A.S.

5.      Plaintiff Feliz Rael was appointed the Guardian ad Litem of A.S. and A.S. on January 5, 2022 in Cause No. D-101-CV-2021-02656 and is a resident of Albuquerque, Bernalillo County, New Mexico.

6.      Upon information and belief, at all relevant times, Defendant Laguna Development Corporation d/b/a Route 66 Casino Hotel (hereinafter "Route 66 Casino") is a casino and hotel operated by the Pueblo of Laguna that has its principal place of business in Albuquerque, New Mexico, is an owner and/or licensee under the New Mexico Liquor Control Act, and was doing business in New Mexico at the time of the incident that is the subject of this Complaint.

7.      Upon information and belief, at all relevant times, Defendant Edward Khader (hereinafter "Defendant Khader") is a resident of Bernalillo County, and the Corporate Director of IT (information technology) and/or an employee and/or an agent of Defendant Route 66 Casino.

8.      Upon information and belief, at all relevant times, Defendant Adrian Fox (hereinafter "Defendant Fox") is a resident of Sandoval County, New Mexico and the General Manager and/or an employee and/or an agent of Defendant Route 66 Casino.

9.    Upon information and belief, at all times relevant, Defendant Jesse Orozco (hereinafter "Defendant Orozco") was the Surveillance Manager and/or an employee and/or an agent of Defendant Route 66 Casino.

10.    Lucas Lee was a resident of McKinley County, New Mexico and died in the subject crash on September 12, 2021. A Personal Representative will be appointed for the Estate of Lucas Lee and this Complaint will be amended once that occurs.

11.    Defendant State of New Mexico and Defendant New Mexico Department of Transportation ("NMDOT") are governmental entities within the meaning of the Tort Claims Act, NMSA 1978, §§41-4-1 *et seq.*, and, at all relevant times, are responsible for the roads where the subject crash occurred.

12.    Venue is proper in the First Judicial District.

13.    This Court has jurisdiction over the parties and the subject matter of this action and Defendant Route 66 Casino and its officers/employees/agents have waived any defense of sovereign immunity as to Plaintiffs' claims. Further, Plaintiffs have specifically elected to bring claims against all Defendants in New Mexico state court.

14.    All of the acts complained of herein which constitute the basis for liability against Defendant State of New Mexico and Defendant NMDOT come within the scope of the waiver of immunity contained within the New Mexico Tort Claims Act, NMSA § 41-4-11(A) and Plaintiffs have given written notice of the claims contained herein against in compliance with the requirements of the New Mexico Tort Claims Act, NMSA § 41-4-16.

## FACTUAL BACKGROUND

15.    Plaintiffs reallege and incorporate all allegations contained in the above paragraphs, as if fully set forth herein.

16.     On January 18, 2018, Lucas Lee, who was driving a 2015 Dodge, was pulled over by a New Mexico State Police Officer after he made a U-turn nearly hitting a pedestrian on the sidewalk and then drove onto the median without using his turn signal.

17.     During the January 18, 2018 stop, Lucas Lee smelled of alcohol, had blood shot watery eyes, slurred speech, and failed the standardized field sobriety tests performed by the police officer, which resulted in Lucas Lee being arrested.

18.     At the police station on January 18, 2018, Lucas Lee provided two breath samples into the intoxilyzer which showed a positive blood alcohol concentration (BAC) of 0.12 and 0.11.

19.     Lucas Lee was later charged with 1) DWI Driving While Under the Influence of Liquor and/or Drugs (.08 or Above) and 2) failure to maintain traffic lane, for the January 18, 2018 incident, and convicted of these charges after a trial on July 24, 2018.

20.     Lucas Lee appealed his convictions regarding the January 18, 2018 incident to the Eleventh Judicial District Court, County of McKinley, but on or about June 10, 2019, District Court Judge Louis E. DePauli, Jr. found that Lucas Lee was guilty of Driving While Under the Influence of Liquor or Drugs (.08 or above).

21.     On September 11, 2021, Lucas Lee and Roseanna Tom got off work in Gallup, New Mexico and drank alcohol all night, to the point that they spent the night in Lucas Lee's Dodge Grand Caravan.

22.     On September 12, 2021, Lucas Lee and Roseanna Tom drove toward Albuquerque and stopped at Defendant Route 66 Casino.

23.     While at Defendant Route 66 Casino on September 12, 2021, Lucas Lee and Roseanna Tom were overserved and drank alcohol at no less than one of the bars at the casino.

Mr. Lee and Ms. Tom left one of the bars and attempted to gain entry into a different bar inside the casino, but according to Ms. Tom, they were denied entry based on their state of intoxication.

24.    Lucas Lee and Roseanna Tom decided that they would drive into Albuquerque to get more alcohol.

25.    At no point after refusing them alcohol service did anyone at Defendant Route 66 Casino attempt to prevent Mr. Lee and Ms. Tom from leaving the casino after Defendant Route 66 Casino knew or should have known that they were intoxicated, unfit to drive, and a danger to themselves and the public.

26.    At no point after refusing them alcohol service did anyone at Defendant Route 66 Casino attempt to offer Mr. Lee and Ms. Tom a ride to prevent them from driving after Defendant Route 66 Casino knew or should have known that they were intoxicated, unfit to drive, and a danger to themselves and the public.

27.    Lucas Lee and Roseanna Tom left Defendant Route 66 Casino, with Lucas Lee driving the vehicle.  Ms. Tom later stated to police that they were both under the influence of alcohol and "buzzing."

28.    At approximately 3:57 p.m., Lucas Lee was driving eastbound on I-40 towards Albuquerque when he went left of center, drove into westbound I-40 traffic, and collided into a vehicle driven by Rolanda Lahi.

29.    Rolanda Lahi had completed her work for the day and was going to pick up one of her minor children when the crash occurred.

30.    The crash occurred at mile marker 143, not far from Defendant Route 66 Casino.

31.    The area of I-40 where the crash occurred and the areas to the west and east were dangerous and had no traffic barriers or meaningful safety devices separating west and eastbound

traffic to keep vehicles within their roadway and prevent crashes, such as the one on September 12, 2021.

32.    Due to the crash, both Rolanda Lahi and Lucas Lee died.

33.    Rolanda Lahi needed medical personnel to extricate her from her vehicle before the Office of the Medical Examiner (OMI) could transport her from the scene.

34.    At the time of the crash, Rolanda Lahi was observed by a witness to be driving at or slightly below the speed limit and obeying all traffic laws.

35.    On September 14, 2021, a Bernalillo County Sheriff's Deputy from the Traffic Investigations Unit made telephonic contact with Defendant Orozco.  During that call Defendant Orozco told the deputy that he had received an anonymous phone call from a female who reported that Lucas Lee's vehicle had been at Defendant Route 66 Casino just before the subject crash, and that Defendant Orozco was provided with a description of Lucas Lee's vehicle as well as the names of both Mr. Lee and Ms. Tom.

36.    During the September 14, 2021 call, Defendant Orozco also told the deputy that he had located Lucas Lee and Roseanna Tom in the casino on the day of the crash and that he would continue the investigation on his end and provide the deputy with any pertinent details at a later time.

37.    On October 18, 2021, the deputy made telephonic contact with Defendant Orozco again.  During this conversation, Defendant Orozco informed the deputy that Defendant Route 66 Casino's investigation had been completed, but that Defendant Orozco's supervisor no longer wished to cooperate with the police out of fear of possible future litigation.

## COUNT I:  WRONGFUL DEATH
### (All Defendants)

38.    Plaintiffs reallege and incorporate all allegations contained in the above paragraphs, as if fully set forth herein.

39.    The acts and omissions of Defendants were wrongful and negligent and were the proximate cause of Rolanda Lahi's death.

40.    Plaintiff Green is entitled to recover all damages legally available under the New Mexico Wrongful Death Act, NMSA §41-2-1, including but not limited to: the pain and suffering experienced prior to the death of Rolanda Lahi; the aggravating circumstances attending her death; the reasonable expenses of necessary medical care and treatment and funeral and burial; lost earning capacity and the value of lost household services; and the monetary worth of the life of Rolanda Lahi, all in an amount to be proven at trial.

41.    Defendants' actions were willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiff Green to an award of punitive damages.

## COUNT II:  NEGLIGENCE
### (Defendant Estate of Lucas Lee)

42.    Plaintiffs reallege and incorporate all allegations contained in the above paragraphs, as if fully set forth herein.

43.    Defendant Estate of Lucas Lee failed to exercise ordinary care when operating a motor vehicle by driving while intoxicated; driving on the wrong side of the road; failing to keep a proper lookout; failing to take proper evasive action to avoid the collision; failing to sound a horn or give warning at any time prior to the collision; failing to maintain his vehicle; failing to maintain control of his vehicle; and, consequently, crashing into and ultimately killing Rolanda Lahi.

44.    Defendant Estate of Lucas Lee was negligent because he breached his duties to drive a motor vehicle in a safe and reasonable manner under the circumstances.

45.    Defendant Estate of Lucas Lee's negligence is a proximate cause of Rolanda Lahi's death.

46.    As a direct and proximate result of the negligence of Defendant Estate of Lucas Lee, Plaintiffs have suffered damages.

47.    Defendant Estate of Lucas Lee's actions were willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiffs to an award of punitive damages.

### COUNT III:  NEGLIGENCE *PER SE*
### (Defendant Estate of Lucas Lee)

48.    Plaintiffs reallege and incorporate all allegations contained in the above paragraphs, as if fully set forth herein.

49.    Defendant Estate of Lucas Lee violated New Mexico state statutes and regulations. Specific violations include, but are not limited to:

    a.  N.M. Stat. Ann. § 66-8-101, Homicide by vehicle;

    b.  N.M. Stat. Ann. § 66-8-102, Driving under the influence of intoxicating liquor or drugs;

    c.  N.M. Stat. Ann. § 66-8-113, Reckless driving;

    d.  N.M. Stat. Ann. § 66-7-337, Drivers to exercise due care;

    e.  N.M. Stat. Ann. § 66-7-3, Required obedience to traffic laws;

50.    Plaintiffs were in the class of persons intended to be protected by the above laws, as contemplated by the New Mexico Legislature or other government body.

51.    Plaintiffs were a member of the class of persons sought to be protected by said statutes.

52.     Defendant Estate of Lucas Lee violated said statutes without just cause or excuse.

53.     Defendant Estate of Lucas Lee is negligent *per se* based on these statutory and regulatory violations.

54.     Defendant Estate of Lucas Lee's violations of state statutes and regulations directly and proximately caused Rolanda Lahi's death and Plaintiffs' damages.

55.     Defendant Estate of Lucas Lee's actions were willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiff to an award of punitive damages.

### COUNT IV:  DRAMSHOP, NEGLIGENCE, AND NEGLIGENCE *PER SE*
**(Defendants Route 66 Casino, Khader, Fox, and Orozco)**

56.     Plaintiffs incorporate the foregoing allegations of the Complaint as if restated herein.

57.     At all times relevant to this Complaint, Defendants owned, leased, managed, operated, surveilled, and/or were employed by Route 66 Casino and were licensed under the provisions of the Liquor Control Act.

58.     At all times relevant to this Complaint, Defendants acted individually or through their agents and employees, who were acting within the course and scope of their employment/agency.

59.     Defendants, whether individually or through their agents and employees, knew or should have known that Lucas Lee was intoxicated, had been overserved alcohol at Route 66 Casino, and was a danger to himself and the public.

60.     At no time subsequent to the conclusion of his drinking at Route 66 Casino did the Defendants, acting in their individual capacity or through their agents and employees, attempt to stop Lucas Lee or prevent or deter him from driving his vehicle from the casino in his intoxicated state.

61.    The Defendants' sale, service, giving or delivering alcoholic beverages to Lucas Lee, or aiding in the procurement or consumption of alcoholic beverages to Lucas Lee, was a violation of the duty of care owed to Plaintiffs established by statutory law, regulation, and by common law.

62.    Defendants breached their duty when they sold, served, gave or delivered alcoholic beverages to Lucas Lee, and/or aided in the procurement or consumption of alcoholic beverages to Lucas Lee while he was intoxicated when it was, or should have been, reasonably apparent to Defendants and their agents and employees.  The breaches of duty include, but are not limited to:

    a.  New Mexico Liquor Control Act, N.M. Stat. Ann. § 60-3A-1, *et seq.* (including § 60-7A-16);

    b.  Tort Liability for alcoholic sales or service, N.M. Stat. Ann. § 41-11-1.

    c.  Sale to intoxicated persons, N.M. Stat. Ann. § 60-7A-16.

63.    The Defendants' sale, service, giving or delivering alcoholic beverages to Lucas Lee, or aiding in the procurement or consumption of alcoholic beverages to Lucas Lee, was a cause of the death of Rolanda Lahi.

64.    In addition, Defendants' failure to prevent or deter Lucas Lee from leaving the casino when Defendants, individually and/or through their agents/employees, knew or should have known that he was a danger to himself and the public, was a cause of the death of Rolanda Lahi.

65.    Defendants, individually and/or through their agents/employees, acted with gross negligence or reckless disregard for the safety of Lucas Lee, which was a cause of the death of Rolanda Lahi.

66.    Defendants' negligence, individually and/or through their employees/agents, also includes, but is not limited to, the following:

    a.  failure to retain properly trained security and/or serving personnel;

b.   negligently hiring, training, and retaining agents and employees who failed to comply with applicable New Mexico law regarding serving and/or providing alcohol to intoxicated individuals;

c.   failing to follow the law and/or their own policies and procedures regarding intoxicated individuals and police investigations;

d.   training or permitting agents and employees to impede police investigations.

67.   Defendants, individually and/or through their agents/employees specifically and knowingly withheld critical information and evidence from investigating police regarding alcohol service to Lucas Lee at Route 66 Casino on the date of the crash; video surveillance of the movements and actions of Lucas Lee inside and outside of the casino on the date of the crash; and the acts or omissions of Defendants in relation to Lucas Lee on the date of the crash.

68.   Pursuant to the Class III Indian Gaming Compact Between the State of New Mexico and the Pueblo of Laguna (signed July 29, 2015)(hereinafter "the Compact"), Defendant Route 66 Casino was required to enact provisions that:

a.   prohibit an employee of Defendant Route 66 Casino from selling, serving, giving or delivering an alcoholic beverage to an intoxicated person or from procuring or aiding in the procurement of any alcoholic beverage for an intoxicated person at Route 66 Casino;

b.   require Defendant Route 66 Casino's employees that dispense, sell, serve or deliver alcoholic beverages to attend Alcohol Server Education Classes similar to those classes provided for in the New Mexico Liquor Control Act;

c.   require that Defendant Route 66 Casino purchase and maintain a liquor liability insurance policy that will provide, at a minimum, personal injury coverage of one million dollars ($1,000,000) per incident and two million dollars ($2,000,000) aggregate per policy year; and

d.   prohibit Defendant Route 66 Casino from providing, allowing, contracting to provide or arranging to provide alcoholic beverages for no charge or at reduced prices within Route 66 Casino.

69.   Pursuant to the Compact, Defendant Route 66 Casino agreed to maintain in effect policies of liability insurance insuring Defendant Route 66 Casino, their agents and employees

11

against claims, demands or liability for bodily injury and property damages by Plaintiffs in an amount of at least ten million dollars ($10,000,000) per occurrence and ten million dollars ($10,000,000) annual aggregate.  This amount was to increase as of the fifth anniversary of the Compact.

70.    At all relevant times, Defendant Route 66 Casino is vicariously liable for torts of its officers, managers, employees, and agents under the concepts of agency and *respondeat superior*.

71.    In addition, Defendant Route 66 Casino is jointly and severally liable for the negligence of all named Defendants in this lawsuit.

72.    Defendants' actions were willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiffs to an award of punitive damages.

## COUNT V:  NEGLIGENCE
### (Defendants State of New Mexico and NMDOT)

73.    Plaintiff incorporates the foregoing allegations of the Complaint as if restated herein.

74.    The State of New Mexico and NMDOT had knowledge that the roadway where the crash occurred, including the areas to the east and west of the crash, was unsafe, in a state of disrepair, and had the potential to cause injury and death to the public.

75.    Prior to the subject crash, Defendants State of New Mexico and/or NMDOT had taken no action to install traffic barriers or meaningful safety devices for separating west and eastbound traffic to keep vehicles within their roadway and prevent crashes, such as the one on September 12, 2021.

76.    Defendants State of New Mexico and/or NMDOT were negligent in failing to properly maintain, correct or repair the road where the crash occurred.

77.     The negligence by the State of New Mexico and/or NMDOT was an actual and proximate cause of injuries suffered by Plaintiffs.

## COUNT VI:  INTENTIONAL SPOLIATION OF EVIDENCE
### (Defendants Route 66 Casino, Khader, Fox, and Orozco)

78.     Plaintiff incorporates the foregoing allegations of the Complaint as if restated herein.

79.     Prior to and on September 12, 2021, Defendant Route 66 Casino had a video surveillance system with many video cameras inside and outside of the casino.

80.     Prior to an on September 12, 2021, Defendant Route 66 Casino had a Corporate Director of IT (Defendant Khader), a General Manager (Defendant Fox), and a Surveillance Manager (Defendant Orozco).

81.     On September 14, 2021, a Bernalillo County Sheriff's Deputy from the Traffic Investigations Unit made telephonic contact with Defendant Orozco.  During that call Defendant Orozco told the deputy that he had received an anonymous phone call from a female who reported that Lucas Lee's vehicle had been at Defendant Route 66 Casino just before the subject crash, and that Defendant Orozco was provided with a description of Lucas Lee's vehicle as well as the names of both Mr. Lee and Ms. Tom.

82.     During the September 14, 2021 call, Defendant Orozco also told the deputy that he had located Lucas Lee and Roseanna Tom in the casino on the day of the crash and that he would continue the investigation on his end and provide the deputy with any pertinent details at a later time.

83.     On October 18, 2021, the deputy made telephonic contact with Defendant Orozco again.  During this conversation, Defendant Orozco informed the deputy that Defendant

Route 66 Casino's investigation had been completed, but that Defendant Orozco's supervisor no longer wished to cooperate with the police out of fear of possible future litigation.

84.     Upon information and belief, Defendant Orozco's supervisors included Defendant Khader and Defendant Fox.

85.     On November 5, 2021, Plaintiffs sent a spoliation letter to Defendants requesting preservation of evidence, including all surveillance footage inside and outside of the casino for the date of September 12, 2021.

86.     On November 17, 2021, November 18, 2021, and November 29, 2021, Plaintiffs made additional requests upon Defendants for the surveillance footage for the date of September 12, 2021, but as of the filing of this Complaint, nothing was ever provided.

87.     Defendants have intentionally spoliated some, or all, of the surveillance footage for the date of the subject crash.

88.     At the time of and following the subject crash, the potential for a lawsuit existed.

89.     Based upon the statements made by Defendant Orozco to law enforcement, Defendants knew of the existence of a potential lawsuit related to the subject crash and had reviewed surveillance footage of Lucas Lee at Route 66 Casino.

90.     Defendants refused to provide evidence to law enforcement specifically due to the fear of possible litigation.

91.     Defendants disposed of, destroyed, mutilated or significantly altered potential evidence.

92.     By destroying this evidence, Defendants intended to limit their financial responsibility to Plaintiffs and/or disrupt or defeat a lawsuit resulting from the subject crash.

93.    A causal relationship exists between Defendants' act of spoliation and the ability to prove the liability of these Defendants in this case.

94.    Plaintiff has suffered damages as a result of Defendants' intentional spoliation of evidence.

## COUNT VII:  LOSS OF CONSORTIUM
### (All Defendants)

95.    Plaintiffs incorporate the foregoing allegations of the Complaint as if restated herein.

96.    Minor children A.S. and A.S. had a close familial relationship with their mother, Rolanda Lahi.

97.    The negligence by Defendants was the actual and proximate cause of injuries suffered by Plaintiff Rael, as Guardian ad Litem for A.S. and A.S., including loss of love, society, support, and companionship of their mother, Rolanda Lahi.

98.    Defendants' actions were deliberate, willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiff Rael, as Guardian ad Litem for A.S. and A.S., to an award of punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants for compensatory damages (jointly and severally, as set forth above), punitive and/or exemplary damages, costs, pre-judgment and post-judgment interest, and for such other appropriate relief as is just and proper.

DELARA | SUPIK | ODEGARD P.C.


By ___*/s/ Christopher J. Supik*_____
        Christopher J. DeLara
        Christopher J. Supik
        David C. Odegard
        P.O. Box 91596
        Albuquerque, NM 87199-1596
        (505) 999-1500
        chris@delaralaw.com
        supik@delaralaw.com
        odegard@delaralaw.com
        *Attorneys for Plaintiffs*

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
1/6/2022 5:19 PM
KATHLEEN VIGIL CLERK OF THE COURT
Cherry Morfin

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT

No. ___D-101-CV-2022-00034___

Case assigned to Wilson, Matthew Justin

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of
ROLANDA LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

       Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL,
EDWARD KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW MEXICO,
AND NEW MEXICO DEPARTMENT OF TRANSPORTATION,

       Defendants.

## JURY DEMAND

COME NOW Plaintiffs, Barry Green, as Personal Representative of the Wrongful Death

Estate of Rolanda Lahi, deceased, and Feliz Rael, as Guardian ad Litem of A.S. and A.S., minor

children, by and through their attorneys, DeLara | Supik | Odegard P.C., and demand trial by jury

consisting of six (6) jurors and deposit one hundred and fifty dollars ($150.00) with the Clerk of the

Court herewith.

DELARA | SUPIK | ODEGARD P.C.


By ____/s/ Christopher J. Supik_____
        Christopher J. DeLara
        Christopher J. Supik
        David C. Odegard
        P.O. Box 91596
        Albuquerque, NM 87199-1596
        (505) 999-1500
        chris@delaralaw.com
        supik@delaralaw.com
        odegard@delaralaw.com
        *Attorneys for Plaintiffs*

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
1/12/2022 3:24 PM
KATHLEEN VIGIL CLERK OF THE COURT
Edith Suarez-Munoz

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

   **Plaintiffs,**

**v.**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

   **Defendants.**

**No. D-101-cv-2022-00034**

### FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH, NEGLIGENCE, NEGLIGENCE *PER SE*, DRAM SHOP, INTENTIONAL SPOLIATION OF EVIDENCE, AND LOSS OF CONSORTIUM

  COME NOW Plaintiffs, Barry Green, as Personal Representative of the Wrongful Death

Estate of Rolanda Lahi, deceased, and Feliz Rael, as Guardian ad Litem of A.S. and A.S., minor

children, by and through their attorneys, DeLara | Supik | Odegard P.C., and for their First

Amended Complaint for Wrongful Death, Negligence, Negligence *Per Se*, Dram Shop, Intentional

Spoliation of Evidence, and Loss of Consortium, state and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

  1.  This is an action for wrongful death and other damages due to injuries sustained by

Rolanda Lahi due to an automobile crash on September 12, 2021 that occurred in Albuquerque,

New Mexico.

2.      Plaintiff Barry Green brings this lawsuit in his capacity as personal representative of the wrongful death estate of Rolanda Lahi, deceased.

3.      Plaintiff Barry Green was appointed the Personal Representative for purposes of the Wrongful Death Act on December 8, 2021 in Cause No. D-101-CV-2021-02560 and is a resident of Santa Fe, Santa Fe County, State of New Mexico.

4.      Plaintiff Feliz Rael brings this lawsuit in her capacity as Guardian ad Litem of Rolanda Lahi's two minor children, A.S. and A.S.

5.      Plaintiff Feliz Rael was appointed the Guardian ad Litem of A.S. and A.S. on January 5, 2022 in Cause No. D-101-CV-2021-02656 and is a resident of Albuquerque, Bernalillo County, New Mexico.

6.      Upon information and belief, at all relevant times, Defendant Laguna Development Corporation d/b/a Route 66 Casino Hotel (hereinafter "Route 66 Casino") is a casino and hotel operated by the Pueblo of Laguna that has its principal place of business in Albuquerque, New Mexico, is an owner and/or licensee under the New Mexico Liquor Control Act, and was doing business in New Mexico at the time of the incident that is the subject of this Complaint.

7.      Upon information and belief, at all relevant times, Defendant Edward Khader (hereinafter "Defendant Khader") is a resident of Bernalillo County, and the Corporate Director of IT (information technology) and/or an employee and/or an agent of Defendant Route 66 Casino.

8.      Upon information and belief, at all relevant times, Defendant Adrian Fox (hereinafter "Defendant Fox") is a resident of Sandoval County, New Mexico and the General Manager and/or an employee and/or an agent of Defendant Route 66 Casino.

9.      Upon information and belief, at all times relevant, Defendant Jesse Orozco (hereinafter "Defendant Orozco") was the Surveillance Manager and/or an employee and/or an agent of Defendant Route 66 Casino.

10.      Lucas Lee was a resident of McKinley County, New Mexico and died in the subject crash on September 12, 2021.  A Personal Representative will be appointed for the Estate of Lucas Lee and this Complaint will be amended once that occurs.

11.      Defendant State of New Mexico and Defendant New Mexico Department of Transportation ("NMDOT") are governmental entities within the meaning of the Tort Claims Act, NMSA 1978, §§41-4-1 *et seq.*, and, at all relevant times, are responsible for the roads where the subject crash occurred.

12.      Defendant FCA US LLC is a Delaware corporation duly organized and existing pursuant to law and registered to transact business in the State of New Mexico. Defendant FCA has transacted business in the State of New Mexico at all times relevant hereto, and it may be served with citation by serving its registered agent for service: CT Corporation System, 726 E Michigan, Suite 330, Hobbs, New Mexico, 88240.

13.      Venue is proper in Santa Fe County, New Mexico pursuant to NMSA 1978, Section 38-3-1(A) because Plaintiff Barry Green resides in Santa Fe County, New Mexico.

14.      Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article VI of the New Mexico Constitution and the New Mexico long-arm statute, NMSA 1978, Section 38-1-16.  This Court has jurisdiction over Defendant Route 66 Casino and its officers/employees/agents have waived any defense of sovereign immunity as to Plaintiffs' claims.  Further, Plaintiffs have specifically elected to bring claims against all Defendants in New Mexico state court.  This Court has specific jurisdiction over Defendant FCA under the stream of

commerce doctrine, as set forth in *Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, 304 P.3d 18. Further, Defendant FCA has numerous contacts with the state of New Mexico including, upon information and belief, its marketing and distribution of vehicles in New Mexico, its provision of service on vehicles and parts in New Mexico, its warranties covering products in New Mexico, and the income derived from sales, service, and repair work performed by Defendant FCA and its dealers in New Mexico.

15.    All of the acts complained of herein which constitute the basis for liability against Defendant State of New Mexico and Defendant NMDOT come within the scope of the waiver of immunity contained within the New Mexico Tort Claims Act, NMSA § 41-4-11(A) and Plaintiffs have given written notice of the claims contained herein against in compliance with the requirements of the New Mexico Tort Claims Act, NMSA § 41-4-16.

16.    Joinder of Plaintiffs' claims against all Defendants in this action is proper under Rule 1-020 NMRA because Plaintiffs' claims: (1) arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) questions of law and fact common to all Defendants will arise in this action.

FACTUAL BACKGROUND

17.    Plaintiffs reallege and incorporate all allegations contained in the above paragraphs, as if fully set forth herein.

18.    On January 18, 2018, Lucas Lee, who was driving a 2015 Dodge, was pulled over by a New Mexico State Police Officer after he made a U-turn nearly hitting a pedestrian on the sidewalk and then drove onto the median without using his turn signal.

19.     During the January 18, 2018 stop, Lucas Lee smelled of alcohol, had blood shot watery eyes, slurred speech, and failed the standardized field sobriety tests performed by the police officer, which resulted in Lucas Lee being arrested.

20.     At the police station on January 18, 2018, Lucas Lee provided two breath samples into the intoxilyzer which showed a positive blood alcohol concentration (BAC) of 0.12 and 0.11.

21.     Lucas Lee was later charged with 1) DWI Driving While Under the Influence of Liquor and/or Drugs (.08 or Above) and 2) failure to maintain traffic lane, for the January 18, 2018 incident, and convicted of these charges after a trial on July 24, 2018.

22.     Lucas Lee appealed his convictions regarding the January 18, 2018 incident to the Eleventh Judicial District Court, County of McKinley, but on or about June 10, 2019, District Court Judge Louis E. DePauli, Jr. found that Lucas Lee was guilty of Driving While Under the Influence of Liquor or Drugs (.08 or above).

23.     On September 11, 2021, Lucas Lee and Roseanna Tom got off work in Gallup, New Mexico and drank alcohol all night, to the point that they spent the night in Lucas Lee's Dodge Grand Caravan.

24.     On September 12, 2021, Lucas Lee and Roseanna Tom drove toward Albuquerque and stopped at Defendant Route 66 Casino.

25.     While at Defendant Route 66 Casino on September 12, 2021, Lucas Lee and Roseanna Tom were overserved and drank alcohol at no less than one of the bars at the casino. Mr. Lee and Ms. Tom left one of the bars and attempted to gain entry into a different bar inside the casino, but according to Ms. Tom, they were denied entry based on their state of intoxication.

26.     Lucas Lee and Roseanna Tom decided that they would drive into Albuquerque to get more alcohol.

27.     At no point after refusing them alcohol service did anyone at Defendant Route 66 Casino attempt to prevent Mr. Lee and Ms. Tom from leaving the casino after Defendant Route 66 Casino knew or should have known that they were intoxicated, unfit to drive, and a danger to themselves and the public.

28.     At no point after refusing them alcohol service did anyone at Defendant Route 66 Casino attempt to offer Mr. Lee and Ms. Tom a ride to prevent them from driving after Defendant Route 66 Casino knew or should have known that they were intoxicated, unfit to drive, and a danger to themselves and the public.

29.     Lucas Lee and Roseanna Tom left Defendant Route 66 Casino, with Lucas Lee driving the vehicle.  Ms. Tom later stated to police that they were both under the influence of alcohol and "buzzing."

30.     On September 12, 2021, at approximately 3:57 p.m., Lucas Lee was driving eastbound on I-40 towards Albuquerque while intoxicated.  He entered the wrong lane of travel on I-40 near mile marker 143 in Bernalillo County, NM, not far from Defendant Route 66 Casino.

31.     At the same time, Decedent Rolanda Lahi was driving westbound on I-40 in a 2007 Dodge Nitro bearing VIN 1D8GT58K07W587396 ("the subject vehicle").

32.     Rolanda Lahi had completed her work for the day and was going to pick up one of her minor children.

33.     Mr. Lee's vehicle impacted the subject vehicle.

34.     At the time of the crash, Decedent Rolanda Lahi was wearing her 3-point seatbelt.

35.     Due to the acts or failures to act of Defendants, including but not limited to structural inadequacies of the subject vehicle causing Decedent's survival space to be destroyed, Decedent died.

36.    The subject vehicle was designed by Defendant FCA.

37.    The subject vehicle was manufactured by Defendant FCA.

38.    The subject vehicle was also assembled and tested by Defendant FCA.

39.    The subject vehicle was sold by Defendants FCA and Dealership.

40.    Plaintiffs suffered injuries and damages because the subject vehicle violated several crashworthiness principles and thereby failed to protect Lahi.

41.    There are five recognized crashworthiness principles in the automobile industry. They are as follows:

    1)  Maintain survival space;

    2)  Provide proper restraint throughout the entire crash;

    3)  Prevent ejection;

    4)  Distribute and channel energy; and

    5)  Prevent post-crash fires.

42.    When the National Highway Traffic Safety Administration ("NHTSA") created the Federal Motor Vehicle Safety Standards ("FMVSS") in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that referenced above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

43.    The National Transportation Safety Board ("NTSB") has also stated that "[v]ehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space

around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

44.    Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

45.    Vehicle manufacturers, including Defendant FCA, have known for decades and have admitted under oath that there is a distinction between the cause of a crash versus the cause of an injury.

46.    Indeed, vehicle manufacturers, including Defendant FCA, have known for decades that crashworthiness is the science of preventing or minimizing injuries or death following a crash through the use of a vehicle's various safety systems.

47.    The area of I-40 where the crash occurred and the areas to the west and east were dangerous and had no traffic barriers or meaningful safety devices separating west and eastbound traffic to keep vehicles within their roadway and prevent crashes, such as the one on September 12, 2021.

48.    Due to the crash, both Rolanda Lahi and Lucas Lee died.

49.    Rolanda Lahi needed medical personnel to extricate her from her vehicle before the Office of the Medical Examiner (OMI) could transport her from the scene.

50.    At the time of the crash, Rolanda Lahi was observed by a witness to be driving at or slightly below the speed limit and obeying all traffic laws.

51.    On September 14, 2021, a Bernalillo County Sheriff's Deputy from the Traffic Investigations Unit made telephonic contact with Defendant Orozco. During that call Defendant Orozco told the deputy that he had received an anonymous phone call from a female who reported that Lucas Lee's vehicle had been at Defendant Route 66 Casino just before the subject crash, and

that Defendant Orozco was provided with a description of Lucas Lee's vehicle as well as the names of both Mr. Lee and Ms. Tom.

52.    During the September 14, 2021 call, Defendant Orozco also told the deputy that he had located Lucas Lee and Roseanna Tom in the casino on the day of the crash and that he would continue the investigation on his end and provide the deputy with any pertinent details at a later time.

**53.**    On October 18, 2021, the deputy made telephonic contact with Defendant Orozco again.    During this conversation, Defendant Orozco informed the deputy that Defendant Route 66 Casino's investigation had been completed, but that Defendant Orozco's supervisor no longer wished to cooperate with the police out of fear of possible future litigation.

## COUNT I:  WRONGFUL DEATH
### (All Defendants)

54.    Plaintiffs reallege and incorporate all allegations contained in the above paragraphs, as if fully set forth herein.

55.    The acts and omissions of Defendants were wrongful and negligent and were the proximate cause of Rolanda Lahi's death.

56.    Plaintiff Green is entitled to recover all damages legally available under the New Mexico Wrongful Death Act, NMSA §41-2-1, including but not limited to: the pain and suffering experienced prior to the death of Rolanda Lahi; the aggravating circumstances attending her death; the reasonable expenses of necessary medical care and treatment and funeral and burial; lost earning capacity and the value of lost household services; and the monetary worth of the life of Rolanda Lahi, all in an amount to be proven at trial.

57.    Defendants' actions were willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiff Green to an award of punitive damages.

## COUNT II:  NEGLIGENCE
**(Defendant Estate of Lucas Lee)**

58.    Plaintiffs reallege and incorporate all allegations contained in the above paragraphs, as if fully set forth herein.

59.    Defendant Estate of Lucas Lee failed to exercise ordinary care when operating a motor vehicle by driving while intoxicated; driving on the wrong side of the road; failing to keep a proper lookout; failing to take proper evasive action to avoid the collision; failing to sound a horn or give warning at any time prior to the collision; failing to maintain his vehicle; failing to maintain control of his vehicle; and, consequently, crashing into and ultimately killing Rolanda Lahi.

60.    Defendant Estate of Lucas Lee was negligent because he breached his duties to drive a motor vehicle in a safe and reasonable manner under the circumstances.

61.    Defendant Estate of Lucas Lee's negligence is a proximate cause of Rolanda Lahi's death.

62.    As a direct and proximate result of the negligence of Defendant Estate of Lucas Lee, Plaintiffs have suffered damages.

63.    Defendant Estate of Lucas Lee's actions were willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiffs to an award of punitive damages.

## COUNT III:  NEGLIGENCE *PER SE*
**(Defendant Estate of Lucas Lee)**

64.    Plaintiffs reallege and incorporate all allegations contained in the above paragraphs, as if fully set forth herein.

65.     Defendant Estate of Lucas Lee violated New Mexico state statutes and regulations. Specific violations include, but are not limited to:

      a.  N.M. Stat. Ann. § 66-8-101, Homicide by vehicle;

      b.  N.M. Stat. Ann. § 66-8-102, Driving under the influence of intoxicating liquor or drugs;

      c.  N.M. Stat. Ann. § 66-8-113, Reckless driving;

      d.  N.M. Stat. Ann. § 66-7-337, Drivers to exercise due care;

      e.  N.M. Stat. Ann. § 66-7-3, Required obedience to traffic laws;

66.     Plaintiffs were in the class of persons intended to be protected by the above laws, as contemplated by the New Mexico Legislature or other government body.

67.     Plaintiffs were a member of the class of persons sought to be protected by said statutes.

68.     Defendant Estate of Lucas Lee violated said statutes without just cause or excuse.

69.     Defendant Estate of Lucas Lee is negligent *per se* based on these statutory and regulatory violations.

70.     Defendant Estate of Lucas Lee's violations of state statutes and regulations directly and proximately caused Rolanda Lahi's death and Plaintiffs' damages.

71.     Defendant Estate of Lucas Lee's actions were willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiff to an award of punitive damages.

### COUNT IV:  DRAMSHOP, NEGLIGENCE, AND NEGLIGENCE *PER SE*
**(Defendants Route 66 Casino, Khader, Fox, and Orozco)**

72.     Plaintiffs incorporate the foregoing allegations of the Complaint as if restated herein.

73.     At all times relevant to this Complaint, Defendants owned, leased, managed, operated, surveilled, and/or were employed by Route 66 Casino and were licensed under the provisions of the Liquor Control Act.

74.     At all times relevant to this Complaint, Defendants acted individually or through their agents and employees, who were acting within the course and scope of their employment/agency.

75.     Defendants, whether individually or through their agents and employees, knew or should have known that Lucas Lee was intoxicated, had been overserved alcohol at Route 66 Casino, and was a danger to himself and the public.

76.     At no time subsequent to the conclusion of his drinking at Route 66 Casino did the Defendants, acting in their individual capacity or through their agents and employees, attempt to stop Lucas Lee or prevent or deter him from driving his vehicle from the casino in his intoxicated state.

77.     The Defendants' sale, service, giving or delivering alcoholic beverages to Lucas Lee, or aiding in the procurement or consumption of alcoholic beverages to Lucas Lee, was a violation of the duty of care owed to Plaintiffs established by statutory law, regulation, and by common law.

78.     Defendants breached their duty when they sold, served, gave or delivered alcoholic beverages to Lucas Lee, and/or aided in the procurement or consumption of alcoholic beverages to Lucas Lee while he was intoxicated when it was, or should have been, reasonably apparent to Defendants and their agents and employees.  The breaches of duty include, but are not limited to:

   a.   New Mexico Liquor Control Act, N.M. Stat. Ann. § 60-3A-1, *et seq.* (including § 60-7A-16);

   b.   Tort Liability for alcoholic sales or service, N.M. Stat. Ann. § 41-11-1.

c. Sale to intoxicated persons, N.M. Stat. Ann. § 60-7A-16.

79. The Defendants' sale, service, giving or delivering alcoholic beverages to Lucas Lee, or aiding in the procurement or consumption of alcoholic beverages to Lucas Lee, was a cause of the death of Rolanda Lahi.

80. In addition, Defendants' failure to prevent or deter Lucas Lee from leaving the casino when Defendants, individually and/or through their agents/employees, knew or should have known that he was a danger to himself and the public, was a cause of the death of Rolanda Lahi.

81. Defendants, individually and/or through their agents/employees, acted with gross negligence or reckless disregard for the safety of Lucas Lee, which was a cause of the death of Rolanda Lahi.

82. Defendants' negligence, individually and/or through their employees/agents, also includes, but is not limited to, the following:

a. failure to retain properly trained security and/or serving personnel;

b. negligently hiring, training, and retaining agents and employees who failed to comply with applicable New Mexico law regarding serving and/or providing alcohol to intoxicated individuals;

c. failing to follow the law and/or their own policies and procedures regarding intoxicated individuals and police investigations;

d. training or permitting agents and employees to impede police investigations.

83. Defendants, individually and/or through their agents/employees specifically and knowingly withheld critical information and evidence from investigating police regarding alcohol service to Lucas Lee at Route 66 Casino on the date of the crash; video surveillance of the movements and actions of Lucas Lee inside and outside of the casino on the date of the crash; and the acts or omissions of Defendants in relation to Lucas Lee on the date of the crash.

84.    Pursuant to the Class III Indian Gaming Compact Between the State of New Mexico and the Pueblo of Laguna (signed July 29, 2015)(hereinafter "the Compact"), Defendant Route 66 Casino was required to enact provisions that:

 a. prohibit an employee of Defendant Route 66 Casino from selling, serving, giving or delivering an alcoholic beverage to an intoxicated person or from procuring or aiding in the procurement of any alcoholic beverage for an intoxicated person at Route 66 Casino;

 b. require Defendant Route 66 Casino's employees that dispense, sell, serve or deliver alcoholic beverages to attend Alcohol Server Education Classes similar to those classes provided for in the New Mexico Liquor Control Act;

 c. require that Defendant Route 66 Casino purchase and maintain a liquor liability insurance policy that will provide, at a minimum, personal injury coverage of one million dollars ($1,000,000) per incident and two million dollars ($2,000,000) aggregate per policy year; and

 d. prohibit Defendant Route 66 Casino from providing, allowing, contracting to provide or arranging to provide alcoholic beverages for no charge or at reduced prices within Route 66 Casino.

85.    Pursuant to the Compact, Defendant Route 66 Casino agreed to maintain in effect policies of liability insurance insuring Defendant Route 66 Casino, their agents and employees against claims, demands or liability for bodily injury and property damages by Plaintiffs in an amount of at least ten million dollars ($10,000,000) per occurrence and ten million dollars ($10,000,000) annual aggregate.  This amount was to increase as of the fifth anniversary of the Compact.

86.    At all relevant times, Defendant Route 66 Casino is vicariously liable for torts of its officers, managers, employees, and agents under the concepts of agency and *respondeat superior*.

87.    In addition, Defendant Route 66 Casino is jointly and severally liable for the negligence of all named Defendants in this lawsuit.

88.     Defendants' actions were willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiffs to an award of punitive damages.

## COUNT V:  NEGLIGENCE
### (Defendants State of New Mexico and NMDOT)

89.     Plaintiff incorporates the foregoing allegations of the Complaint as if restated herein.

90.     The State of New Mexico and NMDOT had knowledge that the roadway where the crash occurred, including the areas to the east and west of the crash, was unsafe, in a state of disrepair, and had the potential to cause injury and death to the public.

91.     Prior to the subject crash, Defendants State of New Mexico and/or NMDOT had taken no action to install traffic barriers or meaningful safety devices for separating west and eastbound traffic to keep vehicles within their roadway and prevent crashes, such as the one on September 12, 2021.

92.     Defendants State of New Mexico and/or NMDOT were negligent in failing to properly maintain, correct or repair the road where the crash occurred.

93.     The negligence by the State of New Mexico and/or NMDOT was an actual and proximate cause of injuries suffered by Plaintiffs.

## COUNT VI:  INTENTIONAL SPOLIATION OF EVIDENCE
### (Defendants Route 66 Casino, Khader, Fox, and Orozco)

94.     Plaintiff incorporates the foregoing allegations of the Complaint as if restated herein.

95.     Prior to and on September 12, 2021, Defendant Route 66 Casino had a video surveillance system with many video cameras inside and outside of the casino.

96.    Prior to an on September 12, 2021, Defendant Route 66 Casino had a Corporate Director of IT (Defendant Khader), a General Manager (Defendant Fox), and a Surveillance Manager (Defendant Orozco).

97.    On September 14, 2021, a Bernalillo County Sheriff's Deputy from the Traffic Investigations Unit made telephonic contact with Defendant Orozco.  During that call Defendant Orozco told the deputy that he had received an anonymous phone call from a female who reported that Lucas Lee's vehicle had been at Defendant Route 66 Casino just before the subject crash, and that Defendant Orozco was provided with a description of Lucas Lee's vehicle as well as the names of both Mr. Lee and Ms. Tom.

98.    During the September 14, 2021 call, Defendant Orozco also told the deputy that he had located Lucas Lee and Roseanna Tom in the casino on the day of the crash and that he would continue the investigation on his end and provide the deputy with any pertinent details at a later time.

99.    On October 18, 2021, the deputy made telephonic contact with Defendant Orozco again.  During this conversation, Defendant Orozco informed the deputy that Defendant Route 66 Casino's investigation had been completed, but that Defendant Orozco's supervisor no longer wished to cooperate with the police out of fear of possible future litigation.

100.    Upon information and belief, Defendant Orozco's supervisors included Defendant Khader and Defendant Fox.

101.    On November 5, 2021, Plaintiffs sent a spoliation letter to Defendants requesting preservation of evidence, including all surveillance footage inside and outside of the casino for the date of September 12, 2021.

102.    On November 17, 2021, November 18, 2021, and November 29, 2021, Plaintiffs made additional requests upon Defendants for the surveillance footage for the date of September 12, 2021, but as of the filing of this Complaint, nothing was ever provided.

103.    Defendants have intentionally spoliated some, or all, of the surveillance footage for the date of the subject crash.

104.    At the time of and following the subject crash, the potential for a lawsuit existed.

105.    Based upon the statements made by Defendant Orozco to law enforcement, Defendants knew of the existence of a potential lawsuit related to the subject crash and had reviewed surveillance footage of Lucas Lee at Route 66 Casino.

106.    Defendants refused to provide evidence to law enforcement specifically due to the fear of possible litigation.

107.    Defendants disposed of, destroyed, mutilated or significantly altered potential evidence.

108.    By destroying this evidence, Defendants intended to limit their financial responsibility to Plaintiffs and/or disrupt or defeat a lawsuit resulting from the subject crash.

109.    A causal relationship exists between Defendants' act of spoliation and the ability to prove the liability of these Defendants in this case.

110.    Plaintiff has suffered damages as a result of Defendants' intentional spoliation of evidence.

### COUNT VII:  STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN, MANUFACTURE, FAILURE TO WARN
### (Defendant FCA)

111.    Plaintiffs incorporate the foregoing allegations of the Complaint as if restated herein.

112.    Defendant FCA is in the business of designing, manufacturing, testing, assembling, marketing, and/or distributing vehicles, including the subject vehicle, and Defendant designed, manufactured, tested, assembled, marketed, distributed, and/or sold the vehicle that was involved in the crash that caused Decedent's death and Plaintiffs' damages.

113.    The vehicle was defective and unreasonably dangerous for its intended use.

114.    The vehicle was defective at the time it left the control of Defendant.

115.    Reasonable consumers would not have been aware of the defective condition.

116.    Plaintiffs and decedent were not aware of the defects.

117.    The fatal injuries complained of occurred because the subject vehicle was defective and unreasonably dangerous.

118.    As detailed herein, the subject vehicle contains and/or Defendant FCA has committed either design, manufacturing, testing, assembly, marketing, and or distribution defects.

119.    Defendant FCA either knew or should have known of at least one safer alternative design which would have prevented the fatal injuries to Decedent.

120.    As detailed herein, the subject vehicle contains multiple design defects, Defendant FCA has committed multiple acts of engineering negligence, and they have created false, misleading, and/or deceptive marketing intended to lure prospective buyers.

121.    The subject vehicle was defective and unreasonably dangerous, Defendant FCA is strictly liable, negligent, and Defendant FCA misrepresented the safety of the subject vehicle in the following, non-exhaustive list of ways:

      a.     The subject vehicle violated principles of crashworthiness;

      b.     The subject vehicle was not properly crash tested;

      c.     The subject vehicle was not subjected to rigorous engineering analysis;

d.      The subject vehicle failed to maintain survival space for the safety cell, safety cage, cabin;

e.      The subject vehicle failed to utilize UHSS, AHSS, EHSS, boron, martensite, ferrite, complex phase, dual phase and TRIP type steel in the front structure, roof structure, pillars, and header and side rails;

f.      The subject vehicle failed to utilize UHSS, AHSS, EHSS, boron, martensite, ferrite, complex phase, dual phase and TRIP type steel in areas of the vehicle that would maintain the survival space of the cabin, safety cell and safety cage;

g.      The vehicle failed to utilize steel with MPa in excess of 600 in the cabin, safety cell and safety cage;

h.      The structural integrity of the subject vehicle was weak and inadequate;

i.      The subject vehicle literally experienced unzippering of the floorpan to the sill/rocker panel;

j.      The airbag shifted outboard;

k.      The subject vehicle failed to provide reasonable protection in a frontal offset type crash event;

l.      Defendant FCA bragged, touted, and/or marketed its vehicles as being safe, state of the art, engineered to be the best, and/or engineered to protect families;

m.      Defendant FCA touted that building safe vehicles is the most important thing they do;

n.      Defendant FCA touted that automobile safety is the foundation of its automobile manufacturing;

o.      Defendant FCA touted that it has built a storehouse of safety technology since their first vehicle was built;

19

p.       Defendant FCA touted that safety is one of its foremost concerns;

q.       Defendant FCA touted that safety is always on its mind

r.       Defendant FCA touted that it is fully aware of its responsibility to produce vehicles with the best overall safety possible;

s.       Defendant FCA touted that it collects crash data and applies that data to the planning and design of new models to continuously improve automobile safety;

t.       Defendant FCA touted that it works hard to stay at the cutting edge of technology;

u.       Defendant FCA touted that computer aided engineering is indispensable to the prototype development process;

v.       Defendant FCA touted that it uses CAE to test new design ideas and structures;

w.       Defendant FCA touted that it uses finite element method to create models to simulate real testing;

x.       Defendant FCA touted that it believes that safety is fundamental in making vehicles;

y.       Defendant FCA touted that it believes in continuous improvement since no process can ever be declared perfect, there is always room for improvement;

z.       Defendant FCA touted that it always works to improve by putting forth new ideas and making the best of their abilities;

aa.       Defendant FCA touted that it believes that everyone deserves to be safe;

bb.       Defendant FCA touted how it was spending one million dollars an hour to enhance technology and consumer safety;

cc.   Defendant FCA touted that it pledged to the American consumer that they will have continual improvement, that they will learn from their mistakes and that they need to do better;

dd.   Defendant FCA touted that no matter who you are and what you drive, everyone deserves to be safe;

ee.   Defendant FCA touted that it creates vehicles with your family in mind;

ff.   Consumers expect Defendant FCA to use state of the art engineering, material, and/or designs;

gg.   Consumers expect Defendant FCA to provide safe vehicles that have been tested and subjected to rigorous engineering analysis; and/or

hh.   Defendant FCA violated consumer expectations.

122.   The defects and negligence listed herein were the direct, producing, substantial factor, and proximate cause of Decedent's fatal injuries and Plaintiffs' damages.

123.   At the time of the crash, Decedent was using the subject vehicle for a purpose and in a manner which could be reasonably foreseen.

124.   Defendant FCA could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the subject vehicle, including Decedent.

125.   Plaintiffs' injuries and damages were caused by a condition or conditions of the subject vehicle which were not substantially changed or unforeseeably altered after Defendant FCA placed the subject vehicle on the market.

126.   The defective conditions of the subject vehicle, either singularly or in combination, were a cause of Decedent's fatal injuries and Plaintiffs' damages.

## COUNT VIII:  NEGLIGENCE
### (Defendant FCA)

127.    Plaintiffs incorporate the foregoing allegations of the Complaint as if restated herein.

128.    Defendant FCA was also negligent in the design, manufacture, assembly, marketing, and/or testing of the subject vehicle.

129.    Companies that are in the business of designing, testing, manufacturing, marketing distributing and selling products are never allowed to needlessly endanger consumers.

130.    Defendant FCA owed a duty to use reasonable care in the design, manufacture, testing, assembly, marketing, and/or distribution of the subject vehicle.

131.    Defendant FCA failed to use reasonable care when it designed, manufactured, tested, assembled, marketed, distributed, and/or sold the subject vehicle, and consequently put a product on the market that was unreasonably dangerous for its intended or reasonably anticipated use as discussed herein.

132.    In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

133.    Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

134.    If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

135.    If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

136.    A company that does not conduct a proper engineering analysis that would help it to identify potential risk, hazards, and/or dangers that could seriously injure someone is negligent.

137.    Most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The number one fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

138.    Accordingly, since paramount means "superior to all others," all vehicle and automotive engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles.

139.    Indeed, General Motors, for instance, has admitted under oath that its engineers have to hold paramount the safety, health, and welfare of the public, and that manufacturers have to make efforts to identify potential risks, hazards, and/or dangers that can lead to serious injury or death. Toyota has stated that its engineers are faced with making all vehicles as safe as humanly possible.

140.    Ford has also testified under oath that a vehicle engineer's primary responsibility is to identify potential risks, hazards, and dangers that can cause serious injury or death.

141.    Accordingly, Defendant FCA had a duty to conduct a proper engineering analysis and to conduct proper testing that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone. Defendant FCA breached said duty.

142.    With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not subjected to proper testing and rigorous engineering analysis.

143.    With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not properly tested and analyzed to ensure that in front offset impacts, the survival space of the safety cell, cage or cabin would not be destroyed.

144.    Based upon information and/or belief, Defendant FCA either knew or should have known about advanced safety features used in Europe, Australia, Japan, or some other country and chose not to offer those safety features to American consumers.

145.    Defendant FCA's safety philosophy and design philosophy are utilized in various model vehicles and parts, including ones sold overseas in other markets.

146.    When Defendant FCA designed the subject vehicle, the wheel was not reinvented. Rather, Defendant FCA used (or should have used) an enormous amount of human capital which had been acquired from numerous different engineers who had worked on many prior vehicles and component parts. This knowledge would have been (or should have been) utilized in different aspects of the designs of the vehicle to make it safer in foreseeable crashes such as what occurred in this case.

147.    Defendant FCA is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant FCA is also in possession of what, if any, engineering analysis was performed.

148.    However, it is expected that after all these materials are produced in discovery and/or after Defendant FCA's employees and corporate representatives have been deposed, additional allegations may come to light.

149.    Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant FCA knew, when Defendant FCA knew it, and about what was utilized or not utilized as well as the reasons why.

150.    In addition to the acts and/or omissions, defects, misrepresentations, and/or negligence of Defendant FCA stated above, Defendant FCA breached its duty of care, and, therefore, was negligent in at least the following particulars:

    a.    The subject vehicle violated principles of crashworthiness;

    b.    The subject vehicle was not properly crash tested;

    c.    The subject vehicle was not subjected to rigorous engineering analysis;

    d.    The subject vehicle failed to maintain survival space for the safety cell, safety cage, cabin;

    e.    The subject vehicle failed to utilize UHSS, AHSS, EHSS, boron, martensite, ferrite, complex phase, dual phase and TRIP type steel in the front structure, roof structure, pillars, and header and side rails;

    f.    The subject vehicle failed to utilize UHSS, AHSS, EHSS, boron, martensite, ferrite, complex phase, dual phase and TRIP type steel in areas of the vehicle that would maintain the survival space of the cabin, safety cell and safety cage;

    g.    The vehicle failed to utilize steel with MPa in excess of 600 in the cabin, safety cell and safety cage;

    h.    The structural integrity of the subject vehicle was weak and inadequate;

    i.    The subject vehicle literally experienced unzipping of the floorpan to the sill/rocker panel;

    j.    The airbag shifted outboard;

    k.    The subject vehicle failed to provide reasonable protection in a frontal offset type crash event;

l.   Defendant FCA bragged, touted, and/or marketed its vehicles as being safe, state of the art, engineered to be the best, and/or engineered to protect families;

m.   Defendant FCA touted that building safe vehicles is the most important thing they do;

n.   Defendant FCA touted that automobile safety is the foundation of its automobile manufacturing;

o.   Defendant FCA touted that it has built a storehouse of safety technology since their first vehicle was built;

p.   Defendant FCA touted that safety is one of its foremost concerns;

q.   Defendant FCA touted that safety is always on its mind

r.   Defendant FCA touted that it is fully aware of its responsibility to produce vehicles with the best overall safety possible;

s.   Defendant FCA touted that it collects crash data and applies that data to the planning and design of new models to continuously improve automobile safety;

t.   Defendant FCA touted that it works hard to stay at the cutting edge of technology;

u.   Defendant FCA touted that computer aided engineering is indispensable to the prototype development process;

v.   Defendant FCA touted that it uses CAE to test new design ideas and structures;

w.   Defendant FCA touted that it uses finite element method to create models to simulate real testing;

x.   Defendant FCA touted that it believes that safety is fundamental in making vehicles;

y.     Defendant FCA touted that it believes in continuous improvement since no process can ever be declared perfect, there is always room for improvement;

z.     Defendant FCA touted that it always works to improve by putting forth new ideas and making the best of their abilities;

aa.    Defendant FCA touted that it believes that everyone deserves to be safe;

bb.    Defendant FCA touted how it was spending one million dollars an hour to enhance technology and consumer safety;

cc.    Defendant FCA touted that it pledged to the American consumer that they will have continual improvement, that they will learn from their mistakes and that they need to do better;

dd.    Defendant FCA touted that no matter who you are and what you drive, everyone deserves to be safe;

ee.    Defendant FCA touted that it creates vehicles with your family in mind;

ff.    Consumers expect Defendant FCA to use state of the art engineering, material, and/or designs;

gg.    Consumers expect Defendant FCA to provide safe vehicles that have been tested and subjected to rigorous engineering analysis; and/or

hh.    Defendant FCA violated consumer expectations.

151.    The defects and negligence listed herein were the direct, producing, substantial factor, and proximate cause of Decedent's fatal injuries and Plaintiffs' damages.

152.    At the time of the incident in question, Lahi was a foreseeable user of the subject vehicle for a purpose and in a manner which could reasonably be foreseen.

153.    Defendant FCA could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the subject vehicle, including Lahi.

154.    The negligent acts and omissions of Defendant FCA, either singularly or in combination, were a cause of Decedent's fatal injuries and Plaintiffs' damages.

## COUNT IX:  MISREPRESENTATION
### (Defendant FCA)

155.    Plaintiffs incorporate the foregoing allegations of the Complaint as if restated herein.

156.    Defendant FCA misrepresented its concern about the safety of the occupants of its vehicles.

157.    Defendant FCA misrepresented its concern about using state of the art material, technology and testing techniques.

158.    Defendant FCA misrepresented that safety must come first.

159.    Defendant FCA misrepresented that it has an obligation to protect vehicle occupants in the best possible way should the worst-case scenario arise.

160.    Specifically, for decades Defendant FCA has touted the safety of its vehicles.

161.    The subject vehicle failed to possess all the material, safety and testing qualities that the Defendant FCA has touted for decades.

162.    The foregoing acts and/or omissions, defects, and/or negligence of Defendant FCA was the producing, direct, and/or proximate cause of the fatal injuries to Decedent and damages to Plaintiffs.

## COUNT X:  LOSS OF CONSORTIUM
### (All Defendants)

163.    Plaintiffs incorporate the foregoing allegations of the Complaint as if restated herein.

164.    Minor children A.S. and A.S. had a close familial relationship with their mother, Rolanda Lahi.

165.    The negligence by Defendants was the actual and proximate cause of injuries suffered by Plaintiff Rael, as Guardian ad Litem for A.S. and A.S., including loss of love, society, support, and companionship of their mother, Rolanda Lahi.

166.    Defendants' actions were deliberate, willful, wanton, malicious, reckless or fraudulent thereby entitling Plaintiff Rael, as Guardian ad Litem for A.S. and A.S., to an award of punitive damages.

## COUNT XI: PUNITIVE DAMAGES
### (All Defendants)

167.    Plaintiffs incorporate the foregoing allegations of the Complaint as if restated herein.

168.    In addition to Defendants' conduct outlined above, and Defendant FCA's placing the unreasonably dangerous and defective subject vehicle into the market, giving rise to strict liability and negligence liability, Defendants also acted intentionally, maliciously, willfully, recklessly, and/or with wanton disregard for the safety of others.

169.    Among others, these intentional, malicious, willful, reckless, and/or wanton acts and omissions of Defendants, either singularly, in combination, or based on the cumulative conduct of employees of Defendants, were a cause of Decedent's fatal injuries and Plaintiffs' damages. Accordingly, Defendants are liable for punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants for compensatory damages (jointly and severally, as set forth above), punitive and/or exemplary damages, costs, pre-judgment and post-judgment interest, and for such other appropriate relief as is just and proper.

DELARA | SUPIK | ODEGARD P.C.

By    _/s/ Christopher J. Supik_____
        Christopher J. DeLara
        Christopher J. Supik
        David C. Odegard
        P.O. Box 91596
        Albuquerque, NM 87199-1596
        (505) 999-1500
        chris@delaralaw.com
        supik@delaralaw.com
        odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
**DURHAM, PITTARD & SPALDING, L.L.P.**
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
**THE TRACY FIRM**
4701 Bengal Street
Dallas, Texas 75235
Telephone: (214) 324-9000
ttracy@vehiclesafetyfirm.com

***Attorneys for Plaintiffs***

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
1/18/2022 4:54 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**                    **No. D-101-cv-2022-00034**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

                **Plaintiffs,**

**v.**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

                **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff Barry Green, as Personal Representative of the Wrongful Death Estate of

Rolanda Lahi, by and through his attorneys of record, hereby certifies that on the 18th day of

January, 2022, Plaintiff served via personal service along with the Summonses and First

Amended Complaint in this matter upon Defendant New Mexico Department of Transportation,

c/o Office of the Attorney General, 407 Galisteo Street, Santa Fe, New Mexico  87501 and c/o

Michael Sandoval, Cabinet Secretary, 1120 Cerrillos Road, Santa Fe, New Mexico  87504 the

following:

> *Plaintiff Barry Green, as Personal Representative of the Wrongful Death Estate of*
> *Rolanda Lahi's First Set of Interrogatories and First Requests for Production to*
> *Defendant New Mexico Department of Transportation*

DATED:  January 18, 2022

                Respectfully submitted,

**DURHAM, PITTARD & SPALDING, L.L.P.**

*/s/ Justin R. Kaufman*
Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

Christopher J. DeLara
Christopher J. Supik
David C. Odegard
**DELARA SUPIK ODEGARD P.C.**
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

E. Todd Tracy
**THE TRACY FIRM**
4701 Bengal Street
Dallas, Texas 75235
Telephone: (214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing instrument will be served on all counsel via the e-filing system on this the 18th day of January, 2022.

*/s/ Justin R. Kaufman*
Justin R. Kaufman

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
1/18/2022 4:54 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

## RETURN OF SUMMONS ON AMENDED COMPLAINT

| | |
|---|---|
| District Court: FIRST JUDICIAL DISTRICT Santa Fe County, New Mexico Court Address: 225 Montezuma Ave. Santa Fe, NM 87501 P.O. Box 2268 Santa Fe, NM 87504-2268 Court Telephone No.: (505) 455-8250 | Case Number: D-101-CV-2022-00034 Assigned Judge:  Matthew Justin Wilson |
| Plaintiff(s): BARRY GREEN, as Personal Representative of the Wrongful Death Estate of ROLANDA LAHI, deceased, and FELIZ RAEL, as Guardian ad Litem of A.S. and A.S., minor children, v. Defendant(s): LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL, EDWARD KHADER, ADRIAN FOX, JESSE OROZCO, the Estate of LUCAS LEE, STATE OF NEW MEXICO, NEW MEXICO DEPARTMENT OF TRANSPORTATION, and FCA US LLC | Defendant Name: STATE OF NEW MEXICO Address: c/o Office of the Attorney General 407 Galisteo Street Santa Fe, NM 87501 -and- c/o Risk Management Division 1100 St. Francis Dr. Joseph Montoya Bldg., Room 2073 Santa Fe, NM 87502 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.       A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.       You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.       You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.       If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.       You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.       If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at _____Santa Fe_____, New Mexico, this __14th__ day of __January__, 2022.

KATHLEEN VIGIL
CLERK OF DISTRICT COURT

By: _____
Deputy

/s/ Christopher J. Supik
Christopher J. DeLara
Christopher J. Supik
David C. Odegard
DeLara | Supik | Odegard P.C.
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
Durham, Pittard & Spalding, L.L.P.
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
(505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
The Tracy Firm
4701 Bengal St.
Dallas, TX 75235
(214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT COURT

BARRY GREEN, as Personal Representative        No. D-101-cv-2022-00034
of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

        Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC,

        Defendants.

                    RETURN[1]

STATE OF _New Mexico_ )
                      )ss
COUNTY OF _Santa Fe_ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this Summons in _Santa Fe_ county on the _18th_ day of _January_, _2022_ by delivering a copy of this Summons on Amended Complaint, with a copy of the First Amended Complaint for Wrongful Death, Negligence, Negligence *per se,* Dram Shop, Intentional Spoliation of Evidence, and Loss of Consortium; and Jury Demand attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of Summons and complaint or refuses to accept the Summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the Summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this Summons, with a copy of

complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the Summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the Summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[X]    to *Dan Rios* _____ (*name of person*), *Intake Specialist* *title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: *$40+ Taxes*

_____
Signature

*AW Legal Documents*
Title (*if any*)

Subscribed and sworn to before me this *18th* day of *January, 2022*

_____
~~Judge~~, notary ~~or other officer~~
authorized to administer oaths

*Notary*
_____
Official title

STATE OF NEW MEXICO
NOTARY PUBLIC
MARGERY FINN
COMMISSION # 1041616
COMMISSION EXPIRES 04/11/2022

My Commission Expires:_____

USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
1/18/2022 4:54 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

| RETURN OF **SUMMONS ON AMENDED COMPLAINT** | |
|---|---|
| District Court: FIRST JUDICIAL DISTRICT Santa Fe County, New Mexico Court Address: 225 Montezuma Ave. Santa Fe, NM 87501 P.O. Box 2268 Santa Fe, NM 87504-2268 Court Telephone No.: (505) 455-8250 | Case Number: D-101-CV-2022-00034 Assigned Judge:  Matthew Justin Wilson |
| Plaintiff(s): BARRY GREEN, as Personal Representative of the Wrongful Death Estate of ROLANDA LAHI, deceased, and FELIZ RAEL, as Guardian ad Litem of A.S. and A.S., minor children, v. Defendant(s): LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL, EDWARD KHADER, ADRIAN FOX, JESSE OROZCO, the Estate of LUCAS LEE, STATE OF NEW MEXICO, NEW MEXICO DEPARTMENT OF TRANSPORTATION, and FCA US LLC | Defendant Name: STATE OF NEW MEXICO Address: c/o Office of the Attorney General 407 Galisteo Street Santa Fe, NM 87501 -and- c/o Risk Management Division 1100 St. Francis Dr. Joseph Montoya Bldg., Room 2073 Santa Fe, NM 87502 |

### TO THE ABOVE NAMED DEFENDANT(S): Take notice that

**1.**      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

**2.**      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

**3.**      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at _____Santa Fe_____, New Mexico, this 14th day of January, 2022.

KATHLEEN VIGIL
CLERK OF DISTRICT COURT

By: _____
Deputy

*/s/ Christopher J. Supik*_____
Christopher J. DeLara
Christopher J. Supik
David C. Odegard
DeLara | Supik | Odegard P.C.
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
Durham, Pittard & Spalding, L.L.P.
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
(505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
The Tracy Firm
4701 Bengal St.
Dallas, TX 75235
(214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT COURT

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

                Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC,

                Defendants.

No. D-101-cv-2022-00034

**RETURN**[1]

STATE OF _New Mexico_ )
                      )ss
COUNTY OF _Santa Fe_ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this Summons in _Santa Fe_ county on the _18th_ day of _January_ , _2022_ by delivering a copy of this Summons on Amended Complaint, with a copy of the First Amended Complaint for Wrongful Death, Negligence, Negligence *per se,* Dram Shop, Intentional Spoliation of Evidence, and Loss of Consortium; and Jury Demand attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of Summons and complaint or refuses to accept the Summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the Summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this Summons, with a copy of

complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the Summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the Summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[X]    to *Randall Cherry* (name of person), *Acting Risk Director* (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: *$40°° & Tax*

_____
Signature

*An Legal Docs*
Title (*if any*)

Subscribed and sworn to before me this *18th* day of *January*, *2022*.

_____
~~Judge~~, notary ~~or other officer~~ authorized to administer oaths

My Commission Expires:_____

*Notary*
Official title

STATE OF NEW MEXICO
NOTARY PUBLIC
MARGERY FINN
COMMISSION # 1041616
COMMISSION EXPIRES 04/11/2022

USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
1/18/2022 4:54 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

| RETURN OF **SUMMONS ON AMENDED COMPLAINT** | |
|---|---|
| District Court: FIRST JUDICIAL DISTRICT<br>Santa Fe County, New Mexico<br>Court Address:<br>225 Montezuma Ave.<br>Santa Fe, NM 87501<br>P.O. Box 2268<br>Santa Fe, NM 87504-2268<br>Court Telephone No.: (505) 455-8250 | Case Number: D-101-CV-2022-00034<br><br>Assigned Judge:  Matthew Justin Wilson |
| Plaintiff(s): BARRY GREEN, as Personal<br>Representative of the Wrongful Death Estate<br>of ROLANDA LAHI, deceased, and<br>FELIZ RAEL, as Guardian ad Litem of A.S.<br>and A.S., minor children,<br><br>v.<br><br>Defendant(s): LAGUNA DEVELOPMENT<br>CORPORATION d/b/a ROUTE 66 CASINO<br>HOTEL, EDWARD KHADER, ADRIAN<br>FOX, JESSE OROZCO, the Estate of LUCAS<br>LEE, STATE OF NEW MEXICO, NEW<br>MEXICO DEPARTMENT OF<br>TRANSPORTATION, and FCA US LLC | Defendant Name:<br>NEW MEXICO DEPARTMENT OF<br>TRANSPORTATION<br><br>Address:<br>c/o Office of the Attorney General<br>407 Galisteo Street<br>Santa Fe, NM 87501<br><br>-and-<br><br>c/o Michael Sandoval, Cabinet Secretary<br>1120 Cerrillos Road<br>Santa Fe, NM 87504 |

### TO THE ABOVE NAMED DEFENDANT(S): Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at _____Santa Fe_____, New Mexico, this __14th__ day of __January__, 2022.

KATHLEEN VIGIL
CLERK OF DISTRICT COURT

By: _____
Deputy



/s/ Christopher J. Supik
_____
Christopher J. DeLara
Christopher J. Supik
David C. Odegard
DeLara | Supik | Odegard P.C.
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
Durham, Pittard & Spalding, L.L.P.
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
(505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
The Tracy Firm
4701 Bengal St.
Dallas, TX 75235
(214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**                     No. D-101-cv-2022-00034
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

                    **Plaintiffs,**

**v.**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

                    **Defendants.**

                    **RETURN[1]**

STATE OF _New Mexico_ )
                                    )ss
COUNTY OF _Santa Fe_ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this Summons in _Santa Fe_ county on the **18th** day of _January_, **2022**, by delivering a copy of this Summons on Amended Complaint, with a copy of the First Amended Complaint for Wrongful Death, Negligence, Negligence *per se,* Dram Shop, Intentional Spoliation of Evidence, and Loss of Consortium; Jury Demand; and Plaintiff Barry Green, as Personal Representative of the Wrongful Death Estate of Rolanda Lahi's First Set of Interrogatories and Requests for Production to Defendant New Mexico Department of Transportation attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of Summons and complaint or refuses to accept the Summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the Summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this Summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the Summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the Summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[X]    to *Dan Rios* (*name of person*), *Intake Specialist* (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: *$40⁰⁰* _____

_____
Signature

*Aw Legal Documents*
Title (*if any*)

Subscribed and sworn to before me this *18th* day of *January*, *2022*

_____
~~Judge~~, notary ~~or other officer~~
authorized to administer oaths

My Commission Expires: _____

_____
*Notary*
Official title

STATE OF NEW MEXICO
NOTARY PUBLIC
MARGERY FINN
COMMISSION # 1041616
COMMISSION EXPIRES 04/11/2022

USE NOTE

1.     Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
2.     If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
1/18/2022 4:54 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

| RETURN OF   **SUMMONS ON AMENDED COMPLAINT** | |
|---|---|
| District Court: FIRST JUDICIAL DISTRICT<br>Santa Fe County, New Mexico<br>Court Address:<br>225 Montezuma Ave.<br>Santa Fe, NM 87501<br>P.O. Box 2268<br>Santa Fe, NM 87504-2268<br>Court Telephone No.: (505) 455-8250 | Case Number: D-101-CV-2022-00034<br><br><br>Assigned Judge: Matthew Justin Wilson |
| Plaintiff(s): BARRY GREEN, as Personal Representative of the Wrongful Death Estate of ROLANDA LAHI, deceased, and FELIZ RAEL, as Guardian ad Litem of A.S. and A.S., minor children,<br><br>v.<br><br>Defendant(s): LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL, EDWARD KHADER, ADRIAN FOX, JESSE OROZCO, the Estate of LUCAS LEE, STATE OF NEW MEXICO, NEW MEXICO DEPARTMENT OF TRANSPORTATION, and FCA US LLC | Defendant Name:<br>NEW MEXICO DEPARTMENT OF TRANSPORTATION<br><br><br>Address:<br>c/o Office of the Attorney General<br>407 Galisteo Street<br>Santa Fe, NM 87501<br><br>-and-<br><br>c/o Michael Sandoval, Cabinet Secretary<br>1120 Cerrillos Road<br>Santa Fe, NM 87504 |

### TO THE ABOVE NAMED DEFENDANT(S): Take notice that

**1.**    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

**2.**    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

**3.**    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at _____Santa Fe_____, New Mexico, this __14th__ day of __January__, 2022.

KATHLEEN VIGIL
CLERK OF DISTRICT COURT

By: _____
Deputy



/s/ Christopher J. Supik
Christopher J. DeLara
Christopher J. Supik
David C. Odegard
DeLara | Supik | Odegard P.C.
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
Durham, Pittard & Spalding, L.L.P.
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
(505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
The Tracy Firm
4701 Bengal St.
Dallas, TX 75235
(214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT COURT

BARRY GREEN, as Personal Representative                    No. D-101-cv-2022-00034
of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

                Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC,

                Defendants.

## RETURN[1]

STATE OF _New Mexico_   )
                    )ss
COUNTY OF _Santa Fe_   )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this Summons in _Santa Fe_ county on the _18th_ day of _January_, _2022_ by delivering a copy of this Summons on Amended Complaint, with a copy of the First Amended Complaint for Wrongful Death, Negligence, Negligence *per se,* Dram Shop, Intentional Spoliation of Evidence, and Loss of Consortium; Jury Demand; and Plaintiff Barry Green, as Personal Representative of the Wrongful Death Estate of Rolanda Lahi's First Set of Interrogatories and Requests for Production to Defendant New Mexico Department of Transportation attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of Summons and complaint or refuses to accept the Summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the Summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this Summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the Summons and complaint.

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the Summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[X]     to Brianna Gutierrez (*name of person*), Receptionist NMDOT (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: $40 + Tax

_____
Signature

A W Legal Documents
Title (*if any*)

Subscribed and sworn to before me this 18th day of January, 2022

_____
~~Judge~~, notary or ~~other officer~~
authorized to administer oaths

NOTARY
Official title

STATE OF NEW MEXICO
NOTARY PUBLIC
MARGERY FINN
COMMISSION # 1041616
COMMISSION EXPIRES 04/11/2022

My Commission Expires:_____

USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
2/3/2022 2:07 PM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT

D-101-CV-2022-00034

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

        Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC,

        Defendants.

# CERTIFICATE OF SERVICE

The undersigned certifies that Plaintiff Barry Green, as Personal Representative of the Wrongful Death Estate of Rolanda Lahi's Second Set of Interrogatories and Requests for Production and First Set of Requests for Admission to Defendant Laguna Development Corporation d/b/a Route 66 Casino Hotel were emailed on this 3rd day of February, 2022 to:

David W. Peterson
Jennings Haug Keleher McLeod
201 Third Street NW, Suite 1200
Albuquerque, NM 87102
(505) 346-4646
dwp@jhkmlaw.com

DELARA | SUPIK | ODEGARD P.C.


By    _/s/ Christopher J. Supik_
      Christopher J. DeLara
      Christopher J. Supik
      David C. Odegard
      P.O. Box 91596
      Albuquerque, NM 87199-1596
      (505) 999-1500
      chris@delaralaw.com
      supik@delaralaw.com
      odegard@delaralaw.com

      Justin R. Kaufman
      Rosalind B. Bienvenu
      Caren I. Friedman
      **DURHAM, PITTARD & SPALDING, L.L.P.**
      505 Cerrillos Road, Suite A209
      Santa Fe, NM 87501
      (505) 986-0600
      jkaufman@dpslawgroup.com
      rbienvenu@dpslawgroup.com
      cfriedman@dpslawgroup.com

      E. Todd Tracy
      **THE TRACY FIRM**
      4701 Bengal Street
      Dallas, TX 75235
      Telephone: (214) 324-9000
      ttracy@vehiclesafetyfirm.com

      *Attorneys for Plaintiffs*

I HEREBY CERTIFY that on the 3rd day of February, 2022, I filed the foregoing Certificate of Service electronically through the State of New Mexico's Odyssey File & Serve system, and a copy of the same to be served by email to:

David W. Peterson
Jennings Haug Keleher McLeod
201 Third Street NW, Suite 1200
Albuquerque, NM 87102
(505) 346-4646
dwp@jhkmlaw.com


*/s/ Christopher J. Supik*

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
2/25/2022 3:16 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

Case Number: D-101-cv-2022-00034

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

**BARRY GREEN, as Personal Representative of**
**the Wrongful Death Estate of ROLANDA LAHI,**
**deceased, and FELIZ RAEL, as Guardian ad**
**Litem of A.S. and A.S., minor children,**

**Plaintiffs,**

**v.**

**LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL,**
**EDWARD KHADER, ADRIAN FOX, JESSE OROZCO, the Estate of LUCAS LEE,**
**STATE OF NEW MEXICO, NEW MEXICO DEPARTMENT OF TRANSPORTATION,**
**and FCA US LLC,**

**Defendants.**

**DEFENDANT THE NEW MEXICO DEPARTMENT OF TRANSPORTATION'S**
**ANSWER TO FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH,**
**NEGLIGENCE, NEGLIGENCE PER SE, DRAM SHOP, INTENTIONAL SPOLIATION**
**OF EVIDENCE AND LOSS OF CONSORTIUM DAMAGES, AND AFFIRMATIVE**
**DEFENSES**

Defendant New Mexico Department of Transportation ("DOT") submits its Answer to

Plaintiffs' First Amended Complaint ("Complaint") for Wrongful Death, Negligence,

Negligence Per Se, Dram Shop, Intentional Spoliation of Evidence and Loss of Consortium

Damages, and affirmatively defends as follows:

1

1.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 1 of the Complaint and therefore denies them.

2.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 2 of the Complaint and therefore denies them.

3.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 3 of the Complaint and therefore denies them.

4.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 4 of the Complaint and therefore denies them.

5.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 5 of the Complaint and therefore denies them.

6.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 6 of the Complaint and therefore denies them.

7.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 7 of the Complaint and therefore denies them.

8.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 8 of the Complaint and therefore denies them.

9.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 9 of the Complaint and therefore denies them.

10.      DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 10 of the Complaint and therefore denies them.

11.      DOT admits the allegations in Paragraph 11 of the Complaint.

2

12.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 12 of the Complaint and therefore denies them.

13.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 13 of the Complaint and therefore denies them.

14.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 14 of the Complaint and therefore denies them but admits that this court has jurisdiction over it.

15.     DOT denies the allegations in Paragraph 15 of the Complaint.

16.     DOT denies the allegations in Paragraph 16 of the Complaint.

17.     DOT realleges and incorporates all responses contained in the above paragraphs as if fully set forth herein.

18.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 18 of the Complaint and therefore denies them.

19.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 19 of the Complaint and therefore denies them.

20.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 20 of the Complaint and therefore denies them.

21.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 21 of the Complaint and therefore denies them.

22.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 22 of the Complaint and therefore denies them.

23.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 23 of the Complaint and therefore denies them.

24.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 24 of the Complaint and therefore denies them.

25.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 25 of the Complaint and therefore denies them.

26.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 26 of the Complaint and therefore denies them.

27.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 27 of the Complaint and therefore denies them.

28.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 28 of the Complaint and therefore denies them.

29.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 29 of the Complaint and therefore denies them.

30.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 30 of the Complaint and therefore denies them.

31.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 31 of the Complaint and therefore denies them.

32.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 32 of the Complaint and therefore denies them.

33.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 33 of the Complaint and therefore denies them.

34.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 34 of the Complaint and therefore denies them.

35.     DOT denies the allegation of in Paragraph 35 of the Complaint.

36.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 36 of the Complaint and therefore denies them.

37.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph of the Complaint 37 and therefore denies them.

38.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 38 of the Complaint and therefore denies them.

39.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 39 of the Complaint and therefore denies them.

40.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 40 of the Complaint and therefore denies them.

41.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 41 of the Complaint and therefore denies them.

42.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 42 of the Complaint and therefore denies them.

43.     DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 43 of the Complaint and therefore denies them.

44.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 44 of the Complaint and therefore denies them.

45.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 45 of the Complaint and therefore denies them.

46.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 46 of the Complaint and therefore denies them.

47.    DOT denies the allegations of Paragraph 47 of the Complaint.

48.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 48 of the Complaint and therefore denies them.

49.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 49 of the Complaint and therefore denies them.

50.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 50 of the Complaint and therefore denies them.

51.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 51 of the Complaint and therefore denies them.

52.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 52 of the Complaint and therefore denies them.

53.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 53 of the Complaint and therefore denies them.

54.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

55.    The DOT denies the allegations in Paragraph 55 of the Complaint.

56.    The DOT denies the allegations in Paragraph 56 of the Complaint.

57.    The DOT denies the allegations in Paragraph 57 of the Complaint.

58.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

59.    The allegations of Paragraph 59 of the Complaint do not apply to this answering defendant, which therefore denies them.

60.    The allegations of Paragraph 60 of the Complaint do not apply to this answering defendant, which therefore denies them.

61.    The allegations of Paragraph 61 of the Complaint do not apply to this answering defendant, which therefore denies them.

62.    The allegations of Paragraph 62 of the Complaint do not apply to this answering defendant, which therefore denies them.

63.    The allegations of Paragraph 63 of the Complaint do not apply to this answering defendant, which therefore denies them.

64.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

65.    The allegations of Paragraph 65 of the Complaint do not apply to this answering defendant, which therefore denies them.

66.     The allegations of Paragraph 66 of the Complaint do not apply to this answering defendant, which therefore denies them.

67.     The allegations of Paragraph 67 of the Complaint do not apply to this answering defendant, which therefore denies them.

68.     The allegations of Paragraph 68 of the Complaint do not apply to this answering defendant, which therefore denies them.

69.     The allegations of Paragraph 69 of the Complaint do not apply to this answering defendant, which therefore denies them.

70.     The allegations of Paragraph 70 of the Complaint do not apply to this answering defendant, which therefore denies them.

71.     The allegations of Paragraph 71 of the Complaint do not apply to this answering defendant, which therefore denies them.

72.     DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

73.     The allegations of Paragraph 73 of the Complaint do not apply to this answering defendant, which therefore denies them.

74.     The allegations of Paragraph 74 of the Complaint do not apply to this answering defendant, which therefore denies them.

75.     The allegations of Paragraph 75 of the Complaint do not apply to this answering defendant, which therefore denies them.

76.     The allegations of Paragraph 76 of the Complaint do not apply to this answering defendant, which therefore denies them.

77.     The allegations of Paragraph 77 of the Complaint do not apply to this answering defendant, which therefore denies them.

78.     The allegations of Paragraph 78 of the Complaint do not apply to this answering defendant, which therefore denies them.

79.     The allegations of Paragraph 79 of the Complaint do not apply to this answering defendant, which therefore denies them.

80.     The allegations of Paragraph 80 of the Complaint do not apply to this answering defendant, which therefore denies them.

81.     The allegations of Paragraph 81 of the Complaint do not apply to this answering defendant, which therefore denies them.

82.     The allegations of Paragraph 82 of the Complaint do not apply to this answering defendant, which therefore denies them.

83.     The allegations of Paragraph 83 of the Complaint do not apply to this answering defendant, which therefore denies them.

84.     The allegations of Paragraph 84 of the Complaint do not apply to this answering defendant, which therefore denies them.

85.     The allegations of Paragraph 85 of the Complaint do not apply to this answering defendant, which therefore denies them.

86.    The allegations of Paragraph 86 of the Complaint do not apply to this answering defendant, which therefore denies them.

87.    The allegations of Paragraph 87 of the Complaint do not apply to this answering defendant, which therefore denies them.

88.    The allegations of Paragraph 88 of the Complaint do not apply to this answering defendant, which therefore denies them.

89.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

90.    DOT denies the allegations in Paragraph 90 of the Complaint.

91.    DOT denies the allegations in Paragraph 91 of the Complaint.

92.    DOT denies the allegations in Paragraph 92 of the Complaint.

93.    DOT denies the allegations in Paragraph 93 of the Complaint.

94.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

95.    The allegations of Paragraph 95 of the Complaint do not apply to this answering defendant, which therefore denies them.

96.    The allegations of Paragraph 96 of the Complaint do not apply to this answering defendant, which therefore denies them.

97.    The allegations of Paragraph 97 of the Complaint do not apply to this answering defendant, which therefore denies them.

98.    The allegations of Paragraph 98 of the Complaint do not apply to this answering defendant, which therefore denies them.

99.    The allegations of Paragraph 99 of the Complaint do not apply to this answering defendant, which therefore denies them.

100.    The allegations of Paragraph 100 of the Complaint do not apply to this answering defendant, which therefore denies them.

101.    The allegations of Paragraph 101 of the Complaint do not apply to this answering defendant, which therefore denies them.

102.    The allegations of Paragraph 102 of the Complaint do not apply to this answering defendant, which therefore denies them.

103.    The allegations of Paragraph 103 of the Complaint do not apply to this answering defendant, which therefore denies them.

104.    The allegations of Paragraph 104 of the Complaint do not apply to this answering defendant, which therefore denies them.

105.    The allegations of Paragraph 105 of the Complaint do not apply to this answering defendant, which therefore denies them.

106.    The allegations of Paragraph 106 of the Complaint do not apply to this answering defendant, which therefore denies them.

107.    The allegations of Paragraph 107 of the Complaint do not apply to this answering defendant, which therefore denies them.

108.    The allegations of Paragraph 108 of the Complaint do not apply to this answering defendant, which therefore denies them.

109.    The allegations of Paragraph 109 of the Complaint do not apply to this answering defendant, which therefore denies them.

110.    The allegations of Paragraph 110 of the Complaint do not apply to this answering defendant, which therefore denies them.

111.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

112.    The allegations of Paragraph 112 of the Complaint do not apply to this answering defendant, which therefore denies them.

113.    The allegations of Paragraph 113 of the Complaint do not apply to this answering defendant, which therefore denies them.

114.    The allegations of Paragraph 114 of the Complaint do not apply to this answering defendant, which therefore denies them.

115.    The allegations of Paragraph 115 of the Complaint do not apply to this answering defendant, which therefore denies them.

116.    The allegations of Paragraph 116 of the Complaint do not apply to this answering defendant, which therefore denies them.

117.    The allegations of Paragraph 117 of the Complaint do not apply to this answering defendant, which therefore denies them.

118.    The allegations of Paragraph 118 of the Complaint do not apply to this answering defendant, which therefore denies them.

119.    The allegations of Paragraph 119 of the Complaint do not apply to this answering defendant, which therefore denies them.

120.    The allegations of Paragraph 120 of the Complaint do not apply to this answering defendant, which therefore denies them.

121.    The allegations of Paragraph 121 of the Complaint do not apply to this answering defendant, which therefore denies them.

122.    The allegations of Paragraph 122 of the Complaint do not apply to this answering defendant, which therefore denies them.

123.    The allegations of Paragraph 123 of the Complaint do not apply to this answering defendant, which therefore denies them.

124.    The allegations of Paragraph 124 of the Complaint do not apply to this answering defendant, which therefore denies them.

125.    The allegations of Paragraph 125 of the Complaint do not apply to this answering defendant, which therefore denies them.

126.    The allegations of Paragraph 126 of the Complaint do not apply to this answering defendant, which therefore denies them.

127.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

13

128.    The allegations of Paragraph 128 of the Complaint do not apply to this answering defendant, which therefore denies them.

129.    The allegations of Paragraph 129 of the Complaint do not apply to this answering defendant, which therefore denies them.

130.    The allegations of Paragraph 130 of the Complaint do not apply to this answering defendant, which therefore denies them.

131.    The allegations of Paragraph 131 of the Complaint do not apply to this answering defendant, which therefore denies them.

132.    The allegations of Paragraph 132 of the Complaint do not apply to this answering defendant, which therefore denies them.

133.    The allegations of Paragraph 133 of the Complaint do not apply to this answering defendant, which therefore denies them.

134.    The allegations of Paragraph 134 of the Complaint do not apply to this answering defendant, which therefore denies them.

135.    The allegations of Paragraph 135 of the Complaint do not apply to this answering defendant, which therefore denies them.

136.    The allegations of Paragraph 136 of the Complaint do not apply to this answering defendant, which therefore denies them.

137.    The allegations of Paragraph 137 of the Complaint do not apply to this answering defendant, which therefore denies them.

138.    The allegations of Paragraph 138 of the Complaint do not apply to this answering defendant, which therefore denies them.

139.    The allegations of Paragraph 139 of the Complaint do not apply to this answering defendant, which therefore denies them.

140.    The allegations of Paragraph 140 of the Complaint do not apply to this answering defendant, which therefore denies them.

141.    The allegations of Paragraph 141 of the Complaint do not apply to this answering defendant, which therefore denies them.

142.    The allegations of Paragraph 142 of the Complaint do not apply to this answering defendant, which therefore denies them.

143.    The allegations of Paragraph 143 of the Complaint do not apply to this answering defendant, which therefore denies them.

144.    The allegations of Paragraph 144 of the Complaint do not apply to this answering defendant, which therefore denies them.

145.    The allegations of Paragraph 145 of the Complaint do not apply to this answering defendant, which therefore denies them.

146.    The allegations of Paragraph 146 of the Complaint do not apply to this answering defendant, which therefore denies them.

147.    The allegations of Paragraph 147 of the Complaint do not apply to this answering defendant, which therefore denies them.

148.    The allegations of Paragraph 148 of the Complaint do not apply to this answering defendant, which therefore denies them.

149.    The allegations of Paragraph 149 of the Complaint do not apply to this answering defendant, which therefore denies them.

150.    The allegations of Paragraph 150 of the Complaint do not apply to this answering defendant, which therefore denies them.

151.    The allegations of Paragraph 151 of the Complaint do not apply to this answering defendant, which therefore denies them.

152.    The allegations of Paragraph 152 of the Complaint do not apply to this answering defendant, which therefore denies them.

153.    The allegations of Paragraph 153 of the Complaint do not apply to this answering defendant, which therefore denies them.

154.    The allegations of Paragraph 154 of the Complaint do not apply to this answering defendant, which therefore denies them.

155.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

156.    The allegations of Paragraph 156 of the Complaint do not apply to this answering defendant, which therefore denies them.

157.    The allegations of Paragraph 157 of the Complaint do not apply to this answering defendant, which therefore denies them.

158.    The allegations of Paragraph 158 of the Complaint do not apply to this answering defendant, which therefore denies them.

159.    The allegations of Paragraph 159 of the Complaint do not apply to this answering defendant, which therefore denies them.

160.    The allegations of Paragraph 160 of the Complaint do not apply to this answering defendant, which therefore denies them.

161.    The allegations of Paragraph 161 of the Complaint do not apply to this answering defendant, which therefore denies them.

162.    The allegations of Paragraph 162 of the Complaint do not apply to this answering defendant, which therefore denies them.

163.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

164.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 164 of the Complaint and therefore denies them.

165.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 165 of the Complaint and therefore denies them.

166.    DOT is without knowledge or information to form a belief as to the truth of allegations made in Paragraph 166 of the Complaint and therefore denies them.

167.    DOT incorporates by reference all prior responses in this answer as though fully set forth herein.

168.    DOT denies the allegation of Paragraph 168 in the Complaint.

17

169.    DOT denies the allegation of Paragraph 169 in the Complaint.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The proximate cause of Plaintiffs' damages, if any, was not the act or omission of DOT.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs failed to comply with the provisions of the NMTCA, N.M.Stat.Ann.

§§ 41-4-1through 41-4-27 (1978 Comp.), which bars recovery.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims is barred in whole or in part by NMTCA, N.M.Stat.Ann. § 41-4-11 (1978).

## FIFTH AFFIRMATIVE DEFENSE

DOT breached no duty owed to Plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

At all times relevant, DOT acted in good faith, without malice, and within the lawful scope of their duties.

## SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff suffered any detriment, such was not caused by DOT.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff suffered any detriment by DOT, such was unavoidable and unforeseeable.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' damage, if any, was due to an independent, intervening cause and not due to any negligence on the part of DOT.

## TENTH AFFIRMATIVE DEFENSE

DOT's conduct was not reckless, careless, or indifferent to the safety of Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

Pursuant to N.M.Stat.Ann. §§ 41-4-19 (B) of the NMTCA, DOT is not liable for exemplary or punitive damages.

## TWELFTH AFFIRMATIVE DEFENSE

Punitive damages are not allowable under allegations made in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

If damages are found, DOT is entitled to an allocation of fault to and/or indemnification from any parties whose conduct proximately cause of contributed to cause injuries allegedly sustained by Plaintiff.

## FOURTEENTH AFFIRMATIVE DEFENSE

The injuries and damages allegedly suffered by Plaintiff, if any, were caused or contributed to by the wrongful, unlawful, and/or negligent acts of others, and, under the doctrine of comparative fault, Plaintiffs' claims are barred in whole or in part.

## FIFTEENTH AFFIRMATIVE DEFENSE

At all times relevant, the actions of DOT were reasonable proper and legal.

## SIXTEENTH AFFIRMATIVE DEFENSE

DOT does not know which, if any, additional affirmative defenses may apply.  DOT has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to adopt and assert additional affirmative defenses of which it may learn through discovery.

**WHEREFORE**, having fully answered and affirmatively defended, DOT respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice, award DOT their attorneys' fees and costs of this action and grant such other and further relief as the Court deems proper.

Respectfully submitted,
PEGUE & THOMPSON,
A Partnership

*Electronically Filed*

By *Philip Thompson*

Philip Thompson
Attorney for DOT
202 East Marcy Street
Santa Fe, New Mexico 87501
(505) 395-9558
pht@peguethompsonlaw.com

CERTIFCATE OF SERVICE

We hereby certify that on this 25th day of February 2022,
a copy was served via e-mail to opposing counsel
and submitted through the Court's efile and serve system.

PEGUE & THOMPSON

By *Philip Thompson*

Philip Thompson

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/1/2022 1:03 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

Case Number: D-101-cv-2022-00034

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

Assigned to: Wilson, Matthew Justin

**BARRY GREEN, as Personal Representative of**
**the Wrongful Death Estate of ROLANDA LAHI,**
**deceased, and FELIZ RAEL, as Guardian ad**
**Litem of A.S. and A.S., minor children,**

**Plaintiffs,**

v.

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL,**
**EDWARD KHADER, ADRIAN FOX,**
**JESSE OROZCO, the Estate of LUCAS LEE,**
**STATE OF NEW MEXICO,**
**NEW MEXICO DEPARTMENT OF TRANSPORTATION,**
**and FCA US LLC,**

**Defendants.**

**DEMAND FOR JURY TRIAL**

Defendant New Mexico Department of Transportation ("NMDOT") by and through counsel,

Pegue & Thompson (Philip Thompson) hereby requests a jury trial of the issues raised in the

First Amended Complaint and Defendant NMDOT's Answer to that complaint.

1

Respectfully submitted,
PEGUE & THOMPSON,
A Partnership

*Electronically Filed*

By <u>*Philip Thompson*</u>

Philip Thompson
Attorney for NMDOT
210 Montezuma Avenue, Suite 220
Santa Fe, New Mexico 87501
(505) 772-0473
pht@peguethompsonlaw.com

2

## CERTIFCATE OF SERVICE

We hereby certify that on this 1ST day of March 2022,
a copy was served via e-mail to opposing counsel
and submitted through the Court's efile and serve system.

PEGUE & THOMPSON

By *Philip Thompson*

Philip Thompson

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/1/2022 1:07 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

Case Number: D-101-cv-2022-00034

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

Assigned to: Wilson Matthew Justin

**BARRY GREEN, as Personal Representative of**
**the Wrongful Death Estate of ROLANDA LAHI,**
**deceased, and FELIZ RAEL, as Guardian ad**
**Litem of A.S. and A.S., minor children,**

**Plaintiffs,**

v.

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL,**
**EDWARD KHADER, ADRIAN FOX,**
**JESSE OROZCO, the Estate of LUCAS LEE,**
**STATE OF NEW MEXICO,**
**NEW MEXICO DEPARTMENT OF TRANSPORTATION,**
**and FCA US LLC,**

**Defendants.**

## NOTICE OF ENTRY OF APPEARANCE

COMES NOW Pegue & Thompson (Philip Thompson) and hereby enters its appearance

herein on behalf of Defendant New Mexico Department of Transportation.

Respectfully submitted,

PEGUE & THOMPSON, a
Partnership

By: */s/ Philip Thompson /s/*
Philip Thompson
210 Montezuma Avenue Suite 220
Santa Fe, New Mexico 87501
(505) 772-0437
pht@peguethompsonlaw.com

1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of March 2022, I caused the foregoing NOTICE to be submitted to Odyssey File & Serve, which in turn caused all counsel to be served by email.

*/s/Philip Thompsons/s/*
Philip Thompson

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
3/4/2022 4:21 PM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

           **Plaintiffs**

**v.**                             **No. D-101-CV-2022-00034**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

           **Defendants.**

## RULE 1-012(B)(1) MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION
## BY THE LAGUNA DEVELOPMENT CORPORATION DEFENDANTS

Defendants Laguna Development Corporation ("LDC"), Edward Khader, Adrian Fox,

and Jesse Orozco (collectively "the LDC Defendants"), through counsel, Jennings Haug Keleher

McLeod LLP (David W. Peterson), respectfully request that the Court dismiss this case for lack

of subject matter jurisdiction pursuant to Rule 1-012(B)(1).

### I. INTRODUCTION

The United States Supreme Court in *Williams v. Lee,* 358 U.S. 217 (1959) ruled that the

exercise of state court jurisdiction over claims against Indians arising within tribal territory

undermines the authority of tribal courts over reservation affairs and therefore "infringes" on the

tribe's right to govern itself and its territory.  This case implicates that rule because it interferes

with the Pueblo of Laguna's federally-protected right to make its own laws and adjudicate, with

its tribal court, reservation affairs free from state encroachment.  The Plaintiffs assert dram shop liability and associated spoliation claims that arose within Pueblo territory at a tribal gaming facility owned and operated by a tribal gaming enterprise and its employees.  The service of alcohol at a tribal gaming enterprise is authorized and regulated by Pueblo law.  The State of New Mexico acknowledges exclusive tribal authority over alcohol sales and overservice of alcohol by a tribal gaming enterprise and its employees at a tribal gaming facility within tribal territory.  Matters such as these fall within the Pueblo's sovereign authority and are protected from state court adjudication under the infringement doctrine announced in *Williams v. Lee*.

This jurisdictional bar remains undisturbed by the Compact between the Pueblo and State of New Mexico, which permits "visitors" to bring personal injury and property damage claims against a tribal gaming enterprise in accordance with a provision that (1) purports to shift jurisdiction over such claims from tribal courts to state courts to the extent authorized by the Indian Gaming Regulatory Act ("IGRA"), and (2) waives tribal sovereign immunity for those claims.  This provision, however, does not apply to this case because the Decedent was a traveler on I-40—not a "*visitor*" under the Compact.

Because of the Pueblo's tribal sovereign authority over the alleged alcohol sales in question and the absence of any applicable jurisdiction-shifting mechanism or waiver of sovereign immunity as to LDC, the Court must dismiss all claims against the LDC Defendants. The eventual consideration of the merits of the Plaintiffs' claims belong in tribal court.

## II. RULE 1-012(B)(1) STANDARDS

The initial burden of demonstrating a lack of subject matter jurisdiction is on the defendant.  *South v. Lujan*, 2014-NMCA-109, ¶ 14, 336 P.3d 1000.  Once properly raised, however, the presumption against state interference in tribal affairs shifts the burden to the

plaintiff. *Halwood v. Cowboy Auto Sales, Inc.*, 1997-NMCA-098, ¶ 14, 124 N.M. 77, 946 P.2d

1088 (citing *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 18 (1987) (recognizing that civil

jurisdiction "*presumptively* lies in the tribal courts" over the activities of non-Indians on tribal

lands)) (emphasis added); *State ex rel. Anaya v. Columbia Research Corp.*, 1978-NMSC-073, ¶

8, 92 N.M. 104 (holding that once jurisdictional allegations are properly challenged, the plaintiff

has the burden of proving jurisdictional facts).

Because the LDC Defendants factually attack the Court's subject matter jurisdiction

pursuant to Rule 1-012(B)(1) NMRA, neither Rule 1-012(B)(6) NMRA (failure to state a claim)

nor Rule 1-056 NMRA (summary judgment) standards apply.  The Court cannot presume the

truthfulness of the complaint and may find facts weighing for or against jurisdiction without

converting the motion into a summary judgment proceeding. *South*, 2014-NMCA-109, ¶¶ 8-10.

The Court is not bound by conclusory allegations and legal conclusions. *See Hackford v.

Babbitt,* 14 F.3d 1457, 1465 (10th Cir. 1994).  The difference between Rule 1-012(B)(1) and

Rule 1-012(B)(6) "is rooted in the unique nature of the jurisdictional question." *Osborn v.

United States,* 918 F.2d 724, 729 (8th Cir. 1990) (internal citations omitted).  "[A] district court

has 'broader power to decide its own right to hear the case than it has when the merits of the case

are reached.'" *Id.*  The "court is free to weigh the evidence and satisfy itself as to the existence

of its power to hear the case." *South*, 2014-NMCA-109, ¶ 8 (citing *Osborn*, 918 F.2d at 730).

### III. JURISDICTIONAL FACTS AND ALLEGATIONS

**A.  The Indian Status of the Parties.**

1.      The Pueblo of Laguna (the "Pueblo") is a sovereign, federally recognized Indian

Tribe.  *See* 84 Fed. Reg. 1200, 1204 (Feb. 1, 2019); Sanasac Decl., attached hereto as **Exhibit A.**

2.      The Pueblo is a party to the Indian Gaming Compact (the "Compact") between the Pueblo of Laguna and the State of New Mexico.  80 Fed. Reg. 64442 (Oct. 23, 2015). Pertinent provisions of the Compact are attached hereto as **Exhibit B.**

3.      The Compact contemplates the creation of a "Gaming Enterprise," a tribal entity "designated by the Tribe as having authority to conduct Class III Gaming pursuant to [the] Compact."  *Id.* § 2.I.  The Pueblo designated Laguna Development Corporation ("LDC" or "Laguna Development") as a gaming enterprise.  Ex. A.

4.      Laguna Development is chartered under §17 of the Indian Reorganization Act, 25 U.S.C. § 477 (now re-codified at 25 U.S.C. § 5124 (1990)).  Ex. A.  The Pueblo wholly owns Laguna Development.  *Id.*

5.      Laguna Development operates the Route 66 Casino.  *Id.*; Compl. ¶ 6.  Located within the exterior boundaries of the Pueblo, Ex. A, the Route 66 Casino is a "Gaming Facility" as defined in the Compact.  *Id.; see* Ex. B § 2.J (defining "Gaming Facility" as "each separate physical building or structure in which Class III Gaming is conducted on the Tribe's Indian Lands."); Ex. B § 2.L (defining "Indian Lands" to include "all lands within the exterior boundaries of the Tribe's reservation and its confirmed grants from prior sovereigns.").

6.      The individual LDC Defendants are not members of the Pueblo, Ex. A, but are employees of LDC.  LDC employs Defendant Adrian Fox as the General Manager of the Route 66 Casino.  Compl. ¶ 8.  LDC employs Defendant Edward Khader as the Director of IT (information technology).  *Id.* ¶ 7.  LDC employs Defendant Jesse Orozco as a surveillance manager.  *Id.* ¶ 9.

7.      The individual LDC Defendants are alleged to have acted within the scope of their employment, or to have acted through other LDC employees who acted within the scope of

their employment. *See e.g.,* Compl. ¶ 73 (Defendants "were employed by Route 66 Casino"); ¶ 74 ("Defendants acted individually or through their agents and employees, who were acting within the course and scope of their employment/agency."); ¶ 86 (alleging that LDC is vicariously liable under concepts of agency and *respondent superior* for the acts of managers and employees).

**B.  Alleged conduct alleged within the Pueblo.**

8.       The alleged conduct of the LDC Defendants occurred within the Pueblo. *See e.g.,* Compl. ¶ 75 (alleging over service of "alcohol at Route 66 Casino"); ¶ 83 (alleging the withholding of surveillance video taken "at Route 66 Casino.").

**C.  Tribal law concerning alcohol sales at LDC.**

9.       The Compact requires the Pueblo to have tribal laws concerning the service of alcohol to intoxicated persons (the "Liquor Control Law"). *See* Ex. B § 4.B.14(a) (The "Tribe shall adopt laws: . . . that prohibit an employee of the Gaming Enterprise from selling, serving, giving or delivering an alcoholic beverage to an intoxicated person or from procuring or aiding in the procurement of any alcoholic beverage for an intoxicated person at the Gaming Facility.").

10.      Violators of the Pueblo's Liquor Control Law are "subject . . . to legal action in accordance with Pueblo law" for violations including "knowingly sell[ing] liquor to a person who the seller has reason to believe is under the influence of alcohol." *See* 52 Fed. Reg. 15768 §§ 3, 8.D (Apr. 30, 1987); *see also* 65 Fed. Reg. 35121 (June 1, 2000) (addressing amendments).

11.      As "a corporation the majority stock of which is held by the Pueblo," LDC is "authorized to sale liquor" under the Pueblo's Liquor Control Law. *Id.* § 3.

**D. Visitor claims.**

12.    Section 8.A. of the Compact addresses a "limited waiver of [the Pueblo's] immunity from suit."  Ex. B. The scope of the waiver is limited to certain claims by "*visitors* to a Gaming Facility" "for *bodily injury* or property damage *proximately caused by the conduct of the Gaming Enterprise*."  *Id.* (emphasis added).

13.    This case does not involve a claim *by* a visitor to a gaming facility.  Rather, Plaintiffs allege a claim *against* a visitor to a gaming facility.  *See* Compl. ¶ ¶ 24, 29, 31, and 33 (alleging that LDC overserved Defendant Lucas Lee who left the gaming facility and collided with the Decedent as she drove westbound on I-40).

14.    The waiver does not extend beyond claims for "*compensatory damages* for bodily injury or property damage."  Ex. B § 8.D.  "This is a limited waiver and does not waive the Tribe's immunity from suit for any other purpose."  *Id.*

15.    The Compact provides that qualifying visitor claims "may be brought in state district court, including claims arising on tribal land, unless it is finally determined by a *state or federal court* that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court."  *Id.* § 8.A. (Emphasis added).

## IV. ARGUMENT

**A.    Exclusive Tribal Court Jurisdiction Over Claims Against Indians Arising on Tribal Lands and Sovereign Immunity Preclude State Court Jurisdiction over the LDC Defendants Absent Congressional Authorization and Applicable Waiver.**

The defense of exclusive tribal court jurisdiction requires dismissal of all claims against the LDC Defendants.  The separate defense of tribal sovereign immunity also precludes all claims against LDC and representative capacity claims against the individual LDC Defendants. "Tribal sovereign authority [which is the basis for exclusive tribal court jurisdiction] and tribal

sovereign immunity are distinct doctrines with different origins and purposes." *Hamaatsa, Inc. v.*
*Pueblo of San Felipe*, 2017-NMSC-007, ¶ 26. "[T]ribal sovereign authority, the power of a tribe
to exert what is necessary to protect self-governance and establish relations amongst its members
to the exclusion of state regulation, is inherently distinct from the notion of tribal sovereign
immunity-the plenary right to be free from having to answer a suit." *Id.* Each doctrine
independently requires dismissal of this case.

1. The Tribal Court has Exclusive Jurisdiction over Plaintiffs' Claims against Tribal
   Enterprises and their Employees Arising on Pueblo Lands.

In *Williams v. Lee*, 358 U.S. 217, 220 (1959), the United States Supreme Court held that
state courts have no jurisdiction over a civil claim against an Indian for a transaction arising on
tribal land. To permit state court jurisdiction in this context "would undermine the authority of
the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to
govern themselves." *Id.* at 223. The "infringement doctrine," as it has come to be known, thus
protects the tribe's right "to govern itself independently of state law." *Fisher v. Dist. Court of
Sixteenth Judicial Dist.*, 424 U.S. 382, 386 (1976). The doctrine precludes state courts from
interfering with the authority of tribal courts over reservation affairs where—as here—the claims
asserted are alleged to have occurred on Pueblo lands at a tribally-owned facility and are directed
against a tribal business and its employees.

New Mexico courts have repeatedly recognized and enforced the infringement doctrine
through an "infringement test." *Garcia v. Gutierrez*, 2009-NMSC-044, ¶ 47, 147 N.M. 105, 217
P.3d 591 (describing the elements of the infringement test); *Hartley v. Baca*, 1981-NMCA-080,
¶¶ 6-7, 97 N.M. 441, 640 P.2d 941 (applying the infringement test to preclude claim against an
Indian defendant arising from accident on State Road 30 within the Pueblo of Santa Clara);

*Hinkle v. Abeita*, 2012-NMCA-074, ¶¶ 2, 23, 283 P.3d 877 (same, involving accident on State Highway 314 within the Pueblo of Isleta). Under the infringement test, the New Mexico courts consider three factors: (1) whether the parties are Indian or non-Indian; (2) whether the cause of action arose within the Indian reservation; and (3) the nature of the interest to be protected. *Found. Reserve Ins. Co. v. Garcia,* 1987-NMSC-024, ¶ 6.

Moreover, unless a federal statute explicitly provides otherwise, the infringement test requires that the tribal courts exercise exclusive tribal court jurisdiction over civil claims against tribes, tribal enterprises, and their tribal employees arising on tribal lands. *See e.g., Doe v. Santa Clara Pueblo*, 2007-NMSC-008, ¶ 18, 141 N.M. 269, 154 P.3d 644. The ultimate question under the infringement doctrine, however, is "whether the state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." *Williams*, 358 U.S. at 220.

a.    LDC is a tribal enterprise and employed the individual LDC Defendants.

LDC is a tribal enterprise owned and operated by the Pueblo of Laguna. Facts ¶ 4.  This fact weighs conclusively against state court jurisdiction. *Doe*, 2007-NMSC-008, ¶ 18 ("[A]s a general proposition of Indian law derived from the sovereign status of Indian tribes, tribal courts have exclusive jurisdiction over claims arising on tribal lands against tribes, tribal members, or tribal entities.").  As a tribal enterprise, LDC easily falls within the scope of this factor.  *cf. Sanchez v. Santa Ana Golf Club, Inc.*, 2005-NMCA-003, ¶ 6, 136 N.M. 682, 104 P.30 548 (rejecting claims against a corporation owned and operated by the Pueblo of Santa Ana on the grounds of sovereign immunity and noting that "entities under tribal control are extended the same sovereign immunity as the tribe itself.").

The conclusion is the same for the individual employees of LDC whether they are Indian or non-Indian. The Supreme Court made it plain that it was "immaterial that [the plaintiff] is not

8

an Indian," *Williams*, 358 U.S. at 223, because tribal governments and their courts have authority

over all people within their territory. Moreover, without regard to tribal membership, and as

recognized in the Compact, Pueblo law governs the alleged overservice of alcohol by

"employee[s] of the Gaming Enterprise." *See* Facts ¶ 9-11 above and Ex. B § 2.A.(14).  The

employee status of the individual LDC Defendants as well determines that this factor favors

tribal court jurisdiction as to them.  *See Haynes v. Lujan,* No. A-1-CA-38014, 2021 N.M. App.

Unpub. LEXIS 232, at *11-12 (Ct. App. July 22, 2021)(weighing tribal employee status of non-

Indian defendant against state jurisdiction in suit arising out of tribal employment) (citing

*Tempest Recovery Servs. Inc. v. Belone*, 2003-NMSC-019, ¶ 13, 134 N.M. 133, 74 P.3d 67

("Indian nations also possess a broad measure of civil jurisdiction over the activities of non-

Indians on Indian reservation lands in which the tribes have a significant interest.")); *see also*

*Halwood*, 1997-NMCA-098, ¶ 14 (citing *LaPlante*, 480 U.S. at 18 for the proposition that civil

jurisdiction "*presumptively* lies in the tribal courts" over the activities of non-Indians on tribal

lands engaged in activities pursuant to contractual arrangements with tribes.); *Chino v. Chino*,

1977-NMSC-020, ¶ 13, 90 N.M. 203, 561 P.2d 476 (finding state jurisdiction lacking to

determine occupancy rights in reservation land regardless of "whether [the] owners are Indians

or non-Indians."); *Diepenbrock v. Merkel*, 97 P.3d 1063, 1068, 33 Kan. App. 2d 97 (2004)

(finding no state jurisdiction over reservation-based claims against non-Indian employees of tribe

acting within the scope of their employment); *Kizis v. Morse Diesel Intern., Inc.,* 794 A.2d 498,

505, 260 Conn. 46 (Conn. 2002) (same).

      b.     The cause of action arose within the Pueblo of Laguna reservation.

     Plaintiffs in their complaint acknowledge that their causes of action—overservice of

alcohol and spoliation—occurred at a tribal facility within Pueblo territory.  But Plaintiffs, claim

that the on-reservation conduct of a tribal enterprise resulted in a vehicle accident on a federal highway outside Pueblo territory.  The Ninth Circuit Court of Appeals upheld exclusive tribal court jurisdiction under these same facts in *Smith v. Salish Kootenai College*, 434 F.3d 1127 (9th Cir. 2006) (cited approvingly in *Hinkle,* 2012-NMCA-074, ¶¶ 14, 31, 283 P.3d 877).  There, the court addressed claims, including spoliation, against a tribal college by a non-Indian injured in vehicle accident on a federal highway that allegedly resulted from the maintenance of the vehicle by the college within tribal territory.  434 F.3d at 1129.  Notwithstanding that the accident occurred on non-tribal land, the court found that Smith's claims "implicated [the college's] actions on the college campus, not on the [federal] highway."  *Id.* at 1135.  The court therefore concluded that *"*Smith alleged negligence occurring on the reservation, on lands and in the shop controlled by a tribal entity."  *Id.*  Smith's spoliation claim "similarly implicated [the college's] actions at the [reservation-based] college."   *Id.*  As a result, the court concluded that "Smith's claim arose out of activities conducted or controlled by a tribal entity on tribal lands."  *Id.*

On this point, *Salish Kootenai College* is consistent with the decisions of state and federal courts in New Mexico addressing alleged overservice of alcohol by a tribal gaming enterprise on tribal land resulting in an accident outside tribal territory.  These courts recognized that such claims arise within tribal land and are therefore within the exclusive jurisdiction of the tribal court unless federal law—IGRA—expressly authorizes jurisdiction over tort claims to be shifted from tribal courts to state court under § 8.A. of the Compact.  *See Mendoza v. Tamaya Enters.*, 2011-NMSC-030, ¶¶ 12-13, 15, 150 N.M. 258, 258 P.3d 1050 (finding state jurisdiction proper "even if the claims arose on tribal land" because jurisdiction-shifting provision for "casino visitors' personal injury claims" was "enforceable); *Pueblo of Santa Ana v. Nash*, 972 F. Supp. 2d 1254, 1266 (disagreeing and declaring that the state district court in *Mendoza* lacked

jurisdiction because IGRA does not authorize any purported "allocation of jurisdiction from tribal court to state court over a personal injury claim *arising* from the allegedly negligent serving of alcohol on Indian land.").

Both *Mendoza* and *Nash* share the same starting point: tribal courts have jurisdiction over dram shop claims arising at a tribal gaming facility within tribal territory even though a car accident may later occur outside tribal territory. Such jurisdiction is exclusive unless a federal statute authorizes shifting jurisdiction to state court. Jurisdiction-shifting under § 8.A. of the Compact, whether authorized by IGRA or not,[1] is not triggered in this case because the Plaintiffs do not allege that the Decedent was a visitor to a gaming facility as required by the Compact. Indeed, visitor status is a threshold prerequisite for showing a waiver of immunity and application of the purported jurisdiction shifting provision. *See* Section B below. No such status is alleged here.

        c.      A paramount interest to be protected is the Pueblo's sovereign authority to make its own laws and be governed by them.

Sovereigns have an interest in "enacting and enforcing" their own law. *Maine v. Norton*, 257 F. Supp. 2d 357, 373-74 (D. Me. 2003). The Supreme Court, in *Williams v. Lee*, confirmed that Indian tribes and their tribal courts have the same interest. New Mexico has a "venerable

---

[1] *Sipp v. Buffalo Thunder, Inc.*, No. A-1-CA-36924, 2021 N.M. App. LEXIS 67 (Ct. App. Dec. 8, 2021) recognizes the conflict between New Mexico state courts and federal court decisions regarding whether IGRA authorizes shifting jurisdiction. It acknowledges *Nash,* 972 F. Supp. 2d 1254; *Navajo Nation v. Dalley,* 896 F.3d 1196, 1200 (10th Cir. 2018) (holding that IGRA does not authorize state court jurisdiction over an slip-and-fall on a wet bathroom floor within a tribal gaming facility), and *Mich. v. Bay Mills Indian Cmty.,* 572 U.S. 782 (2014) (establishing the proper method of statutory interpretation of IGRA utilized by the *Dalley* court which is contrary to the method utilized by New Mexico courts). The *Sipp* court found itself constrained by the opposite, more-dated approach of the New Mexico Supreme Court's approach in *Doe v. Santa Clara Pueblo*, 2007-NMSC-008. The New Mexico Supreme Court, however, will not be so constrained when it revisits its outdated approach having granted certiorari review in *Sipp.*

tradition of deferring to a tribal government's exercise of the sovereign power." *Hinkle*, 2012-NMCA-074, ¶ 22. That tradition is supported by strong federal policy and is shown in New Mexico's (1) recognition of tribal authority over alcohol sales on tribal lands in the New Mexico Liquor Control Act; (2) agreement in the Compact that tribal law, not state law, governs alcohol service, including prohibitions on service to intoxicated persons at tribal casinos; and (3) and legislative and judicial decisions against assuming broader civil and criminal jurisdiction over tribal lands. *See* NMSA 1978, §60-3A-5; Ex. B § 4.B.(14)(1)(addressing the adoption of tribal laws prohibiting alcohol sales to intoxicated persons); and *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence,* 875 F.3d 539, 543 (10th Cir. 2017) (stating that Public Law 280 permits "state-court jurisdiction over litigation arising in Indian country in which an Indian is a party only when certain actions [required by Public Law 280] are taken by a state or tribe.").

As required by the Compact, the Pueblo's Liquor Control Ordinance prohibits service of alcohol to intoxicated persons and subjects violators of the Pueblo's Liquor Control law "to legal action in accordance with Pueblo law." *See* Fact ¶ 10. The primacy of the Pueblo's interest in enforcing tribal law using tribal procedures and courts is well established. *See Williams,* 358 U.S. at 220 (addressing the policy of encouraging tribal lawmaking and strengthening tribal courts); *Tempest Recovery*, 2003-NMSC-019, ¶ 15 n.3 (recognizing that "tribal courts play a vital role in tribal self-government."); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 (1978) ("Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians.").

Application of the three infringement test factors demonstrates state court jurisdiction over the Plaintiffs' dram shop liability and spoliation claims is precluded by the federal

infringement doctrine.    Both federal and state law and policy recognize that tribal law and regulation apply to reservation-based alcohol sales and that, in this context, the exercise of state court jurisdiction impermissibly interferes with tribal regulation and tribal court adjudication of these matters.    Accordingly, this Court should dismiss for lack of subject matter jurisdiction under the infringement doctrine.

   2.    Tribal Sovereign Immunity Precludes Suit Against Tribal Enterprises and Their
         Employees Sued in their Representative Capacity.

   "Indian tribes are generally entitled to immunity from suit." *Lewis v. Clarke,* 137 S. Ct. 1285, 1289 (2017). The Pueblo of Laguna is no exception. *See Armijo v. Pueblo of Laguna,* 2011-NMCA-006, ¶ 1, 149 N.M. 234 ("We hold that the Pueblo is immune from suit under the doctrine of tribal sovereign immunity and, further, that the Pueblo is an indispensable party who cannot be joined."); *Sanchez v. Santa Ana Golf Club, Inc.*, 2005-NMCA-003, ¶ 5, 136 N.M. 682, 104 P.3d 548 (holding that tribes are immune from suit in state court absent "an unequivocal and express waiver of sovereign immunity or congressional authorization.").    "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers."  *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 7, 132 N.M. 207 (quoting *Martinez*, 436 U.S. at 58).    That immunity, as the United States Supreme Court explained, is "a necessary corollary to Indian sovereignty and self-governance."  *Hamaatsa* 2017-NMSC-007, ¶ 20 (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986)).    Tribes retain a unique status as "separate sovereigns pre-existing the Constitution." *Martinez*, 436 U.S. at 56.    Such immunity is a matter of federal law and is not subject to diminution by the states.  *Gallegos*, 2002-NMSC-012, ¶ 7 (citing *Three Affiliated Tribes of Fort Berthold Reservation,* 476 U.S. at 891). "Thus, unless and until

Congress acts, the tribes retain their historic sovereign authority." *Bay Mills Indian Cmty.* 134 S. Ct. at 2030 (internal quotation marks and citation omitted).

Sovereign immunity also extends to tribal enterprises, such as § 17 corporations like LDC. *Sanchez*, 2005-NMCA-003, ¶ 6, (holding that "[o]ther entities under tribal control are extended the same sovereign immunity as the tribe itself" and applying tribal sovereign immunity to a tribally owned § 17 corporation). LDC's employees also enjoy immunity protections on claims asserted against them in their representative capacity as a surrogate for LDC. *See* allegations that the individual LDC defendants acted individually, "or through their agents and employees." Compl. ¶¶ 74-76, 80.

**B.    Plaintiffs' Claims Exceed the Narrow Scope of the Compact's Jurisdiction-Shifting / Waiver Provision.**

To the extent that the Plaintiffs' allege in their Complaint that Section 8 of the Compact waives LDC's sovereign immunity from suit and grants state jurisdiction over the claims by "visitors" against LDC and its employees arising within Pueblo territory, that section does not apply here because the Decedent was not a "visitor." To be sure, Section 8 applies solely to claims for "compensatory" damages by "visitors" to a Gaming Facility for "bodily injury" or "property damage" "proximately caused by the Gaming Enterprise." Facts ¶¶ 12, 14.

For the Compact's waiver / jurisdiction-shifting provision to apply, a plaintiff must show that she "is a 'visitor' as that term is used in the gaming compact," *R&R Deli Inc. v. Santa Ana Star Casino*, 2006-NMCA-020, ¶ 19, 2006-NMCA-020, 128 P.3d 513 and that the injury occurred at a "Gaming Facility." Visitor means a "casino patron." *Id.* ¶ 21 ("We find the waiver provision in the gaming compact to be unambiguous" and, "[b]y its plain language, the waiver is geared toward personal injury claims brought by casino patrons."); *Doe*, 2007-NMSC-008, ¶ 40

(holding that the protection of Section 8 of the Compact "extends to personal injuries sustained by those patronizing the casinos"). The Plaintiffs do not allege that the Decedent was a casino patron.

Rather the Plaintiffs allege that that the Decedent "was driving westbound on I-40," not that she was a visitor or casino patron.  This case differs from those recently described the New Mexico Court of Appeals in *Sipp v. Buffalo Thunder, Inc.*, No. A-1-CA-36924, 2021 N.M. App. LEXIS 67, at *19 (Ct. App. Dec. 8, 2021)(cert. granted) where New Mexico courts "allowed claims for physical injuries occurring outside the gaming facility to proceed in state court when [1] the injured party was a visitor to the gaming facility and [2] the party's injury was caused by the Gaming Enterprise."  Here the Decedent was not a visitor to the gaming facility and, therefore, there is no sovereign immunity waiver under the Compact.

Of the cases discussed in *Sipp, Mendoza,* 2011-NMSC-030, is the most instructive.  In *Mendoza*, the plaintiffs, like in this case, asserted dram shop liability claims against a tribal gaming enterprise.  However, unlike in this case, the Mendoza plaintiffs were patrons who alleged that the gaming enterprise served them alcohol at the gaming facility prior to their off-reservation accident. *Id.* ¶ 2. The Plaintiffs make no allegation here that the Decedent was a visitor or that LDC served alcohol to the Decedent.  As a result, the Compact's waiver of immunity has not been triggered.

The Decedent's non-visitor status dictates that the Plaintiffs' other claims for punitive damages and loss of consortium are also barred by LDC's sovereign immunity.  The Compact waives the "defense of sovereign immunity in connection with any claims for *compensatory* damages for bodily injury or property damage . . ." Ex. B § 8.D. (emphasis added).  As a result, the scope of the waiver is limited to compensatory damages.  *See e.g., Campo Band of Mission*

15

*Indians v. Superior Court*, 39 Cal. Rptr. 3d 875, 881-82 (2006) (noting an example of a tribe specifically excluding liability for punitive damages from a gaming compact); *Cf. Torrance County Mental Health Program, Inc. v. N.M. Health & Env't Dept.*, 1992-NMSC-026, ¶ 19, 113 N.M. 593, 830 P.2d 145 (holding that the lack of express mention of punitive damages within a sovereign's statement on preserved immunity cannot be read as expressing an intention to waive immunity for punitive damages).

The Compact similarly is limited to claims for "bodily injury" and "property damage." New Mexico authority recognizes that the scope of these terms does not extend to loss of consortium claims. *Guzman v. Laguna Dev. Corp.*, 2009- NMCA-116, ¶ 26, 147 N.M. 244. 219 P.3d 12 (holding that emotional injury resulting from loss of consortium is not a bodily injury and therefore exceeds the scope of Section 8). As a result, to the extent that Section 8.A. applies at all, punitive damages and loss of consortium do not apply and should be dismissed.

## V.    CONCLUSION.

For the forgoing reasons, Defendants Laguna Development Corporation, Adrian Fox, Edward Khader, and Jesse Orozco request that the Court dismiss this action for lack of subject matter jurisdiction and for such other relief that the Court deems just.

Respectfully submitted:

JENNINGS HAUG KELEHER McLEOD LLP

By:  */s/ David W. Peterson*
David W. Peterson
P.O. Box AA
Albuquerque, NM 87103
Tel: (505) 346-4646
Fax: (505) 346-1370
dwp@jhkmlaw.com
*Attorneys for the LDC Defendants*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2022, I filed the foregoing electronically through the Odyssey File & Serve System, which caused all parties or counsel to be served by electronic means, and, I also emailed the foregoing to the following counsel of record:

Christopher J. Supik
Christopher DeLara
David C. Odegard
DeLara | Supik | Odegard P.C.
P.O. Box 91596
Albuquerque, NM 87199
Tel: (505) 999-1500
supik@delaralaw.com
chris@delaralaw.com
odegard@delaralaw.com
*Attorneys for Barry Green, as Personal Representative*
*of the Wrongful Death Estate of Rolanda Lahi, deceased, and*
*Feliz Rael, as Guardia ad Litem of A.S. and A.S., minor children*

Philip Thompson
PEGUE & THOMPSON
202 East Marcy Street
Santa Fe, New Mexico 87501
Tel: (505) 395-9558
pht@peguethompsonlaw.com
*Attorney for New Mexico Department of Transportation*

E. Todd Tracy
THE TRACY FIRM
4701 Bengal Street
Dallas, Texas 75235
Tel: (214) 324-9000
ttracy@vehiclesafetyfirm.com
*Attorneys for Plaintiffs*

 */s/ David W. Peterson*
David W. Peterson

NM13295-0027/5073472.DOCX

17

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

          Plaintiffs

v.                                No. D-101-CV-2022-00034

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC,

          Defendants.

## DECLARATION OF ALICIA SANASAC

1.     My name is Alicia Sanasac. I am the Associate Counsel for Laguna Development Corporation. This declaration is based on my personal knowledge.

2.     The Pueblo of Laguna (the "Pueblo") is a federally recognized Indian tribe.

3.     The Pueblo wholly owns Laguna Development Corporation.

4.     Laguna Development Corporation is chartered under §17 of the Indian Reorganization Act, 25 USC § 477 (now re-codified at 25 USC § 5124).

5.     The Pueblo designated Laguna Development Corporation as the Gaming Enterprise authorized to conduct Class III gaming and to operate the route 66 Casino.

6.     The Route 66 Casino is located within the Pueblo.

7.    The individual Defendants Adrian Fox, Edward Khader, and Adrian Fox are not members of the Pueblo, but are employees of LDC.

8.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: *March 3, 2022*

*Alicia S*
Alicia Sanasac, Esq.

64442        Federal Register / Vol. 80, No. 205 / Friday, October 23, 2015 / Notices

influence agency decisions are: (1) Those supported by quantitative information or studies; and (2) Those that include citations to, and analyses of, the applicable laws and regulations. We will not consider or include in our administrative record comments we receive after the close of the comment period (see **DATES**) or comments delivered to an address other than those listed above (see **ADDRESSES**).

*B. May I review comments submitted by others?*

Comments, including names and street addresses of respondents, will be available for public review at the street address listed under **ADDRESSES**. The public may review documents and other information applicants have sent in support of the application unless our allowing viewing would violate the Privacy Act or Freedom of Information Act. Before including your address, phone number, email address, or other personal identifying information in your comment, you should be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you can ask us in your comment to withhold your personal identifying information from public review, we cannot guarantee that we will be able to do so.

**II. Background**

To help us carry out our conservation responsibilities for affected species, and in consideration of section 10(a)(1)(A) of the Endangered Species Act of 1973, as amended (16 U.S.C. 1531 *et seq.*), along with Executive Order 13576, "Delivering an Efficient, Effective, and Accountable Government," and the President's Memorandum for the Heads of Executive Departments and Agencies of January 21, 2009—Transparency and Open Government (74 FR 4685; January 26, 2009), which call on all Federal agencies to promote openness and transparency in Government by disclosing information to the public, we invite public comment on these permit applications before final action is taken.

**III. Permit Applications**

*Endangered Species*

Applicant: Megan Cattau, New York, NY; PRT–61197B

The applicant requests a permit to import hair samples from wild orangutans (*Pongo pygmaeus*) from Indonesia for scientific research purposes.

Applicant: Tanganyika Wildlife Park, Goddard, KS; PRT–57032B

The applicant requests a permit to import one male and three female captive-bred cheetahs (*Acinonyx jubatus*) from De Wildt Cheetah Breeding Centre, De Wildt, South Africa, for the purpose of enhancement of the survival of the species.

Applicant: Christopher Shaw, Rolla, MO; PRT–78416b

The applicant requests a permit to import a sport-hunted trophy of one male bontebok (*Damaliscus pygargus pygargus*) culled from a captive herd maintained under the management program of the Republic of South Africa, for the purpose of enhancement of the survival of the species.

**Brenda Tapia,**
*Program Analyst/Data Administrator, Branch of Permits, Division of Management Authority.*
[FR Doc. 2015–26877 Filed 10–22–15; 8:45 am]
BILLING CODE 4333–15–P

**DEPARTMENT OF THE INTERIOR**

**Bureau of Indian Affairs**

[156A2100DD/AAKC001030/
A0A501010.999900 253G]

**Indian Gaming**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of extension of Tribal-State Class III Gaming Compact.

**SUMMARY:** This publishes notice of the extension of the Class III gaming compact between the Pyramid Lake Paiute Tribe and the State of Nevada.

**DATES:** *Effective Date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Deputy Assistant Secretary—Policy and Economic Development, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Pursuant to 25 CFR 293.5, an extension to an existing tribal-state Class III gaming compact does not require approval by the Secretary if the extension does not include any amendment to the terms of the compact. The Pyramid Lake Paiute Tribe and the State of Nevada have reached an agreement to extend the expiration of their existing Tribal-State Class III gaming compact to February 23, 2017. This publishes notice of the new expiration date of the compact.

Dated: October 16, 2015.

**Kevin K. Washburn,**
*Assistant Secretary—Indian Affairs.*
[FR Doc. 2015–27080 Filed 10–22–15; 8:45 am]
BILLING CODE 4337–15–P

**DEPARTMENT OF THE INTERIOR**

**Bureau of Indian Affairs**

[156A2100DD/AAKC001030/
A0A501010.999900 253G]

**Indian Gaming**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Tribal-State Class III Gaming Compacts taking effect.

**SUMMARY:** The Bureau of Indian Affairs provides notice that the Tribal State Compact between the State of California and the Jackson Band of Miwuk Indians governing Class III gaming (Compact) is effective on publication of this notice.

**DATES:** *Effective Date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Deputy Assistant Secretary—Policy and Economic Development, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Under section 11 of the Indian Gaming Regulatory Act (IGRA) Public Law 100–497, 25 U.S.C. 2701 *et seq.*, the Secretary of the Interior shall publish in the **Federal Register** notice of approved Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. As required by 25 CFR 293.4, all compacts are subject to review and approval by the Secretary. The Secretary took no action on the Compact within 45 days of its submission. Therefore, the Compact is considered to have been approved, but only to the extent the Compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

Dated: October 16, 2015.

**Kevin K. Washburn,**
*Assistant Secretary—Indian Affairs.*
[FR Doc. 2015–27080 Filed 10–22–15; 8:45 am]
BILLING CODE 4337–15–P

**DEPARTMENT OF THE INTERIOR**

**Bureau of Indian Affairs**

[156A2100DD/AAKC001030/
A0A501010.999900 253G]

**Indian Gaming**

**AGENCY:** Bureau of Indian Affairs, Interior.

Federal Register / Vol. 80, No. 205 / Friday, October 23, 2015 / Notices

**ACTION:** Notice of Tribal-State Class III Gaming Compact taking effect.

**SUMMARY:** Notice is hereby given that the Indian Gaming Compact between the State of New Mexico and the Pueblo of Laguna governing Class III gaming (Compact) is taking effect.

**DATES:** *Effective date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Assistant Secretary—Indian Affairs, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Under section 11 of the Indian Gaming Regulatory Act (IGRA) Public Law 100–497, 25 U.S.C. 2701 *et seq.*, the Secretary of the Interior shall publish in the Federal Register notice of approved Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. As required by 25 CFR 293.4, all compacts are subject to review and approval by the Secretary. The Secretary took no action on the Compact within 45 days of its submission. Therefore, the Compact is considered to have been approved, but only to the extent the Compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

Dated: October 16, 2015.

**Kevin K. Washburn,**

*Assistant Secretary—Indian Affairs.*

[FR Doc. 2015–27088 Filed 10–22–15; 8:45 am]

**BILLING CODE 4337–15–P**

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

[156A2100DD/AAKC001030/ A0A501010.999900 253G]

### Indian Gaming

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Tribal-State Class III Gaming Compact taking effect.

**SUMMARY:** Notice is hereby given that the Indian Gaming Compact between the State of New Mexico and the Pueblo of Tesuque governing Class III gaming (Compact) taking effect.

**DATES:** *Effective date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Assistant Secretary—Indian Affairs, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Under section 11 of the Indian Gaming Regulatory Act (IGRA) Public Law 100–497, 25 U.S.C. 2701 *et seq.*, the Secretary of the Interior shall publish in the Federal Register notice of approved

Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. As required by 25 CFR 293.4, all compacts are subject to review and approval by the Secretary. The Secretary took no action on the Compact within 45 days of its submission. Therefore, the Compact is considered to have been approved, but only to the extent the Compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

Dated: October 16, 2015.

**Kevin K. Washburn,**

*Assistant Secretary—Indian Affairs.*

[FR Doc. 2015–27082 Filed 10–22–15; 8:45 am]

**BILLING CODE 4337–15–P**

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

[156A2100DD/AAKC001030/ A0A501010.999900 253G]

### Indian Gaming

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Tribal-State Class III Gaming Compacts taking effect.

**SUMMARY:** Notice is hereby given that the Indian Gaming Compact between the State of New Mexico and the Pueblo of Santa Clara governing Class III gaming (Compact) is taking effect.

**DATES:** *Effective date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Assistant Secretary—Indian Affairs, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Under section 11 of the Indian Gaming Regulatory Act (IGRA) Public Law 100–497, 25 U.S.C. 2701 *et seq.*, the Secretary of the Interior shall publish in the Federal Register notice of approved Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. As required by 25 CFR 293.4, all compacts are subject to review and approval by the Secretary. The Secretary took no action on the Compact within 45 days of its submission. Therefore, the Compact is considered to have been approved, but only to the extent the Compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

Dated: October 16, 2015.

**Kevin K. Washburn,**

*Assistant Secretary—Indian Affairs.*

[FR Doc. 2015–27091 Filed 10–22–15; 8:45 am]

**BILLING CODE 4337–15–P**

---

## DEPARTMENT OF THE INTERIOR

### Office of the Secretary

[ONRR–2012–0003 DS63602000 DR2000000.PX8000 167DD0102R2]

### U.S. Extractive Industries Transparency Initiative Advisory Committee Request for Nominees

**AGENCY:** Office of Natural Resources Revenue, Interior.

**ACTION:** Notice.

**SUMMARY:** The Department of the Interior (Interior) is seeking nominations for individuals to be Committee members or alternates on the U.S. Extractive Industries Transparency Initiative Advisory Committee (Committee). We seek nominees who can represent stakeholder constituencies from government, civil society, and industry so that we can fill current vacancies and create a roster of candidates in case future vacancies occur.

**DATES:** Submit nominations by December 31, 2015.

**ADDRESSES:** You may submit nominations by any of the following methods:

• Mail or hand-carry nominations to Ms. Rosita Compton Christian; Department of the Interior, 1849 C Street NW., MS 4211, Washington, DC 20240.

• Email nominations to *USEITI@ ios.doi.gov*.

**FOR FURTHER INFORMATION CONTACT:** Rosita Compton Christian at (202) 208–0272 or (202) 513–0597; fax (202) 513–0682; email *Rosita.ComptonChristian@ onrr.gov* or *USEITI@ios.doi.gov*; or via mail at the Department of the Interior; 1849 C Street NW., MS 4211; Washington, DC 20240.

**SUPPLEMENTARY INFORMATION:** Interior established the Committee on July 26, 2012, in accordance with the provisions of the Federal Advisory Committee Act (FACA), as amended (5 U.S.C. App.2), and with the concurrence of the General Services Administration. The Committee serves as the U.S. Extractive Industries Transparency Initiative Multi-Stakeholder Group and advises the Secretary of the Interior on design and implementation of the initiative.

The Committee does the following:

• Oversees the U.S. implementation of the Extractive Industries Transparency Initiative (EITI), a global standard for governments to publicly disclose revenues received from oil, gas, and mining assets belonging to the government, with parallel public disclosure by companies of payments to the

# INDIAN GAMING COMPACT

## BETWEEN

## THE STATE OF NEW MEXICO

## AND

## THE PUEBLO OF LAGUNA

TABLE OF CONTENTS

SECTION 1.    Purpose and Objectives. ................................................................... 2

SECTION 2.    Definitions. .................................................................................... 2

SECTION 3.    Authorized Class III Gaming. ........................................................ 5

SECTION 4.    Conduct of Class III Gaming. ........................................................ 6

SECTION 5.    Licensing Requirements. ............................................................... 18

SECTION 6.    Providers of Class III Gaming Equipment or Devices or Supplies. ............... 19

SECTION 7.    Dispute Resolution. ..................................................................... 19

SECTION 8.    Protection of Visitors. ................................................................. 20

SECTION 9.    Execution; Effective Date; Claims under Predecessor Agreement. ............... 22

SECTION 10.   Criminal Jurisdiction. ................................................................. 23

SECTION 11.   Revenue Sharing. ....................................................................... 24

SECTION 12.   Duration; Termination for Non-Payment. ...................................... 26

SECTION 13.   Notice to Parties. ....................................................................... 27

SECTION 14.   Entire Agreement. ...................................................................... 28

SECTION 15.   Filing of Compact with State Records Center. .............................. 28

SECTION 16.   Counterparts. ............................................................................ 28

SECTION 17.   Internet Gaming. ........................................................................ 28

SECTION 18.   Applicability. ............................................................................. 28

SECTION 19.   Severability. .............................................................................. 28

eligible for gaming pursuant to the 25 U.S.C. §§ 2719 (a)(2)(B), (b)(1)(A), (b)(1)(B)(ii) or (b)(1)(B)(iii).

NOW, THEREFORE, the State and the Tribe agree as follows:

SECTION 1.  Purpose and Objectives.

The purpose and objectives of the State and the Tribe in making this Compact are as follows:

A.    To evidence the good will and cooperative spirit between the State and the Tribe;

B.    To continue the development of an effective government-to-government relationship between the State and the Tribe;

C.    To provide for the regulation of Class III Gaming on Indian Lands within the State of New Mexico as required by the IGRA;

D.    To fulfill the purpose and intent of the IGRA by providing for tribal gaming as a means of generating tribal revenues, thereby promoting tribal economic development, tribal self-sufficiency, and strong tribal government;

E.    To provide revenues to fund tribal government operations or programs, to provide for the general welfare of the tribal members and for other purposes allowed under the IGRA;

F.    To provide for the effective regulation of Class III Gaming in which the Tribe shall have the sole proprietary interest and be the primary beneficiary; and

G.    To address the State's interest in the establishment, by the Tribe, of rules and procedures for ensuring that Class III Gaming is conducted fairly and honestly by the owners, operators, employees and patrons of any Class III Gaming Enterprise on Indian Lands.

SECTION 2.  Definitions.

For purposes of this Compact, the following definitions pertain:

A.    "Adjusted Net Win" is Net Win with certain deductions for purposes of calculating revenue sharing as set forth in Section 11(C) of this Compact.

B.    "Card Minder" means a technological aid for a bingo game that serves as an electronic substitute for bingo cards and is used by a player to monitor bingo cards and called bingo numbers. A Card Minder does not include a device which permits a player to cover or daub a bingo card other than through overt action after numbers are released.

C.    "Class III Gaming" means all forms of gaming as defined in 25 U.S.C. § 2703(8), and 25 C.F.R. § 502.4.

D.    "Compact" means this compact between the State and the Tribe, and including the Appendix attached hereto.

2

E.    "Compliance Report" is the report submitted annually to the State Gaming Representative by the Tribal Gaming Agency according to the requirements set forth in the Appendix attached to this Compact.

F.    "Effective Date" has the meaning set forth in Section 9(A) of this Compact.

G.    "Free Play" means play on a Class III Gaming Machine initiated by points or credits provided to patrons without monetary consideration, and which have no cash redemption value.

H.    "Gaming Employee" means a person connected directly with the conduct of Class III Gaming, handling the proceeds thereof, or handling any Gaming Machine; but "Gaming Employee" does not include:

    1.    Bartenders, cocktail servers or other persons engaged solely in preparing or serving food or beverages;

    2.    Secretarial or janitorial personnel;

    3.    Stage, sound and light technicians; or

    4.    Other nongaming personnel.

I.    "Gaming Enterprise" means the tribal entity created and designated by the Tribe as having authority to conduct Class III Gaming pursuant to this Compact.

J.    "Gaming Facility" means each separate physical building or structure in which Class III Gaming is conducted on the Tribe's Indian Lands.

K.    "Gaming Machine" means a mechanical, electromechanical or electronic contrivance or machine that, upon insertion of a coin, token or similar object, or upon payment of any consideration in any manner, is available to play or operate a game of chance in which the outcome depends to a material degree on an element of chance, notwithstanding that some skill may be a factor, whether the payoff is made automatically from the Gaming Machine or in any other manner; but Gaming Machine does not include a Card Minder or a Table Game or any devices utilized in Table Games. Additional clarification of the definitions of a Gaming Machine and a Table Game is set forth in the attached Appendix.

L.    "Indian Lands" means:

    1.    all lands within the exterior boundaries of the Tribe's reservation and its confirmed grants from prior sovereigns; or

    2.    any other lands title to which is either held in trust by the United States for the exclusive benefit of the Tribe or a member thereof or is held by the Tribe or a member thereof subject to restrictions against alienation imposed by the United States, and over which the Tribe exercises jurisdiction and governmental authority, but not including any land within a municipality that is outside of the boundaries of the Tribe's reservation or confirmed Spanish grant as those boundaries existed on October 17, 1988.

3

(b)     Within ten (10) days of the Legacy Gaming Facility Deadline Date, the Tribe shall have an authorized representative sign a sworn affidavit that designates the Legacy Gaming Facility, provides the location of the Legacy Gaming Facility, and a detailed description of its gaming operations at the Legacy Gaming Facility as of that date, including the specific number of Gaming Machines and any other gaming activities and shall submit said affidavit to the State Gaming Representative.

(c)     The Legacy Gaming Facility shall be permitted to move one (1) time from its location as of June 30, 2015 (the "Existing Location"), subject to the following restrictions:

i)     the Legacy Gaming Facility shall not be moved more than seventeen (17) miles from its Existing Location; and

ii)     the Legacy Gaming Facility shall not be permitted to move if its Existing Location is located within fifty (50) miles from another Tribe's Gaming Facility located within the State.

(d)     The Gaming Enterprise shall not operate in excess of one hundred thirty (130) Class III Gaming Machines at the Legacy Gaming Facility.

SECTION 4.   Conduct of Class III Gaming.

A.     Tribal Gaming Agency.  The Tribal Gaming Agency will assure that the Tribe will:

1.     operate all Class III Gaming pursuant to this Compact, tribal law, the IGRA and other applicable federal law;

2.     provide for the physical safety of patrons in any Gaming Facility;

3.     provide for the physical safety of personnel employed by the Gaming Enterprise;

4.     provide for the physical safeguarding of assets transported to and from the Gaming Facility and cashier's cage department;

5.     provide for the protection of the property of the patrons and the Gaming Enterprise from illegal activity;

6.     participate in licensing of Primary Management Officials and Key Employees of a Class III Gaming Enterprise;

7.     detain persons who may be involved in illegal acts for the purpose of notifying law enforcement authorities;

8.     record and investigate any and all unusual occurrences related to Class III Gaming within the Gaming Facility; and

9.    comply with all applicable provisions of the Bank Secrecy Act, 31 U.S.C. §§ 5311-5314, and all reporting requirements of the Department of the Treasury, the Internal Revenue Service, the Financial Crimes Enforcement Network, and any other related divisions thereof, as applicable, and make all such documentation available to the State Gaming Representative for inspection, scanning, or copying upon request.

B.    Regulations.  Without affecting the generality of the foregoing, the Tribe shall adopt laws:

1.    prohibiting participation in any Class III Gaming by any person under the age of twenty-one (21);

2.    prohibiting the employment of any person as a Gaming Employee who is under the age of twenty-one (21) or who has not been licensed in accordance with the applicable requirements of federal and tribal law;

3.    requiring the Tribe to take all necessary action to impose on its gaming operation standards and requirements equivalent to or more stringent than those contained in the federal Fair Labor Standards Act of 1938, the federal Occupational Safety and Health Act of 1970, and any other federal laws generally applicable to Indian tribes relating to wages, hours of work and conditions of work, and the regulations issued thereunder;

4.    requiring that, on any construction project involving any Gaming Facility or related structure that is funded in whole or in part by federal funds, all workers will be paid wages meeting or exceeding the standards established for New Mexico under the federal Davis-Bacon Act;

5.    prohibiting the Tribe, the Gaming Enterprise and a Management Contractor from discriminating in the employment of persons to work for the Gaming Enterprise or in the Gaming Facility on the grounds of race, color, national origin, gender, sexual orientation, age or handicap, provided, however, that nothing herein shall be interpreted to prevent the Tribe from granting preference in employment actions to tribal members or other Indians in accordance with established tribal laws and policies;

6.    requiring the Tribe, through its Gaming Enterprise or through a third-party entity, to provide to all employees of the Gaming Enterprise employment benefits, including, at a minimum, sick leave, life insurance, paid annual leave or paid time off and medical and dental insurance as well as providing unemployment insurance and workers' compensation insurance through participation in programs offering benefits at least as favorable as those provided by comparable State programs, and which programs shall afford the employees due process of law and shall include an effective means for an employee to appeal an adverse determination by the insurer to an impartial forum, such as (but not limited to) the Tribe's Tribal Court, which appeal shall be decided in a timely manner and in an administrative or judicial proceeding and as to which no defense of tribal sovereign immunity would be available; and provided that to fulfill this requirement the Tribe may elect to participate in the State's program upon execution of an appropriate agreement with the State;

7

the central computer, and provided further that the system for electronic access to the machine wager and payout data collected by the Gaming Enterprise's central computer shall be constructed and installed at the State's cost, and shall be designed in conjunction with Gaming Enterprise technical staff so as to preserve the integrity of the system and the data contained therein, to minimize any possibility of unauthorized access to the system or tampering with the data, and to minimize any access by the State Gaming Representative to information other than machine wager and payout data residing in the central monitoring and control system;

    14.    enacting provisions that:

        (a)    prohibit an employee of the Gaming Enterprise from selling, serving, giving or delivering an alcoholic beverage to an intoxicated person or from procuring or aiding in the procurement of any alcoholic beverage for an intoxicated person at the Gaming Facility;

        (b)    require Gaming Enterprise employees that dispense, sell, serve or deliver alcoholic beverages to attend Alcohol Server Education Classes similar to those classes provided for in the New Mexico Liquor Control Act; and

        (c)    require the Gaming Enterprise to purchase and maintain a liquor liability insurance policy that will provide, at a minimum, personal injury coverage of one million dollars ($1,000,000) per incident and two million dollars ($2,000,000) aggregate per policy year;

    15.    prohibiting alcoholic beverages from being sold, served, delivered, or consumed in that part of a Gaming Facility where gaming is allowed;

    16.    requiring the Gaming Enterprise to spend, annually, an amount that is no less than one-quarter of one percent (.25%) of its Adjusted Net Win as that term is defined in Section 11(C)(1), to fund or support programs that the Tribe selects for the treatment and assistance of compulsive gamblers in New Mexico or who patronize New Mexico gaming facilities, and for the prevention of compulsive gambling in New Mexico; and requiring that a substantial portion of such funds be distributed to an organization that has expertise in and provides counseling, intervention or other services for compulsive gamblers in New Mexico, and whose services are available to all persons without regard to race or tribal membership; and requiring that the Tribe submit a report accounting for the use of these funds as described in the attached Appendix, and that this report and any other information existing as a result of this paragraph, not including information that may identify or contain information referring to any gaming patron, shall not be subject to the confidentiality provisions of Section 4(E)(4) of this Compact and shall be made available for inspection and publication without restriction or limitation;

    17.    governing any Management Contract regarding its Class III Gaming activity so that it conforms to the requirements of tribal law and the IGRA and the regulations issued thereunder;

    18.    prohibiting the Gaming Enterprise and the Tribe from providing, allowing, contracting to provide or arranging to provide alcoholic beverages for no charge or at reduced prices within a Gaming Facility; and

3. Unless the parties agree in writing to the appointment of a single arbitrator, or as otherwise provided below, the arbitration shall be conducted before a panel of three (3) arbitrators. The arbitrators shall be attorneys who are licensed members in good standing of the State Bar of New Mexico or of the bar of another state. The State will select one arbitrator, the Tribe will select a second arbitrator, and the two so chosen shall select a third arbitrator. The party that served the written notice of noncompliance shall select its arbitrator within thirty (30) days after the party has invoked arbitration and the responding party shall select its arbitrator within thirty (30) days of the selection of the first arbitrator. If the responding party fails to select an arbitrator within the thirty (30) days provided, the parties shall proceed to arbitration with the single arbitrator selected by the party that served the written notice of noncompliance. If the responding party selects an arbitrator within the specified time period, the two arbitrators shall select a third arbitrator within thirty (30) days of the responding party's selection. If the third arbitrator is not chosen within thirty (30) days after the second arbitrator is selected, the third arbitrator will be chosen by the American Arbitration Association. The arbitrators thereby selected shall permit the parties to engage in reasonable discovery, and shall establish other procedures to ensure a full, fair and expeditious hearing on the matters at issue. The arbitrators shall determine, after hearing from each party, whether the arbitration proceeding or any portions thereof shall be closed to the public, but in the absence of such determination the proceedings shall be open to the public. The arbitrators shall make determinations as to each issue presented by the parties, but the arbitrators shall have no authority to determine any question as to the validity or effectiveness of this Compact or of any provision hereof. All parties shall bear their own costs of arbitration and attorneys' fees.

4. The results of arbitration shall be final and binding, and shall be enforceable by an action for injunctive or mandatory injunctive relief against the State and the Tribe in any court of competent jurisdiction. For purposes of any such action, the State and the Tribe acknowledge that any action or failure to act on the part of any agent or employee of the State or the Tribe, contrary to a decision of the arbitrators in an arbitration proceeding conducted under the provisions of this Section, occurring after such decision, shall be wholly unauthorized and ultra vires acts, not protected by the sovereign immunity of the State or the Tribe.

B. Nothing in Subsection 7(A) shall be construed to waive, limit or restrict any remedy that is otherwise available to either party to enforce or resolve disputes concerning the provisions of this Compact. Nothing in this Section shall be deemed a waiver of the Tribe's sovereign immunity. Nothing in this Section shall be deemed a waiver of the State's sovereign immunity.

SECTION 8. Protection of Visitors.

A. Policy Concerning Protection of Visitors. The safety and protection of visitors to a Gaming Facility is a priority of the Tribe, and it is the purpose of this Section to assure that any such persons who suffer bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise have an effective remedy for obtaining fair and just compensation. To that end, in this Section, and subject to its terms, the Tribe agrees to carry insurance that covers such injury or loss, agrees to a limited waiver of its immunity from suit, and agrees to proceed either in binding arbitration proceedings or in Tribal, State, or other court of competent jurisdiction, at the visitor's election, with respect to claims for bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise. For purposes of this Section, any such claim may be

20

brought in state district court, including claims arising on tribal land, unless it is finally determined by a state or federal court that the IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court.

B.    Insurance Coverage for Claims Required.  The Gaming Enterprise shall maintain in effect policies of liability insurance insuring the Tribe, Gaming Enterprise, its agents and employees against claims, demands or liability for bodily injury and property damages by a visitor arising from an occurrence described in Paragraph A of this Section.  The policies shall provide bodily injury and property damage coverage in an amount of at least ten million dollars ($10,000,000) per occurrence and ten million dollars ($10,000,000) annual aggregate.  The Tribe shall provide the State Gaming Representative annually a certificate of insurance showing that the Tribe, its agents and employees are insured to the required extent and in the circumstances described in this Section.

C.    Limitation on Time to Bring Claim.  Claims brought pursuant to the provisions of this Section must be commenced by filing an action in Tribal, State, or other court of competent jurisdiction or a demand for arbitration within three (3) years of the date the claim accrues.

D.    Specific Waiver of Immunity and Choice of Law.  The Tribe, by entering into this Compact and agreeing to the provisions of this Section, waives its defense of sovereign immunity in connection with any claims for compensatory damages for bodily injury or property damage up to the amount of ten million dollars ($10,000,000) per occurrence, asserted as provided in this Section.  This is a limited waiver and does not waive the Tribe's immunity from suit for any other purpose.  The Tribe shall ensure that a policy of insurance that it acquires to fulfill the requirements of this Section shall include a provision under which the insurer agrees not to assert the defense of sovereign immunity on behalf of the insured, up to the limits of liability set forth in this Paragraph. The Tribe and the State agree that in any claim brought under the provisions of this Section, New Mexico law shall govern if the claimant pursues the claim in State Court, and the tribal law of the forum shall apply if the claim is brought in Tribal Court.

E.    Election by Visitor.  A visitor having a claim described in this Section may pursue that claim in binding arbitration, or Tribal, State, or other court of competent jurisdiction.  The visitor shall make a written election that is final and binding upon the visitor.

F.    Tribal Court.  The Tribe shall establish written procedures and substantive law for the disposition of tort claims arising from bodily injury or property damage alleged to have been suffered by visitors and shall enact such tribal law as is necessary to implement these procedures.  The procedures shall include all time limits applicable to the disposition of the tort claim and a provision that, upon request, the visitor, or the visitor's designated representative, shall be provided with a copy of the procedures as well as the name, address and telephone number of the Gaming Enterprise and the mailing address and telephone number of the clerk of the tribal court.

G.    Arbitration.  Arbitration pursuant to an election by a visitor as provided in Subsection E of this Section shall be conducted as follows:

1.    The visitor shall submit a written demand for arbitration to the Gaming Enterprise, by certified mail, return receipt requested;

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/4/2022 4:21 PM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

        **Plaintiffs,**

**vs.**                        **No. D-101-CV-2022-00034**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

        **Defendants.**

<u>**CERTIFICATE OF SERVICE**</u>

    I HEREBY CERTIFY that on March 4, 2022, I caused:

1) Laguna Development Corporation's Threshold Jurisdictional Objections to Plaintiff Barry Green, as Personal Representative of the Wrongful Death Estate of Rolanda Lahi's First Set of Interrogatories and Requests for Production, and

2) Laguna Development Corporation's Threshold Jurisdictional Objections to Plaintiff Barry Green, as Personal Representative of the Wrongful Death Estate of Rolanda Lahi's Second Set of Interrogatories and Requests for Production and Objections and Responses to First Set of Requests for Admission

    to be e-mailed to the following counsel:

| | |
|---|---|
| Christopher J. Supik | E. Todd Tracy |
| Christopher DeLara | THE TRACY FIRM |
| David C. Odegard | 4701 Bengal Street |
| DeLara \| Supik \| Odegard P.C. | Dallas, Texas 75235 |
| P.O. Box 91596 | Tel: (214) 324-9000 |
| Albuquerque, NM 87199 | ttracy@vehiclesafetyfirm.com |
| Tel: (505) 999-1500 | *Attorneys for Plaintiffs* |
| supik@delaralaw.com | |
| chris@delaralaw.com | |
| odegard@delaralaw.com | |

*Attorneys for Barry Green, as Personal*
*Representative*
*of the Wrongful Death Estate of Rolanda*
*Lahi, deceased, and*
*Feliz Rael, as Guardia ad Litem of A.S. and*
*A.S., minor children*

Philip Thompson
PEGUE & THOMPSON
202 East Marcy Street
Santa Fe, New Mexico 87501
Tel: (505) 395-9558
pht@peguethompsonlaw.com
*Attorney for New Mexico Department of*
*Transportation*

Respectfully submitted,

JENNINGS HAUG KELEHER McLEOD LLP

By _/s/ David W. Peterson_
David W. Peterson
P. O. Box AA
Albuquerque, NM  87103
Telephone: (505) 346-4646
Facsimile: (505) 346-1370
*Attorneys for Defendant*
*Laguna Development Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2022, I filed the foregoing electronically through the Odyssey File & Serve System, which caused all parties or counsel to be served by electronic means, and, I also emailed the foregoing Certificate of Service to the following counsel of record:

Christopher J. Supik
Christopher DeLara
David C. Odegard
DeLara | Supik | Odegard P.C.
P.O. Box 91596
Albuquerque, NM 87199
Tel: (505) 999-1500
supik@delaralaw.com
chris@delaralaw.com
odegard@delaralaw.com
*Attorneys for Barry Green, as Personal Representative*
*of the Wrongful Death Estate of Rolanda Lahi, deceased, and*
*Feliz Rael, as Guardia ad Litem of A.S. and A.S., minor children*

E. Todd Tracy
THE TRACY FIRM
4701 Bengal Street
Dallas, Texas 75235
Tel: (214) 324-9000
ttracy@vehiclesafetyfirm.com
*Attorneys for Plaintiffs*

Philip Thompson
PEGUE & THOMPSON
202 East Marcy Street
Santa Fe, New Mexico 87501
Tel: (505) 395-9558
pht@peguethompsonlaw.com
*Attorney for New Mexico Department of Transportation*


*/s/ David W. Peterson*
David W. Peterson


NM13295.27/5054966.DOC

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/18/2022 3:33 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez

<table>
<tr><td colspan="2" align="center"><b>RETURN OF SUMMONS</b></td></tr>
</table>

| | |
|---|---|
| **First Judicial District Court** <br> **Santa Fe County, New Mexico** <br> **Post Office Box 2268 / 225 Montezuma Ave.** <br> **Santa Fe, New Mexico  87504 / 87501** <br> **Court Telephone: (505) 455-8250** | **Case Number:** <br> **D-101-CV-2022-00034** <br><br> **Assigned Judge:** <br> **Honorable Matthew J. Wilson** |
| **BARRY GREEN, as Personal Representative of the Wrongful Death Estate of ROLANDA LAHI, deceased, and FELIZ RAEL, as Guardian Ad Litem of A.S. and A.S., minor children,** <br><br>            **Plaintiffs,** <br> **vs.** <br><br> **LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL, EDWARD KHADER, ADRIAN FOX, JESSE OROZCO, the Estate of LUCAS LEE, STATE OF NEW MEXICO, NEW MEXICO DEPARTMENT OF TRANSPORTATION, and FCA US LLC,** <br><br>            **Defendants.** | **Defendant:** <br><br> **FCA US LLC** <br><br> **c/o  CT  Corporation  System, Registered Agent** <br> **726 E. Michigan, Suite 330** <br> **Hobbs, New Mexico  88240** |

**TO THE ABOVE NAMED DEFENDANT(S)**:  Take notice that

**1.**      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

**2.**      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

**3.**      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**      If you need an interpreter, you must ask for one in writing.

**7.**      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe County, New Mexico, this 2nd _____ day of ___March____, 2022.

KATHLEEN VIGIL
CLERK OF DISTRICT COURT

DURHAM, PITTARD & SPALDING, L.L.P.

By: *Desiree Brown*



/s/*Justin R. Kaufman*
Signature of Attorney for Plaintiff
Justin R. Kaufman
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
jkaufman@dpslawgroup.com
Telephone No.:  (505) 986-0600
Facsimile:  (505) 986-0632

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

2

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**                    No. D-101-cv-2022-00034
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

                    **Plaintiffs,**

**v.**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

                    **Defendants.**

**RETURN[1]**

STATE OF _____  )                    <u>**SEE ATTACHED AFFIDAVIT OF SERVICE**</u>
                      )ss
COUNTY OF _____  )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint

3

attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service
_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____

_____    My Commission Expires:_____
Judge, notary or other officer
authorized to administer oaths
_____
Official title

USE NOTE

    1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.
    2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

4

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

STATE OF NEW MEXICO, COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

**BARRY GREEN, as Personal Representative of the
Wrongful Death Estate of ROLANDA LAHI, deceased, and
FELIZ RAEL, as Guardian ad Litem of A.S. and A.S.,
minor children**

    *Plaintiff(s) / Petitioner(s)*

v.

**LAGUNA DEVELOPMENT CORPORATION d/b/a
ROUTE 66 CASINO HOTEL, EDWARD KHADER,
ADRIAN FOX, JESSE OROZCO, the Estate of LUCAS
LEE, STATE OF NEW MEXICO, NEW MEXICO
DEPARTMENT OF TRANSPORTATION, and FCA US
LLC**

    *Defendant(s) / Respondent(s)*

Case No.: D-101-cv-2022-00034

## AFFIDAVIT OF SERVICE

I, Johnny Rivas, being duly sworn, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents on FCA US LLC in Lea County, NM on March 9, 2022 at 12:45 pm at 726 E. Michigan, Suite 330, Hobbs, NM 88240 by leaving the following documents with Kimberlie Flauto who as Clerk at CT Corporation System is authorized by appointment or by law to receive service of process for FCA US LLC.

Summons - FCA US LLC
First Amended Complaint
Jury Demand
Plaintiffs First Requests for Production to Defendant FCA US LLC

Additional Description:
I delivered the documents to Kimberlie Flauto, clerk for Registered Agent CT Corporation System.

White Female, est. age 45, glasses: N, Brown hair, 180 lbs to 200 lbs, 5' 6" to 5' 9".

_____

Signature

Johnny Rivas

(575) 631-4618

Subscribed and sworn to before me this 18th day of March 2022, by

Johnny Rivas
_____

Witness my hand and official seal.

My commission expires: 10/31/25

_____

Notary Public

STATE OF NEW MEXICO
NOTARY PUBLIC
SANDRA BOLTSHAUSER
Commission Number 1081368
My Commission Expires OCTOBER 31, 2025

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
3/18/2022 3:33 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**              No. D-101-cv-2022-00034
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

          **Plaintiffs,**

**v.**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

          **Defendants.**

## CERTIFICATE OF SERVICE

Plaintiff Barry Green, as Personal Representative of the Wrongful Death Estate of

Rolanda Lahi, by and through his attorneys of record, hereby certifies that on the 9th day of

March, 2022, Plaintiff served via personal service along with the Summons and First Amended

Complaint in this matter upon Defendant FCA US LLC, c/o CT Corporation System, Registered

Agent, 726 E. Michigan, Suite 330, Hobbs, New Mexico  88240 the following:

       *Plaintiffs' First Requests for Production to Defendant FCA US LLC*

DATED:  March 18, 2022

          Respectfully submitted,

          **DURHAM, PITTARD & SPALDING, L.L.P.**

          */s/ Justin R. Kaufman*
          Justin R. Kaufman
          Rosalind B. Bienvenu

Caren I. Friedman
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

Christopher J. DeLara
Christopher J. Supik
David C. Odegard
**DeLara Supik Odegard P.C.**
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

E. Todd Tracy
**The Tracy Firm**
4701 Bengal Street
Dallas, Texas 75235
Telephone: (214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing instrument will be served on all counsel via the e-filing system on this the 18th day of March, 2022.

/s/ Justin R. Kaufman
Justin R. Kaufman

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/18/2022 3:41 PM
KATHLEEN VIGIL CLERK OF THE COURT
Liliana M Villalobos

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

           **Plaintiffs**

**v.**                         **No. D-101-CV-2022-00034**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

           **Defendants.**

**AMENDED RULE 1-012(B)(1) MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**
**BY THE LAGUNA DEVELOPMENT CORPORATION DEFENDANTS**

Defendants Laguna Development Corporation ("LDC"), Edward Khader, Adrian Fox,

and Jesse Orozco (collectively "the LDC Defendants"), through counsel, Jennings Haug Keleher

McLeod LLP (David W. Peterson), respectfully request that the Court dismiss this case for lack

of subject matter jurisdiction pursuant to Rule 1-012(B)(1).

**I. INTRODUCTION**

The United States Supreme Court in *Williams v. Lee,* 358 U.S. 217 (1959) ruled that the

exercise of state court jurisdiction over claims against Indians arising within tribal territory

undermines the authority of tribal courts over reservation affairs and therefore "infringes" on the

tribe's right to govern itself and its territory.  This case implicates that rule because it interferes

with the Pueblo of Laguna's federally-protected right to make its own laws and adjudicate, with

its tribal court, reservation affairs free from state encroachment.  The Plaintiffs assert dram shop liability and associated spoliation claims that arose within Pueblo territory at a tribal gaming facility owned and operated by a tribal gaming enterprise and its employees.  The service of alcohol at a tribal gaming enterprise is authorized and regulated by Pueblo law.  The State of New Mexico acknowledges exclusive tribal authority over alcohol sales by a tribal gaming enterprise and its employees at a tribal gaming facility within tribal territory.  Matters such as these fall within the Pueblo's sovereign authority and are protected from state court adjudication under the infringement doctrine announced in *Williams v. Lee*.

This jurisdictional bar remains undisturbed by the Compact between the Pueblo and State of New Mexico, which permits "visitors" to bring personal injury and property damage claims against a tribal gaming enterprise in accordance with a provision that (1) purports to shift jurisdiction over such claims from tribal courts to state courts to the extent authorized by the Indian Gaming Regulatory Act ("IGRA"), and (2) waives tribal sovereign immunity for those claims.  This provision, however, does not apply to this case because the Decedent was a traveler on I-40—not a "*visitor*" under the Compact.

Because of the Pueblo's tribal sovereign authority over the alleged alcohol sales in question and the absence of any applicable jurisdiction-shifting mechanism or waiver of sovereign immunity as to LDC, the Court must dismiss all claims against the LDC Defendants. The consideration of the merits of the Plaintiffs' claims belongs in tribal court.[1]

---

[1] The LDC Defendants file this shortened, amended Motion.  Plaintiffs objected to the original Motion's length in a draft motion to strike.  Plaintiffs later decided against filing the motion to strike, but the LDC Defendants learned that their position could be stated more succinctly and therefore file this amended Motion.

## II. RULE 1-012(B)(1) STANDARDS

Because the LDC Defendants factually attack the Court's subject matter jurisdiction pursuant to Rule 1-012(B)(1) NMRA, neither Rule 1-012(B)(6) NMRA (failure to state a claim) nor Rule 1-056 NMRA (summary judgment) standards apply. The Court cannot presume the truthfulness of the complaint and may find facts weighing for or against jurisdiction without converting the motion into a summary judgment proceeding. *South v. Lujan*, 2014-NMCA-109, ¶ 14, 336 P.3d 1000.

## III. JURISDICTIONAL FACTS AND ALLEGATIONS

### A. The Indian Status of the Parties.

1.     The Pueblo of Laguna (the "Pueblo") is a sovereign, federally recognized Indian Tribe. *See* 84 Fed. Reg. 1200, 1204 (Feb. 1, 2019); Sanasac Decl., attached hereto as **Exhibit A.**

2.     Pursuant to the Indian Gaming Compact (the "Compact"), attached hereto as **Exhibit B,** the Pueblo designated Laguna Development Corporation ("LDC" or "Laguna Development") as a gaming enterprise. Ex. A; Compact § 2.I. Wholly owned by the Pueblo, Laguna Development is chartered under §17 of the Indian Reorganization Act, 25 U.S.C. § 477 (now re-codified at 25 U.S.C. § 5124 (1990)). Ex. A.

3.     Laguna Development operates the Route 66 Casino within the exterior boundaries of the Pueblo. Route 66 is is a "Gaming Facility" as defined in the Compact. *Id.*; Ex. B § 2.J; Compl. ¶ 6.

4.     The individual LDC Defendants are not members of the Pueblo, Ex. A, but are employees of LDC alleged to have acted within the scope of their employment, or to have acted through other LDC employees who acted within the scope of their employment. Compl. ¶¶ 8-10, 73, 86.

**B.  Alleged conduct within the Pueblo.**

5.      The alleged conduct of the LDC Defendants occurred within the Pueblo.  *See e.g.,* Compl. ¶ 75 (service of alcohol at Route 66 Casino); ¶ 83 (withholding of Route 66 Casino surveillance video).

**C.  Tribal law concerning alcohol sales at LDC.**

6.      LDC is authorized to sale liquor under the Pueblo's Liquor Control Law**.**  *See* 52 Fed. Reg. 15768 § 3 (Apr. 30, 1987).  It is a violation to "knowingly sell liquor to a person who the seller has reason to believe is under the influence of alcohol." *Id.* 8.D.  The Compact recognizes that tribal law controls this issue.  *See* Ex. B § 4.B.14(a) (The "Tribe shall adopt laws: . . . that prohibit an employee of the Gaming Enterprise from [serving] an alcoholic beverage to an intoxicated person . . . at the Gaming Facility.").  Violators of the Pueblo's Liquor Control Law are subject "to legal action in accordance with Pueblo law."  52 Fed. Reg. 15768 § 3.

**D.  Visitor claims.**

7.      Section 8.A. of the Compact addresses a "limited waiver of [the Pueblo's] immunity from suit" for certain claims by "*visitors* to a Gaming Facility" "for *bodily injury* or property damage *proximately caused by the conduct of the Gaming Enterprise*." *Id.* (emphasis added).  Plaintiffs do not allege a claim *by* a visitor to a gaming facility but rather a claim *against* a visitor to a gaming facility.  *See* Compl. ¶ ¶ 24, 29, 31, and 33 (alleging overservice to Route 66 patron Defendant Lucas Lee whose vehicle later collided with the Decedent on I-40).  The waiver does not extend beyond claims for "*compensatory damages* for bodily injury or property damage."  Ex. B § 8.D.

4

# IV. ARGUMENT

A. **Exclusive Tribal Court Jurisdiction and Sovereign Immunity Independently Preclude State Court Jurisdiction over the LDC Defendants.**

1. The Tribal Court has Exclusive Jurisdiction over Plaintiffs' Claims against Tribal Enterprises and their Employees Arising on Pueblo Lands.

In *Williams v. Lee*, 358 U.S. 217, 220 (1959), the United States Supreme Court held that state courts have no jurisdiction over a civil claim against an Indian for a transaction arising on tribal land. To permit state court jurisdiction in this context "would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Id.* at 223. The "infringement doctrine," as it has come to be known, thus protects the tribe's right "to govern itself independently of state law." *Fisher v. Dist. Court of Sixteenth Judicial Dist.*, 424 U.S. 382, 386 (1976). In applying the infringement doctrine, New Mexico courts have a "venerable tradition of deferring to a tribal government's exercise of the sovereign power vested in them." *Hinkle v. Abeita,* 2012-NMCA-074, ¶ 22, 283 P.3d 877.

Unless a federal statute explicitly provides otherwise, the infringement doctrine requires that the tribal courts exercise exclusive tribal court jurisdiction over civil claims against tribes, tribal enterprises, and their tribal employees arising on tribal lands. *See e.g., Doe v. Santa Clara Pueblo*, 2007-NMSC-008, ¶ 18, 141 N.M. 269, 154 P.3d 644. Under the infringement test, the New Mexico courts consider three factors: (1) whether the parties are Indian or non-Indian; (2) whether the cause of action arose within the Indian reservation; and (3) the nature of the interest to be protected. *Found. Reserve Ins. Co. v. Garcia,*1987-NMSC-024, ¶ 6. The ultimate question under the infringement doctrine, however, is "whether the state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." *Williams*, 358 U.S. at 220.

5

a.      LDC is a tribal enterprise and employed the individual LDC Defendants.

LDC's status as a tribal enterprise easily establishes the first infringement factor.  *See Doe, above.*  The conclusion is the same for the individual employees of LDC.  *See Haynes v. Lujan,* No. A-1-CA-38014, 2021 N.M. App. Unpub. LEXIS 232, at *11-12 (Ct. App. July 22, 2021)(factoring tribal employee status of non-Indian defendant against state jurisdiction) (citing *Tempest Recovery Servs. Inc. v. Belone*, 2003-NMSC-019, ¶ 13, 134 N.M. 133, 74 P.3d 67 ("Indian nations also possess a broad measure of civil jurisdiction over the activities of non-Indians on Indian reservation lands in which the tribes have a significant interest."); Compact § 4.B.14(a) (addressing tribal law concerning overservice of alcohol by "employee[s] of the Gaming Enterprise," without reference to tribal membership of the employees).

b.      The cause of action arose within the Pueblo of Laguna reservation.

The alleged conduct of the LDC Defendants—concerning overservice and surveillance video at a Pueblo-based gaming facility—similarly establishes the second infringement factor in favor of exclusive tribal court jurisdiction.  Authority addressing claimed overservice at a Pueblo gaming facility resulting in a vehicle accident elsewhere recognizes that such a claim arises within the Pueblo while addressing whether a federal statute nonetheless authorizes state jurisdiction.  *See Mendoza v. Tamaya Enters.*, 2011-NMSC-030, ¶¶ 12-13, 15, 150 N.M. 258, 258 P.3d 1050 (finding state jurisdiction proper "even if the claims arose on tribal land" because IGRA authorized the Compact's jurisdiction-shifting provision); *Pueblo of Santa Ana v. Nash*, 972 F. Supp. 2d 1254, 1266 (D.N.M. 2013) (disagreeing that IGRA authorizes the shifting of jurisdiction to state court and declaring that the *Mendoza* state district court lacked jurisdiction over "a personal injury claim *arising* from the allegedly negligent serving of alcohol on Indian land.") (emphasis added); *see also Smith v. Salish Kootenai College*, 434 F.3d 1127 (9th Cir.

2006) (cited approvingly in *Hinkle,* 2012-NMCA-074, ¶¶ 14, 31) (holding that negligence and spoliation claims against a tribal college resulting from the maintenance of a vehicle within tribal territory "arose out of activities conducted or controlled by a tribal entity on tribal lands" notwithstanding that such negligence allegedly resulted in an off-reservation accident on a federal highway).

In this case, because the Decedent was not a "visitor" as the term is used in the Compact, the conclusion that this case arose within the Pueblo remains undisturbed by questions regarding the extent of jurisdiction shifting under IGRA. *See* Section B, below.

      c.      The paramount interest to be protected is the Pueblo's sovereign authority to make its own laws and be governed by them.

The Supreme Court, in *Williams v. Lee,* confirmed the importance of tribal interests in enacting and enforcing the tribe's own law and New Mexico has a "venerable tradition" of respecting such tribal "sovereign power." *Hinkle,* 2012-NMCA-074, ¶ 22. The state's own public policy demonstrates its acknowledgement of strong federal protections of tribal sovereign authority.   This is shown in New Mexico's (1) recognition of tribal authority over alcohol sales on tribal lands in the New Mexico Liquor Control Act; (2) agreement in the Compact that tribal law, not state law, governs alcohol service, including prohibitions on service to intoxicated persons at tribal casinos; and (3) and legislative and judicial decisions against assuming broader civil and criminal jurisdiction over tribal lands. *See* NMSA 1978, §60-3A-5; Ex. B § 4.B.(14)(1)(addressing the adoption of tribal laws prohibiting alcohol sales to intoxicated persons); and *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence,* 875 F.3d 539, 543 (10th Cir. 2017) (stating that Public Law 280 permits "state-court jurisdiction over litigation arising in Indian country in which an Indian is a party only when certain actions [required by Public Law 280] are taken by a state or tribe.").

Exclusive tribal court jurisdiction over the type of dram shop liability claim asserted by Plaintiffs is recognized in *Mendoza* and *Nash,* discussed above, absent congressional authorization of state court jurisdiction. It is well recognized that "tribal courts play a vital role in tribal self-government," *Tempest Recovery*, 2003-NMSC-019, ¶ 15 n.3, and "[t]ribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians," *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 (1978). Accordingly, this Court should dismiss for lack of subject matter jurisdiction under the infringement doctrine.

2.    Tribal Sovereign Immunity Precludes Suit Against Tribal Enterprises and Their Employees Sued in their Representative Capacity.

"Indian tribes are generally entitled to immunity from suit." *Lewis v. Clarke,* 137 S. Ct. 1285, 1289 (2017). The Pueblo of Laguna is no exception. *See Armijo v. Pueblo of Laguna,* 2011-NMCA-006, ¶ 1, 149 N.M. 234 ("We hold that the Pueblo is immune from suit under the doctrine of tribal sovereign immunity and, further, that the Pueblo is an indispensable party who cannot be joined."); *Sanchez v. Santa Ana Golf Club, Inc.*, 2005-NMCA-003, ¶ 5, 136 N.M. 682, 104 P.3d 548 (holding that tribes are immune from suit in state court absent "an unequivocal and express waiver of sovereign immunity or congressional authorization."). "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 7, 132 N.M. 207 (quoting *Martinez*, 436 U.S. at 58). That immunity, as the United States Supreme Court explained, is "a necessary corollary to Indian sovereignty and self-governance." *Hamaatsa* 2017-NMSC-007, ¶ 20 (quoting *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986)). Tribes retain a unique status as "separate sovereigns pre-existing the Constitution." *Martinez*, 436 U.S. at 56. Such immunity is a matter of federal law

and is not subject to diminution by the states. *Gallegos*, 2002-NMSC-012, ¶ 7 (citing *Three Affiliated Tribes of Fort Berthold Reservation,* 476 U.S. at 891). "Thus, unless and until Congress acts, the tribes retain their historic sovereign authority." *Bay Mills Indian Cmty.* 134 S. Ct. at 2030 (internal quotation marks and citation omitted).

Sovereign immunity also extends to tribal enterprises, such as § 17 corporations like LDC. *Sanchez*, 2005-NMCA-003, ¶ 6, (holding that "[o]ther entities under tribal control are extended the same sovereign immunity as the tribe itself" and applying tribal sovereign immunity to a tribally owned § 17 corporation). LDC's employees also enjoy immunity protections on claims asserted against them in their representative capacity as a surrogate for LDC. *See* allegations that the individual LDC defendants acted individually, "or through their agents and employees." Compl. ¶¶ 74-76, 80.

**B.    Plaintiffs' Claims Exceed the Narrow Scope of the Compact's Jurisdiction-Shifting / Waiver Provision.**

For the Compact's waiver of sovereign immunity / jurisdiction-shifting provision to apply, a plaintiff must show that she "is a 'visitor' as that term is used in the gaming compact" to a "Gaming Facility." *R&R Deli Inc. v. Santa Ana Star Casino*, 2006-NMCA-020, ¶ 19, 2006-NMCA-020, 128 P.3d 513. Visitor means a "casino patron." *Id.* ¶ 21 ("We find the waiver provision in the gaming compact to be unambiguous" and, "[b]y its plain language, the waiver is geared toward personal injury claims brought by casino patrons."); *Doe*, 2007-NMSC-008, ¶ 40 (holding that the protection of Section 8 of the Compact "extends to personal injuries sustained by those patronizing the casinos").

The Plaintiffs do not allege that the Decedent was a casino patron, rather, they maintain that that the Decedent "was driving westbound on I-40" when her vehicle collided with the vehicle of someone who had visited the gaming facility. This case differs from cases recently

described in *Sipp v. Buffalo Thunder, Inc.*, No. A-1-CA-36924, 2021 N.M. App. LEXIS 67, at *19 (Ct. App. Dec. 8, 2021)(cert. granted) where visitors to gaming facilities later suffered off-reservation injuries allegedly resulting from to the conduct of tribal gaming enterprises.  For example, in *Mendoza,* 2011-NMSC-030, the plaintiffs, like in this case, asserted dram shop liability claims against a tribal gaming enterprise.  However, unlike in this case, the *Mendoza* plaintiffs were patrons who alleged that the gaming enterprise served them alcohol at the gaming facility prior to their off-reservation accident. *Id.* ¶ 2. The Plaintiffs make no allegation here that the Decedent was a visitor or that LDC served alcohol to the Decedent.  As a result, the Compact's waiver of immunity has not been triggered.

Additionally, apart from the "visitor" issue, Plaintiffs' claims for punitive damages and loss of consortium exceed the Compact's limited waiver of immunity for other reasons.  *See* Compact § 8.D (providing that the waiver applies to "claims for *compensatory* damages for bodily injury or property damage . . ."); *Guzman v. Laguna Dev. Corp.*, 2009- NMCA-116, ¶ 26, 147 N.M. 244. 219 P.3d 12 (holding that the limitation to claims for "bodily injury" and "property damage" excludes loss of consortium claims).  As a result, to the extent that Section 8.A. applies at all, punitive damages and loss of consortium are excluded and should be dismissed.

## V.    CONCLUSION.

For the forgoing reasons, Defendants Laguna Development Corporation, Adrian Fox, Edward Khader, and Jesse Orozco request that the Court dismiss this action for lack of subject matter jurisdiction and for such other relief that the Court deems just.

Respectfully submitted:

JENNINGS HAUG KELEHER McLEOD LLP

By: _/s/ David W. Peterson_____
David W. Peterson
P.O. Box AA
Albuquerque, NM 87103
Tel: (505) 346-4646
Fax: (505) 346-1370
dwp@jhkmlaw.com
*Attorneys for the LDC Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2022, I filed the foregoing electronically through the Odyssey File & Serve System, which caused all parties or counsel to be served by electronic means, and, I also emailed the foregoing to the following counsel of record:

| | |
|---|---|
| Christopher J. Supik<br>Christopher DeLara<br>David C. Odegard<br>DeLara \| Supik \| Odegard P.C.<br>P.O. Box 91596<br>Albuquerque, NM 87199<br>Tel: (505) 999-1500<br>supik@delaralaw.com<br>chris@delaralaw.com<br>odegard@delaralaw.com<br>*Attorneys for Barry Green, as Personal*<br>*Representative*<br>*of the Wrongful Death Estate of Rolanda*<br>*Lahi, deceased, and*<br>*Feliz Rael, as Guardia ad Litem of A.S. and*<br>*A.S., minor children* | E. Todd Tracy<br>THE TRACY FIRM<br>4701 Bengal Street<br>Dallas, Texas 75235<br>Tel: (214) 324-9000<br>ttracy@vehiclesafetyfirm.com<br>*Attorneys for Plaintiffs*<br><br>Philip Thompson<br>PEGUE & THOMPSON<br>202 East Marcy Street<br>Santa Fe, New Mexico 87501<br>Tel: (505) 395-9558<br>pht@peguethompsonlaw.com<br>*Attorney for New Mexico Department of*<br>*Transportation* |
| _/s/ David W. Peterson_____<br>David W. Peterson | |

NM13295-0027

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

        Plaintiffs

v.                                          No. D-101-CV-2022-00034

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC,

        Defendants.

## DECLARATION OF ALICIA SANASAC

1.    My name is Alicia Sanasac. I am the Associate Counsel for Laguna Development Corporation. This declaration is based on my personal knowledge.

2.    The Pueblo of Laguna (the "Pueblo") is a federally recognized Indian tribe.

3.    The Pueblo wholly owns Laguna Development Corporation.

4.    Laguna Development Corporation is chartered under §17 of the Indian Reorganization Act, 25 USC § 477 (now re-codified at 25 USC § 5124).

5.    The Pueblo designated Laguna Development Corporation as the Gaming Enterprise authorized to conduct Class III gaming and to operate the route 66 Casino.

6.    The Route 66 Casino is located within the Pueblo.

7.    The individual Defendants Adrian Fox, Edward Khader, and Adrian Fox are not members of the Pueblo, but are employees of LDC.

8.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: _March 3, 2022_

_Alicia S——_
Alicia Sanasac, Esq.

influence agency decisions are: (1) Those supported by quantitative information or studies; and (2) Those that include citations to, and analyses of, the applicable laws and regulations. We will not consider or include in our administrative record comments we receive after the close of the comment period (see **DATES**) or comments delivered to an address other than those listed above (see **ADDRESSES**).

*B. May I review comments submitted by others?*

Comments, including names and street addresses of respondents, will be available for public review at the street address listed under **ADDRESSES**. The public may review documents and other information applicants have sent in support of the application unless our allowing viewing would violate the Privacy Act or Freedom of Information Act. Before including your address, phone number, email address, or other personal identifying information in your comment, you should be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you can ask us in your comment to withhold your personal identifying information from public review, we cannot guarantee that we will be able to do so.

**II. Background**

To help us carry out our conservation responsibilities for affected species, and in consideration of section 10(a)(1)(A) of the Endangered Species Act of 1973, as amended (16 U.S.C. 1531 *et seq.*), along with Executive Order 13576, "Delivering an Efficient, Effective, and Accountable Government," and the President's Memorandum for the Heads of Executive Departments and Agencies of January 21, 2009—Transparency and Open Government (74 FR 4685; January 26, 2009), which call on all Federal agencies to promote openness and transparency in Government by disclosing information to the public, we invite public comment on these permit applications before final action is taken.

**III. Permit Applications**

*Endangered Species*

Applicant: Megan Cattau, New York, NY; PRT–61197B

The applicant requests a permit to import hair samples from wild orangutans (*Pongo pygmaeus*) from Indonesia for scientific research purposes.

Applicant: Tanganyika Wildlife Park, Goddard, KS; PRT–57032B

The applicant requests a permit to import one male and three female captive-bred cheetahs (*Acinonyx jubatus*) from De Wildt Cheetah Breeding Centre, De Wildt, South Africa, for the purpose of enhancement of the survival of the species.

Applicant: Christopher Shaw, Rolla, MO; PRT–78418b

The applicant requests a permit to import a sport-hunted trophy of one male bontebok (*Damaliscus pygargus pygargus*) culled from a captive herd maintained under the management program of the Republic of South Africa, for the purpose of enhancement of the survival of the species.

**Brenda Tapia,**
*Program Analyst/Data Administrator, Branch of Permits, Division of Management Authority.*
[FR Doc. 2015–26877 Filed 10–22–15; 8:45 am]
BILLING CODE 4333–15–P

**DEPARTMENT OF THE INTERIOR**

**Bureau of Indian Affairs**

[156A2100DD/AAKC001030/ A0A501010.999900 253G]

**Indian Gaming**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of extension of Tribal-State Class III Gaming Compact.

**SUMMARY:** This publishes notice of the extension of the Class III gaming compact between the Pyramid Lake Paiute Tribe and the State of Nevada.

**DATES:** *Effective Date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Deputy Assistant Secretary—Policy and Economic Development, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Pursuant to 25 CFR 293.5, an extension to an existing tribal-state Class III gaming compact does not require approval by the Secretary if the extension does not include any amendment to the terms of the compact. The Pyramid Lake Paiute Tribe and the State of Nevada have reached an agreement to extend the expiration of their existing Tribal-State Class III gaming compact to February 23, 2017. This publishes notice of the new expiration date of the compact.

Dated: October 16, 2015.
**Kevin K. Washburn,**
*Assistant Secretary—Indian Affairs.*
[FR Doc. 2015–27080 Filed 10–22–15; 8:45 am]
BILLING CODE 4337–15–P

**DEPARTMENT OF THE INTERIOR**

**Bureau of Indian Affairs**

[156A2100DD/AAKC001030/ A0A501010.999900 253G]

**Indian Gaming**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Tribal-State Class III Gaming Compacts taking effect.

**SUMMARY:** The Bureau of Indian Affairs provides notice that the Tribal State Compact between the State of California and the Jackson Band of Miwuk Indians governing Class III gaming (Compact) is effective on publication of this notice.

**DATES:** *Effective Date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Deputy Assistant Secretary—Policy and Economic Development, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Under section 11 of the Indian Gaming Regulatory Act (IGRA) Public Law 100–497, 25 U.S.C. 2701 *et seq.*, the Secretary of the Interior shall publish in the **Federal Register** notice of approved Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. As required by 25 CFR 293.4, all compacts are subject to review and approval by the Secretary. The Secretary took no action on the Compact within 45 days of its submission. Therefore, the Compact is considered to have been approved, but only to the extent the Compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

Dated: October 16, 2015.
**Kevin K. Washburn,**
*Assistant Secretary—Indian Affairs.*
[FR Doc. 2015–27080 Filed 10–22–15; 8:45 am]
BILLING CODE 4337–15–P

**DEPARTMENT OF THE INTERIOR**

**Bureau of Indian Affairs**

[156A2100DD/AAKC001030/ A0A501010.999900 253G]

**Indian Gaming**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Tribal-State Class III Gaming Compact taking effect.

**SUMMARY:** Notice is hereby given that the Indian Gaming Compact between the State of New Mexico and the Pueblo of Laguna governing Class III gaming (Compact) is taking effect.

**DATES:** *Effective date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Assistant Secretary—Indian Affairs, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Under section 11 of the Indian Gaming Regulatory Act (IGRA) Public Law 100–497, 25 U.S.C. 2701 *et seq.*, the Secretary of the Interior shall publish in the Federal Register notice of approved Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. As required by 25 CFR 293.4, all compacts are subject to review and approval by the Secretary. The Secretary took no action on the Compact within 45 days of its submission. Therefore, the Compact is considered to have been approved, but only to the extent the Compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

Dated: October 16, 2015.

Kevin K. Washburn,

*Assistant Secretary—Indian Affairs.*

[FR Doc. 2015–27088 Filed 10–22–15; 8:45 am]

**BILLING CODE 4337–15–P**

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

[156A2100DD/AAKC001030/
A0A501010.999900 253G]

### Indian Gaming

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Tribal-State Class III Gaming Compact taking effect.

**SUMMARY:** Notice is hereby given that the Indian Gaming Compact between the State of New Mexico and the Pueblo of Tesuque governing Class III gaming (Compact) is taking effect.

**DATES:** *Effective date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Assistant Secretary—Indian Affairs, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Under section 11 of the Indian Gaming Regulatory Act (IGRA) Public Law 100–497, 25 U.S.C. 2701 *et seq.*, the Secretary of the Interior shall publish in the Federal Register notice of approved

Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. As required by 25 CFR 293.4, all compacts are subject to review and approval by the Secretary. The Secretary took no action on the Compact within 45 days of its submission. Therefore, the Compact is considered to have been approved, but only to the extent the Compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

Dated: October 16, 2015.

Kevin K. Washburn,

*Assistant Secretary—Indian Affairs.*

[FR Doc. 2015–27082 Filed 10–22–15; 8:45 am]

**BILLING CODE 4337–15–P**

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

[156A2100DD/AAKC001030/
A0A501010.999900 253G]

### Indian Gaming

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Tribal-State Class III Gaming Compacts taking effect.

**SUMMARY:** Notice is hereby given that the Indian Gaming Compact between the State of New Mexico and the Pueblo of Santa Clara governing Class III gaming (Compact) is taking effect.

**DATES:** *Effective date:* October 23, 2015.

**FOR FURTHER INFORMATION CONTACT:** Ms. Paula L. Hart, Director, Office of Indian Gaming, Office of the Assistant Secretary—Indian Affairs, Washington, DC 20240, (202) 219–4066.

**SUPPLEMENTARY INFORMATION:** Under section 11 of the Indian Gaming Regulatory Act (IGRA) Public Law 100–497, 25 U.S.C. 2701 *et seq.*, the Secretary of the Interior shall publish in the Federal Register notice of approved Tribal-State compacts for the purpose of engaging in Class III gaming activities on Indian lands. As required by 25 CFR 293.4, all compacts are subject to review and approval by the Secretary. The Secretary took no action on the Compact within 45 days of its submission. Therefore, the Compact is considered to have been approved, but only to the extent the Compact is consistent with IGRA. *See* 25 U.S.C. 2710(d)(8)(C).

Dated: October 16, 2015.

Kevin K. Washburn,

*Assistant Secretary—Indian Affairs.*

[FR Doc. 2015–27091 Filed 10–22–15; 8:45 am]

**BILLING CODE 4337–15–P**

---

## DEPARTMENT OF THE INTERIOR

### Office of the Secretary

[ONRR–2012–0003 DS63602000
DR2000000.PX8000 167D0102R2]

### U.S. Extractive Industries Transparency Initiative Advisory Committee Request for Nominees

**AGENCY:** Office of Natural Resources Revenue, Interior.

**ACTION:** Notice.

**SUMMARY:** The Department of the Interior (Interior) is seeking nominations for individuals to be Committee members or alternates on the U.S. Extractive Industries Transparency Initiative Advisory Committee (Committee). We seek nominees who can represent stakeholder constituencies from government, civil society, and industry so that we can fill current vacancies and create a roster of candidates in case future vacancies occur.

**DATES:** Submit nominations by December 31, 2015.

**ADDRESSES:** You may submit nominations by any of the following methods:
• Mail or hand-carry nominations to Ms. Rosita Compton Christian; Department of the Interior, 1849 C Street NW., MS 4211, Washington, DC 20240.
• Email nominations to USEITI@ ios.doi.gov.

**FOR FURTHER INFORMATION CONTACT:** Rosita Compton Christian at (202) 208–0272 or (202) 513–0597; fax (202) 513–0682; email *Rosita.ComptonChristian@ onrr.gov* or *USEITI@ios.doi.gov*; or via mail at the Department of the Interior; 1849 C Street NW., MS 4211; Washington, DC 20240.

**SUPPLEMENTARY INFORMATION:** Interior established the Committee on July 26, 2012, in accordance with the provisions of the Federal Advisory Committee Act (FACA), as amended (5 U.S.C. App.2), and with the concurrence of the General Services Administration. The Committee serves as the U.S. Extractive Industries Transparency Initiative Multi-Stakeholder Group and advises the Secretary of the Interior on design and implementation of the initiative.

The Committee does the following:
• Oversees the U.S. implementation of the Extractive Industries Transparency Initiative (EITI), a global standard for governments to publicly disclose revenues received from oil, gas, and mining assets belonging to the government, with parallel public disclosure by companies of payments to the

# INDIAN GAMING COMPACT

## BETWEEN

## THE STATE OF NEW MEXICO

## AND

## THE PUEBLO OF LAGUNA

TABLE OF CONTENTS

SECTION 1.     Purpose and Objectives................................................................. 2

SECTION 2.     Definitions. ....................................................................................... 2

SECTION 3.     Authorized Class III Gaming........................................................... 5

SECTION 4.     Conduct of Class III Gaming. ......................................................... 6

SECTION 5.     Licensing Requirements. ................................................................ 18

SECTION 6.     Providers of Class III Gaming Equipment or Devices or Supplies. ............... 19

SECTION 7.     Dispute Resolution........................................................................... 19

SECTION 8.     Protection of Visitors. ..................................................................... 20

SECTION 9.     Execution; Effective Date; Claims under Predecessor Agreement. ............... 22

SECTION 10.    Criminal Jurisdiction........................................................................ 23

SECTION 11.    Revenue Sharing. .............................................................................. 24

SECTION 12.    Duration; Termination for Non-Payment. ...................................... 26

SECTION 13.    Notice to Parties................................................................................ 27

SECTION 14.    Entire Agreement.............................................................................. 28

SECTION 15.    Filing of Compact with State Records Center. ............................. 28

SECTION 16.    Counterparts....................................................................................... 28

SECTION 17.    Internet Gaming................................................................................. 28

SECTION 18.    Applicability. ..................................................................................... 28

SECTION 19.    Severability. ....................................................................................... 28

eligible for gaming pursuant to the 25 U.S.C. §§ 2719 (a)(2)(B), (b)(1)(A), (b)(1)(B)(ii) or (b)(1)(B)(iii).

NOW, THEREFORE, the State and the Tribe agree as follows:

SECTION 1.    Purpose and Objectives.

The purpose and objectives of the State and the Tribe in making this Compact are as follows:

A.    To evidence the good will and cooperative spirit between the State and the Tribe;

B.    To continue the development of an effective government-to-government relationship between the State and the Tribe;

C.    To provide for the regulation of Class III Gaming on Indian Lands within the State of New Mexico as required by the IGRA;

D.    To fulfill the purpose and intent of the IGRA by providing for tribal gaming as a means of generating tribal revenues, thereby promoting tribal economic development, tribal self-sufficiency, and strong tribal government;

E.    To provide revenues to fund tribal government operations or programs, to provide for the general welfare of the tribal members and for other purposes allowed under the IGRA;

F.    To provide for the effective regulation of Class III Gaming in which the Tribe shall have the sole proprietary interest and be the primary beneficiary; and

G.    To address the State's interest in the establishment, by the Tribe, of rules and procedures for ensuring that Class III Gaming is conducted fairly and honestly by the owners, operators, employees and patrons of any Class III Gaming Enterprise on Indian Lands.

SECTION 2.    Definitions.

For purposes of this Compact, the following definitions pertain:

A.    "Adjusted Net Win" is Net Win with certain deductions for purposes of calculating revenue sharing as set forth in Section 11(C) of this Compact.

B.    "Card Minder" means a technological aid for a bingo game that serves as an electronic substitute for bingo cards and is used by a player to monitor bingo cards and called bingo numbers. A Card Minder does not include a device which permits a player to cover or daub a bingo card other than through overt action after numbers are released.

C.    "Class III Gaming" means all forms of gaming as defined in 25 U.S.C. § 2703(8), and 25 C.F.R. § 502.4.

D.    "Compact" means this compact between the State and the Tribe, and including the Appendix attached hereto.

2

E.    "Compliance Report" is the report submitted annually to the State Gaming Representative by the Tribal Gaming Agency according to the requirements set forth in the Appendix attached to this Compact.

F.    "Effective Date" has the meaning set forth in Section 9(A) of this Compact.

G.    "Free Play" means play on a Class III Gaming Machine initiated by points or credits provided to patrons without monetary consideration, and which have no cash redemption value.

H.    "Gaming Employee" means a person connected directly with the conduct of Class III Gaming, handling the proceeds thereof, or handling any Gaming Machine; but "Gaming Employee" does not include:

1.    Bartenders, cocktail servers or other persons engaged solely in preparing or serving food or beverages;

2.    Secretarial or janitorial personnel;

3.    Stage, sound and light technicians; or

4.    Other nongaming personnel.

I.    "Gaming Enterprise" means the tribal entity created and designated by the Tribe as having authority to conduct Class III Gaming pursuant to this Compact.

J.    "Gaming Facility" means each separate physical building or structure in which Class III Gaming is conducted on the Tribe's Indian Lands.

K.    "Gaming Machine" means a mechanical, electromechanical or electronic contrivance or machine that, upon insertion of a coin, token or similar object, or upon payment of any consideration in any manner, is available to play or operate a game of chance in which the outcome depends to a material degree on an element of chance, notwithstanding that some skill may be a factor, whether the payoff is made automatically from the Gaming Machine or in any other manner; but Gaming Machine does not include a Card Minder or a Table Game or any devices utilized in Table Games. Additional clarification of the definitions of a Gaming Machine and a Table Game is set forth in the attached Appendix.

L.    "Indian Lands" means:

1.    all lands within the exterior boundaries of the Tribe's reservation and its confirmed grants from prior sovereigns; or

2.    any other lands title to which is either held in trust by the United States for the exclusive benefit of the Tribe or a member thereof or is held by the Tribe or a member thereof subject to restrictions against alienation imposed by the United States, and over which the Tribe exercises jurisdiction and governmental authority, but not including any land within a municipality that is outside of the boundaries of the Tribe's reservation or confirmed Spanish grant as those boundaries existed on October 17, 1988.

3

(b)     Within ten (10) days of the Legacy Gaming Facility Deadline Date, the Tribe shall have an authorized representative sign a sworn affidavit that designates the Legacy Gaming Facility, provides the location of the Legacy Gaming Facility, and a detailed description of its gaming operations at the Legacy Gaming Facility as of that date, including the specific number of Gaming Machines and any other gaming activities and shall submit said affidavit to the State Gaming Representative.

(c)     The Legacy Gaming Facility shall be permitted to move one (1) time from its location as of June 30, 2015 (the "Existing Location"), subject to the following restrictions:

i)     the Legacy Gaming Facility shall not be moved more than seventeen (17) miles from its Existing Location; and

ii)     the Legacy Gaming Facility shall not be permitted to move if its Existing Location is located within fifty (50) miles from another Tribe's Gaming Facility located within the State.

(d)     The Gaming Enterprise shall not operate in excess of one hundred thirty (130) Class III Gaming Machines at the Legacy Gaming Facility.

SECTION 4.   Conduct of Class III Gaming.

A.     Tribal Gaming Agency.  The Tribal Gaming Agency will assure that the Tribe will:

1.     operate all Class III Gaming pursuant to this Compact, tribal law, the IGRA and other applicable federal law;

2.     provide for the physical safety of patrons in any Gaming Facility;

3.     provide for the physical safety of personnel employed by the Gaming Enterprise;

4.     provide for the physical safeguarding of assets transported to and from the Gaming Facility and cashier's cage department;

5.     provide for the protection of the property of the patrons and the Gaming Enterprise from illegal activity;

6.     participate in licensing of Primary Management Officials and Key Employees of a Class III Gaming Enterprise;

7.     detain persons who may be involved in illegal acts for the purpose of notifying law enforcement authorities;

8.     record and investigate any and all unusual occurrences related to Class III Gaming within the Gaming Facility; and

9.    comply with all applicable provisions of the Bank Secrecy Act, 31 U.S.C. §§ 5311-5314, and all reporting requirements of the Department of the Treasury, the Internal Revenue Service, the Financial Crimes Enforcement Network, and any other related divisions thereof, as applicable, and make all such documentation available to the State Gaming Representative for inspection, scanning, or copying upon request.

B.    Regulations.  Without affecting the generality of the foregoing, the Tribe shall adopt laws:

1.    prohibiting participation in any Class III Gaming by any person under the age of twenty-one (21);

2.    prohibiting the employment of any person as a Gaming Employee who is under the age of twenty-one (21) or who has not been licensed in accordance with the applicable requirements of federal and tribal law;

3.    requiring the Tribe to take all necessary action to impose on its gaming operation standards and requirements equivalent to or more stringent than those contained in the federal Fair Labor Standards Act of 1938, the federal Occupational Safety and Health Act of 1970, and any other federal laws generally applicable to Indian tribes relating to wages, hours of work and conditions of work, and the regulations issued thereunder;

4.    requiring that, on any construction project involving any Gaming Facility or related structure that is funded in whole or in part by federal funds, all workers will be paid wages meeting or exceeding the standards established for New Mexico under the federal Davis-Bacon Act;

5.    prohibiting the Tribe, the Gaming Enterprise and a Management Contractor from discriminating in the employment of persons to work for the Gaming Enterprise or in the Gaming Facility on the grounds of race, color, national origin, gender, sexual orientation, age or handicap, provided, however, that nothing herein shall be interpreted to prevent the Tribe from granting preference in employment actions to tribal members or other Indians in accordance with established tribal laws and policies;

6.    requiring the Tribe, through its Gaming Enterprise or through a third-party entity, to provide to all employees of the Gaming Enterprise employment benefits, including, at a minimum, sick leave, life insurance, paid annual leave or paid time off and medical and dental insurance as well as providing unemployment insurance and workers' compensation insurance through participation in programs offering benefits at least as favorable as those provided by comparable State programs, and which programs shall afford the employees due process of law and shall include an effective means for an employee to appeal an adverse determination by the insurer to an impartial forum, such as (but not limited to) the Tribe's Tribal Court, which appeal shall be decided in a timely manner and in an administrative or judicial proceeding and as to which no defense of tribal sovereign immunity would be available; and provided that to fulfill this requirement the Tribe may elect to participate in the State's program upon execution of an appropriate agreement with the State;

7

the central computer, and provided further that the system for electronic access to the machine wager and payout data collected by the Gaming Enterprise's central computer shall be constructed and installed at the State's cost, and shall be designed in conjunction with Gaming Enterprise technical staff so as to preserve the integrity of the system and the data contained therein, to minimize any possibility of unauthorized access to the system or tampering with the data, and to minimize any access by the State Gaming Representative to information other than machine wager and payout data residing in the central monitoring and control system;

14.    enacting provisions that:

(a)    prohibit an employee of the Gaming Enterprise from selling, serving, giving or delivering an alcoholic beverage to an intoxicated person or from procuring or aiding in the procurement of any alcoholic beverage for an intoxicated person at the Gaming Facility;

(b)    require Gaming Enterprise employees that dispense, sell, serve or deliver alcoholic beverages to attend Alcohol Server Education Classes similar to those classes provided for in the New Mexico Liquor Control Act; and

(c)    require the Gaming Enterprise to purchase and maintain a liquor liability insurance policy that will provide, at a minimum, personal injury coverage of one million dollars ($1,000,000) per incident and two million dollars ($2,000,000) aggregate per policy year;

15.    prohibiting alcoholic beverages from being sold, served, delivered, or consumed in that part of a Gaming Facility where gaming is allowed;

16.    requiring the Gaming Enterprise to spend, annually, an amount that is no less than one-quarter of one percent (.25%) of its Adjusted Net Win as that term is defined in Section 11(C)(1), to fund or support programs that the Tribe selects for the treatment and assistance of compulsive gamblers in New Mexico or who patronize New Mexico gaming facilities, and for the prevention of compulsive gambling in New Mexico; and requiring that a substantial portion of such funds be distributed to an organization that has expertise in and provides counseling, intervention or other services for compulsive gamblers in New Mexico, and whose services are available to all persons without regard to race or tribal membership; and requiring that the Tribe submit a report accounting for the use of these funds as described in the attached Appendix, and that this report and any other information existing as a result of this paragraph, not including information that may identify or contain information referring to any gaming patron, shall not be subject to the confidentiality provisions of Section 4(E)(4) of this Compact and shall be made available for inspection and publication without restriction or limitation;

17.    governing any Management Contract regarding its Class III Gaming activity so that it conforms to the requirements of tribal law and the IGRA and the regulations issued thereunder;

18.    prohibiting the Gaming Enterprise and the Tribe from providing, allowing, contracting to provide or arranging to provide alcoholic beverages for no charge or at reduced prices within a Gaming Facility; and

3.    Unless the parties agree in writing to the appointment of a single arbitrator, or as otherwise provided below, the arbitration shall be conducted before a panel of three (3) arbitrators. The arbitrators shall be attorneys who are licensed members in good standing of the State Bar of New Mexico or of the bar of another state. The State will select one arbitrator, the Tribe will select a second arbitrator, and the two so chosen shall select a third arbitrator. The party that served the written notice of noncompliance shall select its arbitrator within thirty (30) days after the party has invoked arbitration and the responding party shall select its arbitrator within thirty (30) days of the selection of the first arbitrator. If the responding party fails to select an arbitrator within the thirty (30) days provided, the parties shall proceed to arbitration with the single arbitrator selected by the party that served the written notice of noncompliance. If the responding party selects an arbitrator within the specified time period, the two arbitrators shall select a third arbitrator within thirty (30) days of the responding party's selection. If the third arbitrator is not chosen within thirty (30) days after the second arbitrator is selected, the third arbitrator will be chosen by the American Arbitration Association. The arbitrators thereby selected shall permit the parties to engage in reasonable discovery, and shall establish other procedures to ensure a full, fair and expeditious hearing on the matters at issue. The arbitrators shall determine, after hearing from each party, whether the arbitration proceeding or any portions thereof shall be closed to the public, but in the absence of such determination the proceedings shall be open to the public. The arbitrators shall make determinations as to each issue presented by the parties, but the arbitrators shall have no authority to determine any question as to the validity or effectiveness of this Compact or of any provision hereof. All parties shall bear their own costs of arbitration and attorneys' fees.

4.    The results of arbitration shall be final and binding, and shall be enforceable by an action for injunctive or mandatory injunctive relief against the State and the Tribe in any court of competent jurisdiction. For purposes of any such action, the State and the Tribe acknowledge that any action or failure to act on the part of any agent or employee of the State or the Tribe, contrary to a decision of the arbitrators in an arbitration proceeding conducted under the provisions of this Section, occurring after such decision, shall be wholly unauthorized and ultra vires acts, not protected by the sovereign immunity of the State or the Tribe.

B.    Nothing in Subsection 7(A) shall be construed to waive, limit or restrict any remedy that is otherwise available to either party to enforce or resolve disputes concerning the provisions of this Compact. Nothing in this Section shall be deemed a waiver of the Tribe's sovereign immunity. Nothing in this Section shall be deemed a waiver of the State's sovereign immunity.

SECTION 8.  Protection of Visitors.

A.    Policy Concerning Protection of Visitors. The safety and protection of visitors to a Gaming Facility is a priority of the Tribe, and it is the purpose of this Section to assure that any such persons who suffer bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise have an effective remedy for obtaining fair and just compensation. To that end, in this Section, and subject to its terms, the Tribe agrees to carry insurance that covers such injury or loss, agrees to a limited waiver of its immunity from suit, and agrees to proceed either in binding arbitration proceedings or in Tribal, State, or other court of competent jurisdiction, at the visitor's election, with respect to claims for bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise. For purposes of this Section, any such claim may be

brought in state district court, including claims arising on tribal land, unless it is finally determined by a state or federal court that the IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court.

B.    Insurance Coverage for Claims Required.  The Gaming Enterprise shall maintain in effect policies of liability insurance insuring the Tribe, Gaming Enterprise, its agents and employees against claims, demands or liability for bodily injury and property damages by a visitor arising from an occurrence described in Paragraph A of this Section.  The policies shall provide bodily injury and property damage coverage in an amount of at least ten million dollars ($10,000,000) per occurrence and ten million dollars ($10,000,000) annual aggregate.  The Tribe shall provide the State Gaming Representative annually a certificate of insurance showing that the Tribe, its agents and employees are insured to the required extent and in the circumstances described in this Section.

C.    Limitation on Time to Bring Claim.  Claims brought pursuant to the provisions of this Section must be commenced by filing an action in Tribal, State, or other court of competent jurisdiction or a demand for arbitration within three (3) years of the date the claim accrues.

D.    Specific Waiver of Immunity and Choice of Law.  The Tribe, by entering into this Compact and agreeing to the provisions of this Section, waives its defense of sovereign immunity in connection with any claims for compensatory damages for bodily injury or property damage up to the amount of ten million dollars ($10,000,000) per occurrence, asserted as provided in this Section.  This is a limited waiver and does not waive the Tribe's immunity from suit for any other purpose.  The Tribe shall ensure that a policy of insurance that it acquires to fulfill the requirements of this Section shall include a provision under which the insurer agrees not to assert the defense of sovereign immunity on behalf of the insured, up to the limits of liability set forth in this Paragraph.  The Tribe and the State agree that in any claim brought under the provisions of this Section, New Mexico law shall govern if the claimant pursues the claim in State Court, and the tribal law of the forum shall apply if the claim is brought in Tribal Court.

E.    Election by Visitor.  A visitor having a claim described in this Section may pursue that claim in binding arbitration, or Tribal, State, or other court of competent jurisdiction.  The visitor shall make a written election that is final and binding upon the visitor.

F.    Tribal Court.  The Tribe shall establish written procedures and substantive law for the disposition of tort claims arising from bodily injury or property damage alleged to have been suffered by visitors and shall enact such tribal law as is necessary to implement these procedures.  The procedures shall include all time limits applicable to the disposition of the tort claim and a provision that, upon request, the visitor, or the visitor's designated representative, shall be provided with a copy of the procedures as well as the name, address and telephone number of the Gaming Enterprise and the mailing address and telephone number of the clerk of the tribal court.

G.    Arbitration.  Arbitration pursuant to an election by a visitor as provided in Subsection E of this Section shall be conducted as follows:

1.    The visitor shall submit a written demand for arbitration to the Gaming Enterprise, by certified mail, return receipt requested;

21

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/23/2022 5:20 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT

D-101-CV-2022-00034

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of
ROLANDA LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

       Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL,
EDWARD KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW MEXICO,
AND NEW MEXICO DEPARTMENT OF TRANSPORTATION,

       Defendants.

## STIPULATED MOTION TO EXCEED PAGE LIMITS FOR
## BRIEFING RELATED TO DEFENDANT LAGUNA'S
## AMENDED MOTION TO DISMISS

      COME NOW Plaintiffs, Barry Green, as Personal Representative of the Wrongful Death

Estate of Rolanda Lahi, deceased, and Feliz Rael, as Guardian ad Litem of A.S. and A.S., minor

children, by and through their attorneys, DeLara | Supik | Odegard P.C., (Christopher J. DeLara,

Christopher J. Supik and David C. Odegard), and submit this Stipulated Motion to exceed page

limits for Briefing Related to Defendant Laguna Development Corporation's Amended Motion to

Dismiss, and as grounds therefore state:

      1.      LR1-201(A) NMRA, entitled "Motion practice," provides "[a] brief or memorandum

shall not exceed ten (10) pages, not including the cover page, conclusion, certificate of service, and

exhibits, without an order of the court." *Id.* (emphasis added).

2.      The parties do not dispute that the issues presented within Defendant's Motion to Dismiss are detailed and require citation to many cases and facts forming an extensive record.   To fully advise the Court of the issues and evidence, and to adequately address the issues raised by Defendant's filing, Plaintiffs require an extension of the page limitations imposed by the local rules.

3.      Plaintiffs request a page limitations extension for Plaintiffs' Response to Defendant's Amended Motion to Dismiss not to exceed thirty (30) total pages.

4.      Defendant Laguna Development Corporation requests a page limitations extension for Defendant's Reply in support of its amended motion to dismiss not to exceed twenty-two (22) total pages.

5.      Counsel for Defendant Laguna Development Corporation stipulates to this Motion.

WHEREFORE, the parties pray that the Court grant this Motion and grant such further relief as the Court deems just and proper.

Respectfully submitted,

DELARA | SUPIK | ODEGARD P.C.

By ___*/s/ Christopher J. DeLara*_____
            Christopher J. DeLara
            Christopher J. Supik
            David C. Odegard
            P.O. Box 91596
            Albuquerque, NM 87199-1596
            (505) 999-1500
            chris@delaralaw.com
            supik@delaralaw.com
            odegard@delaralaw.com
            *Attorneys for Plaintiff*

I HEREBY CERTIFY that on the 23rd day of March, 2022, I filed the foregoing Stipulated Motion to Exceed Page Limits for Briefing Related to Defendant Laguna's Amended Motion to Dismiss electronically through the State of New Mexico's Odyssey File & Serve system, requesting that the following counsel be served through Odyssey:

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
Durham, Pittard & Spalding, L.L.P.
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
(505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

*and*

E. Todd Tracy
The Tracy Firm
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

David W. Peterson
Jennings Haug Keleher McLeod LLP
P.O. Box AA
Albuquerque, NM 87103
(505) 346-4646
dwp@jhkmlaw.com
*Attorneys for the Route 66 Defendants*

Philip Thompson
Pegue & Thompson
202 East Marcy Street
Santa Fe, NM 87501
(505) 395-9558
pht@peguethompsonlaw.com
*Attorney for New Mexico Department of*
*Transportation*


*/s/ Christopher J. DeLara*        

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
3/25/2022 12:09 PM
KATHLEEN VIGIL CLERK OF THE COURT
Monica Chavez Crespin

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT

D-101-CV-2022-00034

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of
ROLANDA LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

        Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL,
EDWARD KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW MEXICO,
AND NEW MEXICO DEPARTMENT OF TRANSPORTATION,

        Defendants.

## STIPULATED ORDER GRANTING
## MOTION TO EXCEED PAGE LIMITS

    This matter having come before the Court on a Stipulated Motion to Exceed Page Limits

for Briefing Related to Defendant Laguna's Amended Motion to Dismiss, and the Court having

reviewed the Motion, determined that the Motion is unopposed and good cause exists, FINDS

Plaintiffs' Motion is well-taken and should be GRANTED.

    IT IS THEREFORE ORDERED that Plaintiffs are granted leave to exceed the page

limitations imposed by Local Rules LR1-201(A) for Plaintiffs' Response to Defendant Laguna's

Amended Motion to Dismiss, up to 30 total pages for the brief; and that Defendant

Laguna Development Corporation is granted up to 22 total pages for Defendant's Reply in support

of its Amended Motion to Dismiss.

                                   3/25/2022

                THE HONORABLE MATTHEW WILSON
                DISTRICT COURT JUDGE

SUBMITTED BY:

DELARA | SUPIK | ODEGARD P.C.


By    */s/ Christopher J. DeLara*
       Christopher J. DeLara
       Christopher J. Supik
       David C. Odegard
       P.O. Box 91596
       Albuquerque, NM 87199-1596
       (505) 999-1500
       chris@delaralaw.com
       supik@delaralaw.com
       odegard@delaralaw.com
       *Attorneys for Plaintiffs*


APPROVED AS TO FORM BY:


DURHAM, PITTARD & SPALDING, L.L.P.


By    *Response not received/No position*
       Justin R. Kaufman
       Rosalind B. Bienvenu
       Caren I. Friedman
       505 Cerrillos Road, Suite A209
       Santa Fe, New Mexico 87501
       (505) 986-0600
       jkaufman@dpslawgroup.com
       rbienvenu@dpslawgroup.com
       cfriedman@dpslawgroup.com
       *Attorneys for Plaintiffs*

--and--

       E. Todd Tracy
       The Tracy Firm
       4701 Bengal Street
       Dallas, Texas 75235
       (214) 324-9000
       ttracy@vehiclesafetyfirm.com
       *Attorneys for Plaintiffs*

2

JENNINGS HAUG KELEHER MCLEOD LLP


By ___*Approved by email March 21, 2022*___
    David W. Peterson
    P.O. Box AA
    Albuquerque, NM 87103
    (505) 346-4646
    dwp@jhkmlaw.com
    *Attorneys for the Route 66 Defendants*


PEGUE & THOMPSON


By ___*Response not received/No position*___
    Philip Thompson
    202 East Marcy Street
    Santa Fe, NM 87501
    (505) 395-9558
    pht@peguethompsonlaw.com
    *Attorney for New Mexico Department of*
    *Transportation*

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/5/2022 11:31 AM
KATHLEEN VIGIL CLERK OF THE COURT
Bernadette Hernandez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT

D-101-CV-2022-00034

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of
ROLANDA LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

       Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION d/b/a ROUTE 66 CASINO HOTEL,
EDWARD KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW MEXICO,
AND NEW MEXICO DEPARTMENT OF TRANSPORTATION,

       Defendants.

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LAGUNA DEVELOPMENT CORPORATION'S AMENDED MOTION TO DISMISS

COME NOW Plaintiffs, Barry Green, as Personal Representative of the Wrongful Death

Estate of Rolanda Lahi, deceased, and Feliz Rael, as Guardian ad Litem of A.S. and A.S., minor

children, by and through their attorneys, DeLara | Supik | Odegard P.C., and for their Response in

Opposition to Defendant Laguna Development Corporation's Amended Motion to Dismiss state

as follows:

### INTRODUCTION

Defendant Laguna Development Corporation's (hereinafter "Laguna") Motion to Dismiss

fails based on clear precedent which allows claims against non-Indian tortfeasors by non-Indian

claimants and by New Mexico law which waives sovereign immunity as to the claims brought by

Plaintiffs.

As set forth herein, Plaintiff is a non-tribal member suing non-tribal members for well-established torts under New Mexico law. In addition, Laguna has waived the defense of sovereign immunity, a fact which is acknowledged by Defendant, and Defendant's Motion should be denied.

## RESPONSE TO JURISDICTIONAL FACTS AND ALLEGATIONS

1.      As to Paragraph 1, Plaintiffs state that the Declaration of Alicia Sanasac fails to satisfy the evidentiary requirements for admissibility pursuant to the Rules of Evidence. Rule 11-602 NMRA provides, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.* "Under SCRA 1986, 11-602, a witness may not testify to a matter 'unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter.'" *Empire W. Cos v. Albuquerque Testing Labs, Inc.,* 1990-NMSC-096, ¶ 14, 110 N.M. 790. *See also BAC Home Loans Servicing LP v. Smith,* 2016-NMCA-025, ¶ 12, 366 P.3d 714 (a witness must produce evidence sufficient to support a finding of personal knowledge of the matter). The Declaration of Alicia Sanasac is utterly devoid of evidence establishing Ms. Sanasac may testify as to the matters contained therein. Aside from a mere assertion that Ms. Sanasac is "Associate Counsel for Laguna Development Corporation," there is no evidence to show Ms. Sanasac is competent to testify as to any of the conclusory assertions within the Declaration. In addition, the basis of Ms. Sanasac's purported knowledge may be inadmissible hearsay for which no exception exists. *See BAC Home Loans Servicing LP, id.* A review of Ms. Sanasac's Declaration also shows that the statements therein not only lack any detailed foundation for their conclusions they are conclusory in form, self-serving and inadmissible. *See Hartman v. Texaco, Inc.,* 1997-NMCA-032, ¶ 24, 123 N.M. 220 (finding that affidavits that were "conclusory in form,

self-serving, and lack[ed] detailed foundations for their conclusions," were insufficient to "support the immunity claim.") *Id.*

Despite the deficiency of Ms. Sanasac's Declaration, 84 Fed. Reg. 1200 (Feb. 1, 2019) indicates that the Pueblo of Laguna, and not Defendant Laguna Development Corporation, is a federally recognized Indian Tribe.

2.    As to Paragraph 2, Plaintiffs do not dispute that a portion of the Gaming Compact is attached to Defendant's Motion as Exhibit B.    However, Defendant has failed to submit any admissible evidence supporting the remainder of this paragraph.    *See* ¶ 1, *supra*.

3.    As to Paragraph 3, Defendant has failed to submit any admissible evidence showing that "Laguna Development operates the Route 66 Casino within the exterior boundaries of the Pueblo [of Laguna]."    *See* ¶ 1, *supra*.    Defendant cites to Paragraph 6 of the Complaint in support of Defendant's assertion.    However, Paragraph 6 asserts that Route 66 Casino "has its principal place of business in Albuquerque, New Mexico…and was doing business in New Mexico at the time of the incident that is the subject of this Complaint."    *See* First Amended Complaint, filed herein on January 12, 2022.

4.    As to Paragraph 4, Plaintiffs do not dispute that the individually named Defendants are not members of Laguna Pueblo.    Plaintiffs have sued these non-tribal member Defendants individually and as set forth herein, immunity is not applicable.    In addition, the Gaming Compact provides that the individual Defendants are not "gaming employees."

> "Gaming Employee" means a person connected directly with the conduct of Class III Gaming, handling the proceeds thereof, or handling any Gaming Machine; but "Gaming Employee" does not include:
>
> 1.    Bartenders, cocktail servers or other persons engaged solely in preparing or serving food or beverages;

2.     Secretarial or janitorial personnel;

3.     State, sound and light technicians; or

4.     Other nongaming personnel.

**Exhibit 1** (Gaming Compact, p. 3).

Plaintiffs' Complaint clearly states "Defendants acted individually" thereby making immunity inapplicable.  As can be seen within the First Amended Complaint, Plaintiffs allege specific direct wrongful acts against the non-Tribal member Defendants.  *See* First Amended Complaint, ¶¶ 51 – 53 (related to the acts of Defendant Orozco supporting Plaintiffs' spoliation claim); ¶¶ 72 through 88 (alleging specific claims against non-Tribal member Defendants Khader, Fox and Orozco related to liquor liability, negligence and negligence *per se*); ¶¶ 94 through 110 (alleging specific claims against non-Tribal member Defendants Khader, Fox and Orozco related to spoliation of evidence); and ¶¶ 163 through 169 (alleging specific claims against non-Tribal member Defendants Khader, Fox and Orozco related to loss of consortium and punitive damages).

5.     As to Paragraph 5, Plaintiffs state that Defendant has failed to produce any admissible evidence that "[t]he alleged conduct of the LDC Defendants occurred within the Pueblo."  *See* ¶ 1, *supra*.  Plaintiffs further state that Plaintiffs do not dispute the allegations of the Complaint.

6.     As to Paragraph 6, Plaintiffs do not dispute that the Pueblo of Laguna is authorized to sell liquor pursuant to 52 Fed. Reg. 15768 § (Apr. 30, 1987).  Plaintiffs also do not dispute that the 52 Fed. Reg 15768 provides "[a]ny person who knowingly sells liquor to a person who the seller has reason to believe is under the influence of alcohol or any person under the influence of alcohol who shall purchase liquor shall be in violation of this ordinance."

However, the Pueblo of Laguna's Liquor Control Law fails to contain any prohibition related to "procuring or aiding in the procurement of any alcoholic beverage for an intoxicated person at the

Gaming Facility," as specifically required pursuant to Section 8(D) of the Gaming Compact. *See* 53 Fed. Reg. 15768 (1987), and 65 Fed. Reg. 35121 (2000).

In addition, Defendant has failed to submit any evidence whatsoever that Defendant has complied with other provisions of the Compact, including the requirements of Section 8(F) which provides,

> The Tribe shall establish written procedures and substantive law for the disposition of tort claims arising from bodily injury or property damage alleged to have been suffered by visitors and shall enact such tribal law as is necessary to implement these procedures. The procedures shall include all time limits applicable to the disposition of the tort claim and a provision that, upon request, the visitor, or the visitor's designated representative, shall be provided with a copy of the procedures as well as the name, address and telephone number of the Gaming Enterprise and the mailing address and telephone number of the clerk of the tribal court.

Motion, Exhibit B, Section 8(F). Based on the available evidence, including the Federal Register, Defendant Laguna is not in compliance with the Gaming Compact.

7.      As to Paragraph 7, Plaintiffs do not dispute the language of the Gaming Compact. However, as set forth herein, the language of the Gaming Compact does not support dismissal of this matter. Plaintiffs further state, as set forth herein, that the claims at issue in this matter undisputedly involve a visitor to a gaming facility, Defendant Lee, for which immunity as to Defendant Laguna has been waived pursuant to the Gaming Compact. *See infra.*

## ARGUMENT

## I.      <u>Defendants are not entitled to immunity and Defendant's Motion should be denied.</u>

Defendant's Motion is based on the flawed arguments that: 1) Defendant Laguna Development Corporation's employees, who are not tribal members, are immune from

suit by another non-tribal member; and 2) there has been no waiver of immunity by Defendant

Laguna Development Corporation in the New Mexico Gaming Compacts.[1]

> Tribal sovereign authority and tribal sovereign immunity are distinct doctrines with different origins and purposes. Tribal sovereign authority concerns the extent to which a tribe may exercise jurisdictional authority over lands the tribe owns to the exclusion of state jurisdiction. Generally, a state has the authority to tax or regulate—i.e., apply state substantive law to—tribal activities occurring within the state and outside reservation lands, *as well as to tax or regulate nonmembers activity on Indian fee-owned and reservation lands.* And, conversely, a tribe—as a unique entity possessing attributes of sovereignty over both its members and territory—*may regulate its own members, and its fee-owned and reservation lands,* to the extent necessary to protect tribal self-government and internal relations. *Thus, tribal sovereign authority, the power of a tribe to exert what is necessary to protect self-governance and establish relations amongst members to the exclusion of state regulation, is inherently distinct from the notion of tribal sovereign immunity—the plenary right to be free from having to answer a suit.*

*Hamaatsa, Inc. v. Pueblo of San Felipe,* 2017 NMSC-007, ¶ 26, 388 P.3d 977 (citations and

quotations omitted)(emphasis added).

**A.    Tribal court has no jurisdiction over the claims of a non-tribal member against another non-tribal member.**

Defendant cites to *Williams v. Lee,* 358 U.S. 217, but ignores relevant language within

*Williams* which makes inapplicable Plaintiffs' claims against Defendant.

---

[1] Despite its extensive citation to federal law, Defendant is bound by New Mexico state law in relation to the claims brought by Plaintiff. *See* Motion, Exhibit B, Gaming Compact, Section 8(D), "New Mexico law shall govern if the claimant pursues the claim in State Court[.]" "When a contractual provision is unambiguous, we only apply it and do not interpret it." *R & R Deli, Inc. v. Santa Ana Star Casino,* 2006-NMCA-020, ¶ 13, 139 N.M. 85 (*citing Richardson v. Farmers Ins. Co.,* 1991-NMSC-052, 112 N.M. 73). "Gaming compacts are contracts between two parties, and we treat them as such.… When a contractual provision is unambiguous, we need not engage in construction or interpretation of the provision's language." *R & R Deli, Inc.,* ¶ 20 (citations omitted). "Section 8(D) of the Compact provides that New Mexico law governs the substantive rights of any claimant bringing suit under the waiver." *Guzman v. Laguna Dev. Corp.,* 2009-NMCA-116, ¶ 23, 147 N.M. 244.

> [S]uits by Indians against outsiders in state courts have been sanctioned. See *Felix v. Patrick*, 145 U.S. 317, 332; *Unites States v. Candelaria*, 271 U.S. 432. *See also Harrison v. Laveen*, 67 Ariz. 337, 196 P.2d 456. And state courts have been allowed to try non-Indians who committed crimes against each other on a reservation. *E.g., New York ex rel. Ray v. Martin*, 326 U.S. 496.

*Williams,* at 219 – 220. As the United States Supreme Court stated in *Nevada v. Hicks,* 533 U.S. 353,

> When on-reservation conduct *involving only Indians* is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest. *When, however, state interests outside the reservation are implicated, States may regulate the activities even of tribe members on tribal land,* as exemplified by our decision in *Confederated Tribes....* It is also well established in our precedent that States have criminal jurisdiction over reservation Indians for crimes committed (as was the alleged poaching in this case) off reservation.

*Hicks,* at 362 (emphasis added).

In *Montana v. United States,* 450 U.S. 544 (1981), the U.S. Supreme Court wrote,

> [This] Court [has] distinguished between those inherent powers retained by the tribes and those divested: *The areas in which such implicit divestiture of sovereignty has been held to have occurred* are those involving *the relations between an Indian tribe and nonmembers of the tribe ....* These limitations rest on the fact that the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently *to determine their external relations.* But the powers of self-government, including the power to prescribe and enforce internal criminal laws, are of a different type. They involve *only the relations among members of a tribe.* Thus, they are not such powers as would necessarily be lost by virtue of a tribe's dependent status.

*Montana,* 450 U.S. at 564 (emphasis in original).

The United States Supreme Court has consistently held that Indian Tribes do not have jurisdiction over claims between non-Indians.

The Court recently applied these general principles in *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, rejecting a tribal claim of inherent sovereign authority to exercise criminal jurisdiction over non-Indians.   Stressing that Indian tribes cannot exercise power inconsistent with their diminished status as sovereigns, the Court quoted Justice Johnson's words in his concurrence in *Fletcher v. Peck,* 6 Cranch 87, 147 – the first Indian case to reach this Court – *that the Indian tribes have lost any "right of governing every person within their limits except themselves."*  435 U.S., at 209.  Though *Oliphant* only determined inherent tribal authority in criminal matters, the principles on which it relied support the general proposition that the inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.   A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers *who enter consensual relationships with the tribe or its members,* through commercial dealing, contracts, leases, or other arrangements.

*Montana,* 450 U.S. at 565 (emphasis added).

In *Oliphant,* the U.S. Supreme Court wrote, "[w]hile not conclusive on the issue before us, the commonly shared presumption of Congress, the Executive Branch, and lower federal courts that tribal courts do not have the power to try non-Indians carries considerable weight."  *Oliphant,* 435 U.S. 206.  Quoting *United States v. Kagama,* 118 U.S. 375, 379 (1886), the Court in *Oliphant* further wrote,

Indians are within the geographical limits of the United States.  *The soil and people within these limits are under the political control of the Government of the United States, or of the States of the Union.* There exist in the broad domain of sovereignty but these two.  *There may be cities, counties, and other organized bodies with limited legislative functions, but they---exist in subordination to one or the other of these.*

*Oliphant,* 435 U.S. at 211 (emphasis added).

In this matter, the crash at issue giving rise to Plaintiffs' claims occurred on land that is under the control of the State of New Mexico, and not Defendant Laguna.  "Forming part of the State's highway, the right-of-way is open to the public, and traffic on it is subject to the State's

control.  The Tribes have consented to, and received payment for, the State's use of the…public highway.  They have retained no gatekeeping right.  So long as the stretch is maintained as part of the State's highway, the Tribes cannot assert a landowner's right to occupy and exclude." *Strate v. A-1 Constrs.,* 520 U.S. 438, 455-56 (1997).

Citing to *Montana,* the U.S. Supreme Court wrote, "In the main, the Court explained, the inherent sovereign powers of an Indian tribe—those powers a tribe enjoys apart from express provision by treaty or statute—*do not extend to the activities of nonmembers of the tribe.*" *Strate v. A-1 Constrs.,* 520 U.S. 438, 446 (1997)(citations and quotations omitted)(emphasis added).  The Court further wrote,

> *Montana* [ ] described a general rule that, absent a different congressional direction, *Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation,* subject to two exceptions:  The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

*Strate,* 520 U.S. at 446 (emphasis added).

> The first exception to the *Montana* rule covers "activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements."  450 U.S. at 565.  The tortious conduct alleged in Frederick's complaint does not fit that description.  The dispute, as the Court of Appeals said, is "distinctly non-tribal in nature." 76 F.3d at 940.  It "arose between two non-Indians involved in [a] run-of-the-mill [highway] accident."  *Ibid.*  Although A-1 was engaged in subcontract work on the Fort Berthold Reservation, and therefore had a "consensual relationship" with the Tribes, "Gisela Fredricks was not a party to the subcontract, and the Tribes were strangers to the accident."  *Ibid.*
>
> Montana's list of cases fitting within the first exception, see 450 U.S. at 565-566, indicates the type of activities the Court had in mind:  *Williams v. Lee,* 358 U.S. 217, 223 3 L.Ed.2d 251, 79 S.Ct. 269 (1959)(declaring tribal jurisdiction exclusive over lawsuit arising out of *on-reservation sales transaction between nonmember*

> *plaintiff and member defendants*); *Morris v. Hitchcock,* 194 U.S.
> 384, 48 L.Ed 1030, 24 S.Ct. 712 (1904)(upholding tribal permit tax
> on nonmember-owned livestock within boundaries of the
> Chickasaw Nation); *Buster v. Wright,* 135 F. 947, 950 (CA8
> 1905)(upholding Tribe's permit tax on nonmembers for the
> privilege of conducting business within Tribe's borders; court
> characterized as "inherent" the Tribe's "authority…to prescribe the
> terms upon which noncitizens may transact business within its
> borders"); *Colville,* 447 U.S. at 152-154 (tribal authority to tax on-
> reservation cigarette sales to nonmembers "is a fundamental
> attribute of sovereignty which the tribes retain unless divested of it
> by federal law or necessary implication of their dependent status").
> Measured against these cases, the Fredericks-Stockert highway
> accident presents no "consensual relationship" of the qualifying
> kind.
>
> The Court's statement of *Montana's* second exceptional category is
> followed by citation of four cases, *ibid.;* each of those cases raised
> the question whether a State's (or Territory's) exercise of authority
> would trench unduly on tribal self-government.  In two of the cases,
> the Court held that a State's exercise of authority would so intrude,
> and in two, the Court saw no impermissible intrusion….
>
> Read in isolation, the *Montana* rule's second exception can be
> misperceived.  Key to its proper application, however, is the Court's
> preface:  "Indian tribes retain their inherent power [to punish *tribal
> offenders,*] to determine *tribal membership, to regulate domestic
> relations among members, and to prescribe rules of inheritance for
> members….But [a tribe's inherent power does not reach] beyond
> what is necessary to protect tribal self-government or to control
> internal relations."* 450 U.S. at 564.  Neither regulatory nor
> adjudicatory authority over the state highway accident at issue is
> needed to preserve "the right of reservation Indians to make their
> own law and be rule by them." *Williams,* 358 U.S. at 220.  The
> *Montana* rule, there, and not its exceptions, applies to this case.

*Strate,* 520 U.S. at 456-459 (emphasis added).

*Montana's* "consensual relationship" requirement has been analyzed by the U.S. Supreme

Court.

> The consensual relationship must stem from "commercial dealing,
> contracts, leases, or other arrangements," *Montana,* 450 U.S. at 565,
> and a nonmember's actual or potential receipt of tribal police, fire,
> and medical services does not create the requisite connection.  If it

did, the exception would swallow the rule: All non-Indian fee lands within a reservation benefit, to some extent, from the "advantages of a civilized society" offered by the Indian tribe. *Merrion, supra,* at 137-138 (internal quotation marks and citation omitted). Such a result does not square with our precedents; indeed, we implicitly rejected this argument in *Strate,* where we held that the nonmembers had not consented to the Tribe's adjudicatory authority by availing themselves of the benefit of tribal police protection while traveling within the reservation. See 520 U.S. at 456-457, and n. 11. We therefore reject respondents' broad reading of *Montana's* first exception, which ignores the dependent status of Indian tribes and subverts the territorial restriction upon tribal power.

*Atkinson Trading Co. v. Shirley,* 532 U.S. 645, 655 (2001). The Court held,

Indian tribes are "unique aggregations possessing attributes of sovereignty over both their members and their territory," but their dependent status generally precludes extension of tribal civil authority beyond these limits. *United States v. Mazurie,* 419 U.S. 544, 557, 42 L.Ed 2d 706, 95 S.Ct. 710 (1975). The Navajo Nation's imposition of a tax upon nonmembers on non-Indian fee land within the reservation is, therefore, presumptively invalid. Because respondents have failed to establish that the hotel occupancy tax is commensurately related to any consensual relationship with petitioner or is necessary to vindicate the Navajo Nation's political integrity, the presumption ripens into a holding.

*Atkinson Trading Co. v. Shirley,* 532 U.S. 645. 659 (2001).

It is evident from the case law that any argument related to Defendant Laguna's sovereignty related to an action by a non-tribal member against non-tribal members fails. In addition, while "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers," unless waived, that immunity does not apply to individuals. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58 (1978). In *Santa Clara Pueblo,* "a female member of the tribe and her daughter, brought suit in federal court against the tribe and its Governor, petitioner Lucario Padilla, seeking declaratory and injunctive relief[.]" *Santa Clara,* 436 U.S. at 51. The Court wrote, "[a]s an officer of the Pueblo, petitioner Lucario Padilla is not protected by the tribe's immunity from suit," and cited *Puyallup Tribe v. Washington Dept. of*

11

*Game,* 433 U.S. 165, 171-172 (1977) and *Ex parte Young,* 209 U.S. 123 (1908). *Santa Clara,* 436 U.S. at 59. Although in *Santa Clara* the Court ruled that a private right of action did not exist under statute, the facts of the case show that the acts complained of occurred within Santa Clara Pueblo and asserted causes of action against the Governor of the Pueblo. If the Governor of an Indian tribe, a tribal member, is not able to avail himself of sovereign immunity, it is impossible to claim that non-tribal member employees of a commercial enterprise such as a Casino are immune from suit.

This conclusion is supported by the cases cited within *Santa Clara.* In *Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165 (1977), the U.S. Supreme Court wrote,

> whether or not the Tribe itself may be sued in state court without its consent or that of Congress, a suit to enjoin violations of state law by individual tribal members is permissible. *The doctrine of sovereign immunity* which was applied in United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, *does not immunize the individual members of the Tribe.*

*Puyallup Tribe, Inc.,* 433 U.S. 165, 171-172 (1977)(emphasis added).

In this matter, the relationship of the individual Defendants is even further removed, because the individually named Defendants are not tribal officials or even members of the Pueblo. *See* Motion, ¶ 4 ("[t]he individual LDC Defendants are not members of the Pueblo…but are employees of LDC.").

The New Mexico cases cited by Defendant similarly do not support Defendant's position. In *Garcia v. Gutierrez,* 2009-NMSC-044, 147 N.M. 105, the dispute concerned "divorce and custody…between an Indian father and a non-Indian mother whose children are enrolled members of the Pojoaque Pueblo[.]" *Garcia,* ¶ 2. Despite the existence of an Indian father, and the fact that the "dispute arose" in "'Indian country,'" the Court "conclude(d) that the state court does have jurisdiction." *Garcia,* ¶¶ 3-4.

The Court cited the "infringement test" set forth in *Montana* and wrote, "[u]nder the infringement test, we consider three factors: whether the parties are Indian or non-Indian; whether the cause of action arose within the Indian reservation; and the nature of the interest to be protected." *Garcia*, ¶ 47. The first factor in the *Montana/Garcia* infringement test is not met in this matter because the individual Defendants, as well as Plaintiff, are not Laguna tribal members. The same analysis applies to the additional cases cited by Defendant. *See Hartley v. Baca*, 1981-NMCA-080, 97 N.M. 441 (suit by non-Indian against "full blooded Santa Clara Indian" arising from crash that "occurred entirely within the exterior boundaries of Santa Clara Pueblo." *Hartley*, ¶ 2); *Hinkle v. Abeita*, 2012-NMCA-074, 283 P.3d 877 ("Exclusive tribal jurisdiction exists…when an Indian is being sued by a non-Indian over an occurrence or transaction arising in Indian country[.]" *Hinkle*, ¶ 6 (quoting *Found. Reserve Ins. Co. v. Garcia*, 1987-NMSC-024, 105 N.M. 514)); *Smith v. Salish Kootenai College*, 434 F.3d 1127 (9th Cir. 2006)("where the non-members are *defendants,* the [U.S. Supreme] Court has thus far held that the tribes lack jurisdiction, irrespective of whether the claims arose on Indian lands…. Finally, where *neither* party is a tribal member the tribe lacks jurisdiction to adjudicate claims[.]" *Smith*, 434 F.3d at 1132)(citations omitted)(emphasis in original).

"James Smith is not a member of the Confederated Salish and Kootenai Tribes. He is a member of the Umatilla Tribe, but for purposes of determining the tribal civil jurisdiction of the Salish and Kootenai Tribal Courts, he is a nonmember." *Smith*, 434 F.3d at 1132-33 (*citing Nevada v. Hicks,* 533 U.S. 353, 377 (2001), and *Duro v. Reina,* 495 U.S. 676, 695-96 (1990).

**B.    The New Mexico Gaming Compact has no relevance to Plaintiffs' claims against individual Defendants.**

Defendant's argument that Defendant Laguna's casino's employees are entitled to sovereign immunity was also specifically rejected by the U.S. Supreme Court in *Lewis v. Clarke,* 137 S.Ct. 1285 (2017). The Court wrote,

> Indian tribes are generally entitled to immunity from suit. This Court has considered the scope of that immunity in a number of circumstances. This case presents an ordinary negligence action brought against a tribal employee in state court under state law. We granted certiorari to resolve whether an Indian tribe's sovereign immunity bars individual-capacity damages actions against tribal employees for torts committed within the scope of their employment and for which the employees are indemnified by the tribe.
>
> *We hold that, in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated.* That an employee was acting within the scope of his employment at the time the tort was committed is not, on it own, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity. We hold further that an indemnification provision does not extend a tribe's sovereign immunity where it otherwise would not reach.

*Lewis,* 137 S.Ct. at 1289 (emphasis added).

The Court set forth the facts as follows,

> The Mohegan Tribe of Indians of Connecticut traces its lineage back centuries….
>
> As one means of maintaining its economic self-sufficiency, the Tribe entered into a Gaming Compact with the State of Connecticut pursuant to the Indian Gaming Regulatory Act, 102 Stat. 2467, 25 U.S.C. § 2701, *et seq.* The compact authorizes the Tribe to conduct gaming on its land, subject to certain conditions including establishment of the Gaming Disputes Court….
>
> Of particular relevance here, Mohegan law sets out sovereign immunity and indemnification policies applicable to disputes arising from gaming activities. The Gaming Authority has waived its sovereign immunity and consented to be sued in the Mohegan Gaming Dispute Court…. Further, Mohegan Tribe Code § 4-52

14

provides that the Gaming Authority "shall save harmless and indemnify its Officer or Employee from financial loss and expense arising out of any claim, demand, or suit by reason of his or her alleged negligence…if the Officer or Employee is found to have been acting in the discharge of his or her duties or within the scope of his or her employment."…

Petitioners…were driving down Interstate 95 in Norwalk, Connecticut, when a limousine driven by respondent William Clarke hit their vehicle from behind. Clarke, a Gaming Authority employee, was transporting patrons of the Mohegan Sun Casino to their homes.

*Lewis,* 137 S.Ct. at 1290. The Court wrote,

The distinction between individual- and official-capacity suits is paramount here. In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself. This why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. The real party in interest is the government entity, not the named official. Personal-capacity suits, on the other hand, seek to impose *individual* liability upon a government officer for actions taken under color of state law….

The identify of the real party in interest dictates what immunities may be available. Defendants in an official-capacity action may assert sovereign immunity…. But sovereign immunity does not erect a barrier against suits to impose individual and personal liability.

*Lewis,* 137 S.Ct. at 1292 (emphasis in original). The Court further wrote, "[t]he Tribe's indemnification provision does not somehow convert the suit against Clarke into a suit against the sovereign; when Clarke is sued in his individual capacity, he is held responsible only for his individual wrongdoing." *Lewis,* 137 S.Ct at 1294. "In sum, *although tribal sovereign immunity is implicated when the suit is brought against individual officers in their official capacities, it is simply not present when the claim is made against those employees in their individual capacities.*

An indemnification statute such as the one at issue here does not alter the analysis. Clarke may not avail himself of a sovereign immunity defense." *Lewis,* 137 S.Ct. at 1295 (emphasis added).

In addition, because Plaintiffs' claims against the individual Defendants are not implicated or affected by the Gaming Compacts, there are no limitations on the kind or quality of damages or causes of action as may be limited by the Compact, such as spoliation of evidence or loss of consortium.

As set forth above, Defendant's reliance on Federal law is misplaced and the cases cited by Defendant, including *Williams v. Lee,* 358 U.S. 217 (1959), do not support Defendant's position. Contrary to Defendant's argument, tribal court has no jurisdiction over the claims of a non-tribal member against another non-tribal member and the New Mexico Gaming Compact has no relevancy or applicability to Plaintiff's claims against individual Defendants. Plaintiffs' individual claims against Defendant's employees are proper in New Mexico state court. Hence, Defendant's Motion should be denied.

II.    **New Mexico State Court Precedent Requires Denial of Defendant's Motion as to Defendant Laguna Development Corporation.**

A.    **New Mexico case law, including cases cited by Defendant, requires denial of Defendant's Motion to Dismiss.**

Defendant cites to *Doe v. Santa Clara Pueblo,* 2007-NMSC-008, 141 N.M. 269 in support of dismissal. However, the holding in *Doe* is directly contrary to Defendant's argument. In *Doe,* the Court specifically held "*that state courts have jurisdiction over personal injury actions filed against Pueblos arising from negligent acts alleged against casinos owned and operated by the Pueblos and occurring on pueblo lands.*" *Doe,* ¶ 1 (emphasis added). In *Doe,* the Court analyzed tort claims filed directly against New Mexico Pueblos, the New Mexico Gaming Compacts, and the Indian Gaming Regulatory Act. In *Doe,* one plaintiff "filed suit through her mother against

16

Santa Clara Pueblo and several individuals for injuries that occurred after she was abducted by three men from Santa Clara's Big Rock Casino and sexually assaulted." *Doe*, ¶ 2. The second plaintiffs, "filed suit against San Felipe Pueblo for injuries that occurred on the premises of San Felipe's Casino Hollywood." *Doe*, ¶ 3. "Both sets of plaintiffs…chose to sue the respective Pueblo in state court instead of tribal court based on a jurisdiction shifting provision contained in the gaming compact negotiated by the State and the Pueblos[.]" *Doe*, ¶ 4. The Court concluded that the Gaming Compacts and the Indian Gaming Regulatory Act permitted tort claims against Pueblos in New Mexico state courts.

Similarly, the case of *Mendoza v. Tamaya Enters.*, 2011-NMSC-030, 150 N.M. 258, requires denial of Defendant's Motion. In *Mendoza,* the Supreme Court addressed "the question of state court jurisdiction in a dram shop action brought under the Tribal-State Class III Gaming Compact," and "conflict between Section 8 of the Compact, which provides for state court jurisdiction where a casino visitor has been injured by the conduct of a casino, and Section 191 of the Pueblo of Santa Ana Liquor Ordinance, which reserves exclusive jurisdiction to tribal courts." *Mendoza,* ¶ 1.

> Siblings Michael and Desiree Mendoza attended a wedding reception at the Santa Ana Star Casino operated by Petitioner, Tamaya Enterprises, Inc. (the Casino), where they were served alcoholic beverages and became intoxicated. Casino employees continued to serve Michael and Desiree alcohol despite their apparent intoxication. Michael and Desiree left the Casino and were killed when their vehicle left the roadway and rolled over. Suit was filed in state court against the Casino claiming that the Casino's delivery of alcohol to Michael and Desiree while they were obviously intoxicated was in violation of Section 184 of the Pueblo Liquor Ordinance and proximately caused their deaths. *See* 71 Fed.Reg. at 17,909 ("No person shall sell any alcoholic beverage to a person who the seller has reason to believe is intoxicated or who the seller has reason to believe intends to provide such alcoholic beverage to an intoxicated person."). The Casino sought to dismiss the suit, claiming the state court lacked jurisdiction over a dram shop

> action where the tavernkeeper's duty not to serve alcohol to an
> intoxicated person is imposed by tribal law, not state law, and where
> the tribal law contains a provision reserving exclusive jurisdiction
> to the tribal courts.

*Mendoza,* ¶ 2.

Not only does *Mendoza* require denial of Defendant's Motion as to Defendant Laguna

individually, it also defeats Defendant's argument that Plaintiff was not a "visitor" and not entitled

to relief against Defendant.  As the Court wrote,

> The second issue concerns the two types of *common law dram shop
> claims:  claims brought by third parties injured by the conduct of
> the intoxicated patron against a tavernkeeper (third-party claims)*
> and claims brought by the intoxicated patron against the
> tavernkeeper to recover for his own injuries (patron claims).  We
> consider the status of such common law claims following the
> codification of dram shop liability in the Liquor Control Act.  *See*
> NMSA 1978, §§ 60-3A-1 to -12 (1981, as amended through 2009);
> NMSA 1978, § 41-11-1 (1986).  Due to the explicit language of
> Section 41-11-1, limiting its application to taverns licensed under
> New Mexico law, we hold that Section 41-11-1 was not intended to
> preempt all common law claims.  Accordingly, because Section 41-
> 11-1 does not preempt all common law claims, we hold that the
> common law recognizes an action by a third party against a
> tavernkeeper for over service of alcohol.  Additionally, given the
> Legislature's adoption of patron claims subject to proof of gross
> negligence on the part of the liquor licensee, *see* § 41-11-1(B), we
> hold that modern public policy supports an analogous common law
> patron claim.

*Mendoza,* ¶ 4 (emphasis added).  In *Mendoza,* the Court emphasized that the issues before it were,

*inter alia,* "*whether the common law recognizes a third-party claim against a tavernkeeper for

over service of alcohol* following the enactment of Section 41-11-1; and … whether the common

law recognizes a patron claim against a tavernkeeper for over service of alcohol following the

enactment of Section 41-11-1," two distinct causes of action, one of which arises as a result

"injuries proximately caused" by the Casino regardless of whether a claimant was a visitor.

*Mendoza,* ¶ 9 (emphasis added).

To fully understand the Court's holding in *Mendoza*, it is necessary to look at the New Mexico Supreme Court case upon which *Mendoza* relies, *Lopez v. Maez,* 1982-NMSC-103, 98 N.M. 625. *See Mendoza,* ¶¶ 18 – 36.

In *Lopez*,

> [O]n August 6, 1978, Martinez, a liquor licensee, doing business as "Al's Drive-In Package Store," a/k/a "Al's Bar" and/or "Alfonsito's Bar", furnished intoxicating liquor to Maez while he was visibly intoxicated. After leaving Martinez' business, Maez, while still in an intoxicated state, negligently collided his vehicle with the vehicle driven by Lopez. As a result of the accident, Lopez' wife and two of their children died, Lopez' two and one-half year old daughter suffered extensive injuries and has remained in a coma, and Lopez and his other two minor children suffered injuries. Lopez alleges that Martinez had a duty to refrain from the sale of intoxicating beverages to persons who are visibly intoxicated and that Martinez breached that duty.

*Lopez,* ¶ 3 (emphasis added).

> In recent years, in a number of courts, the common law rule has been changed and the tavernkeeper has been subjected to liability in cases where the injury to a third party has resulted from the tavernkeeper's sale of intoxicating liquor to an inebriated customer. The reasoning in these cases follows established tort law. Recovery is allowed under recognized negligence principles. *When a tavernkeeper sells liquor to an intoxicated patron...he then becomes responsible for the foreseeable harm to others caused by the actions of that patron....*

> "Proximate cause" is that which in a natural and continuous sequence unbroken by any new independent cause produces the injury and without which injury would not have occurred. The sale or service of alcohol to an intoxicated automobile driver *may be* a proximate cause of injuries inflicted upon a third party by an inebriated driver....

> *A person who creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the act of a third person contributes to the final result. The law of negligence recognizes that two or more concurrent and directly cooperative proximate causes may contribute to an injury.*

*Lopez,* ¶¶ 10, 15 and 16 (citations and quotations omitted)(emphasis added).   *Mendoza* makes clear that Plaintiff has a third-party cause of action against Defendant Laguna for over service of alcohol pursuant to New Mexico common law regardless of whether Plaintiff was on the premises of the Casino.  "The Compact provides for state court jurisdiction for a discrete set of claims: those brought by persons who suffer 'bodily injury or property damage proximately caused by the conduct of" the tribal entity authorized to conduct gaming pursuant to the Compact."  *Mendoza,* ¶ 15.

Importantly, and admitted by Defendant, immunity related to the casual relationship and proximal cause of Plaintiffs' claims, as set forth in *Mendoza* and *Lopez,* has been waived pursuant to the Gaming Compact.  Motion, ¶¶ 12 and 13 ("the waiver is limited to … 'visitors,' and "Plaintiffs allege a claim *against* a visitor[.]")

*Sipp v. Buffalo Thunder, Inc.,* No. A-1-CA-36924, 2021 N.M. App. LEXIS 67, also supports denial of Defendant's Motion.

> Sipp [ ] was an employee of Dial Electric, a vendor that sold lights to Buffalo Thunder for the facility's parking lot.  Sipp delivered the lights and alleged that while he was moving in and out of a receiving area, a Buffalo Thunder employee abruptly lowered a garage door, causing Sipp to hit his head.  Sipp claimed that he was knocked unconscious and suffered severe injuries, including a cervical spine injury that required major surgery.

*Sipp,* ¶ 1.  In *Sipp,* the Court of Appeals acknowledged that "Buffalo Thunder is operated by the Pueblo of Pojoaque pursuant to a Tribal-State Class III Gaming Compact with the State of New Mexico, as required by…IGRA…. Section 8(A) of the Compact addresses subject matter jurisdiction[.]" *Sipp,* ¶ 3.

> Sipp and his wife, Hella Rader, filed a complaint for damages in state district court, naming Buffalo Thunder, Inc., Buffalo Thunder Development Authority, the Pueblo of Pojoaque, the Pueblo of Pojoaque Gaming Commission, and Pojoaque Gaming, Inc. as

> Defendants.  *Plaintiffs sought damages for Sipp's injuries and for Hella Rader's derivative tort claims.*  Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Rule 1-012(B)(1) NMRA, arguing that the Pueblo's sovereign immunity precluded the district court from hearing the suit and that the limited waiver of sovereign immunity in Section 8(A) of the Compact was inapplicable in the present case.

*Sipp,* ¶ 4.

In *Sipp,* defendant Pojoaque made similar arguments as Defendant in this case which were rejected by the Court.

> Defendants argue that Section 8(A) does not permit the district court to exercise jurisdiction in this case for two reasons.  First, Defendants assert that the termination clause at the end of Section 8(A) was triggered by two federal court decisions, *Pueblo of Santa Ana v. Nash,* 972 F.Supp.2d 1254 (D.N.M. 2013)(memorandum order), and *Navajo Nation v. Dalley,* 896 F.3d 1196 (10th Cir. 2018), such that Section 8(A) no longer provides for state court jurisdiction.  Second, Defendants claim that Sipp does not qualify as a visitor to a gaming facility under Section 8(A) because (1) he had a business purpose for visiting Buffalo Thunder and not a gaming purpose, and (2) he was not injured in a "gaming facility."  We conclude that the termination clause has not been triggered and, applying New Mexico precedent interpreting Section 8(A), hold that Plaintiffs' amended complaint sufficiently pleaded claims that fall within the Compact's waiver of sovereign immunity for visitors to a gaming facility.

*Sipp,* ¶ 7.

*Sipp* also stands for the proposition that the termination clause contained in Section 8(A) of the Gaming Compact has not been triggered.  Section 8(A) provides, "[f]or purposes of this Section, any such claim may be brought in state district court, including claims arising on tribal land, unless it is finally determined by a state or federal court that the IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court."  Motion, Exhibit B. Obviously, the issue has not been "finally determined," based on the conflict between federal and state courts in *Mendoza, Sipp, Nash* and *Dalley.*  However, as the Court indicated in *Sipp,*

21

> Defendants recognize that their interpretation of *Bay Mills* conflicts
> with decisions from our Supreme Court and ask us to "limit the prior
> rulings in *Doe* and *Mendoza.*" Even if we agreed that *Bay Mills* was
> on point, we could not depart from *Doe,* as "[a]ppeals in this Court
> are governed by the decisions of the New Mexico Supreme Court—
> including decisions involving federal law, and 'even when a United
> States Supreme Court decisions seems contra.'" *Dalton v.
> Santander Consumer USA, Inc.,* 2015-NMCA-030, ¶ 30, 345 P.3d
> 1086, *rev'd on other grounds,* 2016-NMSC-035, 385 P.3d 619; *see
> also State ex rel. Martinez v. City of Las Vegas,* 2004-NMSC-009,
> ¶ 20, 135 N.M. 375, 89 P.3d 47; *State v. Manzanares,* 1983-NMSC-
> 102, ¶ 3, 100 N.M. 621, 674 P.2d 511 (citing *Alexander v. Delgado,*
> 1973-NMSC-030, 84 N.M. 717, 507 P.2d 778); *State v. Darkis,*
> 2000-NMCA-085, ¶ 10, 129 N.M. 547, 10 P.3d 871.

*Sipp,* ¶ 15, n. 2.

**B.    Laguna Pueblo's failure to retain exclusive jurisdiction avoids the conflict of law relied upon the by Federal Court in *Mendoza.***

At issue in *Mendoza* was the conflict of law presented by the Santa Ana Liquor Ordinance

(codified in the Federal Register) retaining exclusive jurisdiction, and the contractual agreement

in the Gaming Compact that provides state jurisdiction where a casino visitor has been injured by

the conduct of a casino. *Mendoza,* ¶ 1. That conflict does not exist here.

Defendant Laguna does not have any corresponding Liquor Control Ordinance providing

for the exclusive jurisdiction of claims in Defendant Laguna's Courts. The Pueblo of Santa Ana

Liquor Ordinance, codified at 71 FED. REG. 17,903, Section 191: Jurisdiction, specifically

provides,

> *Any and all actions, whether civil or criminal*, pertaining to alleged
> violations of this title, or seeking any relief against the Pueblo or any
> officer or employee of the Pueblo with respect to any matter
> addressed by this Liquor Code, *shall be brought in the Tribal Court
> of the Pueblo, which court shall have exclusive jurisdiction thereof.*

*Id.* (emphasis added).

The Pueblo of Laguna, Reservation, NM; Ordinance Relating to the Use and Distribution of Liquor, codified at 52 FED. REG. 15,768 (1987), and 65 FED. REG. 35,121 (2000)(both substantially prior to the October 23, 2015 adoption of the Gaming Compact at issue in this matter, **Exhibit 2**), provides "[a]ny person who knowingly sells liquor to a person who the seller has reason to believe is under the influence of alcohol or any person under the influence of alcohol who shall purchase liquor shall be in violation of this ordinance." *Id.* at Section 8(D).

However, the Ordinance does not have any language retaining exclusive jurisdiction over such claims in Tribal Court. *See id.* Instead, the Ordinance requires "Conformity with State Law," and provides "Pueblo standards for liquor transactions shall meet or exceed those required by the State of New Mexico." 52 Fed. Reg. 15768, § 4.

In *Mendoza,* the Court wrote,

> Pursuant to the Compact, our state courts properly exercise jurisdiction over casino visitors' personal injury claims. The language of Section 8 reflects the parties' agreement on this matter and is not susceptible to differing interpretations—*the Pueblo of Santa Ana (the Pueblo) consented to suit in state court for personal injury claims proximately caused by the conduct of the Casino.* Thus, the exclusive tribal jurisdiction provision cannot change the agreement of the parties expressed in the clear language of Section 8. *Moreover, the fact that a previous version of the Pueblo Liquor Ordinance, which included an exclusive tribal jurisdiction provision, was in effect at the time the Pueblo entered into the Compact with the State suggests that the Pueblo knowingly relinquished jurisdiction. See generally Doe v. Santa Clara Pueblo,* 2007 NMSC 8, ¶ 18, 141 N.M. 269, 154 P.3d 644; *Gallegos v. Pueblo of Tesuque,* 2002 NMSC 12, ¶ 7, 132 N.M. 207, 46 P.3d 668. *Accordingly, by virtue of Section 8 of the Compact, the Pueblo unambiguously agreed to proceed in state court for claims involving injuries proximately caused by the conduct of the Casino.* Therefore, we hold that our state courts may exercise jurisdiction over this case.

*Mendoza,* ¶ 3 (emphasis added).   Because of the lack of a conflicting ordinance retaining

jurisdiction in the Laguna Pueblo, the agreement by the Pueblo as set forth in the Gaming Compact

is the only source of jurisdiction.   Therefore, jurisdiction is proper in New Mexico state court.

### C.    The Gaming Compact waives sovereign immunity as to Laguna Pueblo.

Not only is this Court required to follow New Mexico state court precedent, Defendant

Laguna is also required to be bound by New Mexico state court precedent pursuant to the Gaming

Compact.

> The Tribe, by entering into this Compact and agreeing to the
> provisions of this Section, waives its defense of sovereign immunity
> in connection with *any claims* for compensatory damages for bodily
> injury or property damage up to the amount of ten million dollars
> ($10,000,000) per occurrence, asserted as provided in this section….
> *The Tribe and the State agree that in any claim brought under the
> provisions of this Section, New Mexico law shall govern if the
> claimant pursues the claim in State Court[.]*

Motion, Exhibit 2, Gaming Compact, Section 8(D), emphasis added).

Defendant's citation to *Sanchez v. Santa Ana Golf Club, Inc.,* 2005-NMCA-003,

136 N.M. 682, also does not support Defendant because *Sanchez* does not address the status of the

parties, i.e. "Indian" or "non-Indian," and does not address the same issue as New Mexico

precedential case law, i.e., New Mexico's Gaming Compacts and the explicit waiver of sovereign

immunity.  *See Mendoza* and *Sipp, supra.*

*Haynes v. Lujan,* 2021 N.M. App.Unpub. LEXIS 232 (No. A-1-CA-38014), is also of no

assistance to Defendant because in *Haynes,* "Plaintiff acknowledges that *Defendants Paisano and

Lujan are tribal members*, a fact that weighs against the exercise of state court jurisdiction….

*Plaintiff and Defendant all had a contractual relationship or official relationship with the

Pueblo*[.]" and "*Plaintiff's work environment was situated within the exterior bounds of the

Pueblo*[.]"  *Haynes,* * 11 – 13 (emphasis added).  In this matter, none of the individually named

Defendants are tribal members and Plaintiff had no contractual relationship with Defendant Laguna.

*Tempest Recovery Servs. v. Belone,* 2003-NMSC-019, 134 N.M. 133 is also of no assistance to Defendant.   Citing *Foundation Reserve Ins. Co. v. Garcia,* 1987-NMSC-024, 105 N.M. 514, the Court wrote,

> Exclusive tribal jurisdiction exists where an action involves a proprietary interest in Indian land; or when an Indian sues another Indian on a claim for relief recognized only by tribal custom and law; or when an Indian is being sued by a non-Indian over an occurrence or transaction arising in Indian country.

*Belone,* ¶ 14 (quoting *Foundation Reserve,* ¶ 10).   In the quote taken from *Foundation Reserve,* the Supreme Court cited to *Chino v. Chino,* 1977-NMSC-020, 90 N.M. 203, for its findings related to "proprietary interest in Indian land."   In *Chino,* the Court addressed real property in an Indian Reservation.   "The appellee, Patricia G. Chino, is an enrolled member of the Santa Clara Indian Pueblo but owns a home located within the Mescalero Apache Indian Reservation."   *Chino,* ¶ 2. "The only issue with which we need concern ourselves on this appeal is whether state courts have jurisdiction over forcible entry and wrongful detainer actions involving fee patent lands lying within an Indian reservation."   *Chino,* ¶ 4.   The Court wrote,

> An action for forcible entry and unlawful detainer deals directly with the question of occupancy and ownership of land.   When the land lies within a reservation, enforcement of the owner's rights to such property by the state court would infringe upon the governmental powers of the tribe, whether those owners are Indians or non-Indians.

*Chino,* ¶ 13.

Obviously, the factors outlined in *Belone* and *Foundation Reserve* do not exist in this case. The action at bar does not involve a "proprietary interest in Indian land," and an "Indian [is not] su[ing] another Indian on a claim for relief recognized only by tribal custom and law."   The claims

at issue in this matter are New Mexico common law tort claims.  In addition, neither *Belone* nor *Foundation Reserve* involved the issue of waiver of sovereign immunity in relation to New Mexico Gaming Compacts.

In *R & R Deli, Inc. v. Santa Ana Star Casino,* 2006-NMCA-020, 139 N.M. 85, the issue was "waivers of tribal sovereign immunity in a commercial lease and in a pueblo's gaming compact with the State [in]… a suit based in contract and tort brought by a lessee of property located on tribal lands." *R & R Deli, Inc.,* ¶ 1.  The court found that there was no waiver of immunity under a commercial lease or Gaming Compact because "it makes sense that the State and the Pueblo would have been concerned with the safety of ordinary customers, rather than the financial well-being of entities who enter into business transactions with the Pueblo and can be assumed to be capable of protecting their own interests." *R & R Deli, Inc.,* ¶ 25.  As interpreted by the Court of Appeals in *Guzman v. Laguna Dev. Corp.,* ¶18, 147 N.M. 244, *R & R Deli, Inc.,* applies to "[b]usiness entities 'who enter into business transactions with the Pueblo[.]" It is undisputed that Plaintiffs are not business entities who entered into business transactions with Defendants.

In *Guzman,* the Court of Appeals specifically found a question of fact as to waiver of Defendant Laguna's sovereign immunity in relation to a wrongful death claim resulting from consumption of liquor at Route 66 Casino by an employee.

> In early 2004 Ayze, Anthony, and one other employee of the gift shop began occasionally consuming alcoholic beverages at work. On the night of Anthony's death the three shared and finished a quart of rum purchased by Ayze.  Anthony's shift ended at 12:30 a.m. but after clocking out he returned to talk to Ayze about possibly taking on a lead position at the gift shop.  Anthony left the casino at approximate 1:00 a.m. and proceeded east on Interstate 40 to drive into Albuquerque where he lived.  At approximately mile marker 149, Anthony's vehicle left the roadway, ultimately overturning and ejecting him.  Anthony died at the scene as a result of his injuries.

26

*Guzman,* ¶ 3.  The Court wrote, that Defendant's inconsistent position that Anthony's "death was not within the course and scope of his employment," created a question of fact as to whether Anthony was a visitor of the Casino to which liability under the Gaming Compact could attach.

Defendant also cites to the case law of other jurisdictions, but those cases are also of no support.  Defendant cites to *Diepenbrock v. Merkel,* 97 P.3d 1063 (Ct.App. Kan. 2004), and states that the court found "no state jurisdiction over reservation-based claims against non-Indian employees of tribe acting within the scope of their employment."  Motion, p. 9.  While *Diepenbrock* is not binding upon this Court, *Diepenbrock* is of no assistance to Defendant.  As the court noted in *Diepenbrock,* and unlike in New Mexico,

> [t]he Potawatomi compact gives the tribe civil jurisdiction over Indians and non-Indians for "all transactions or activities which relate to Class III gaming on the Reservation."  Tribal State Gaming Compact, Section 14(a)(1995).  Moreover, *the tribe is treated as if it were the State for "tort claims arising from alleged injuries to patrons of the Tribe's gaming facilities."* Compact, Section 3(D).

*Diepenbrock,* 97 P.3d at 1068 (emphasis added).

*Kizis v. Morse Diesel Int'l, Inc.,* 794 A.2d 498 (Conn. 2002), which predates *Lewis v. Clarke, id.,* also does not support Defendant.

> The plaintiff, in opposition to the motion to dismiss, argued that tribal immunity could be asserted only by the tribe itself and, therefore, was unavailable to the defendants in their capacity as employees.  The trial court agreed with plaintiff and denied the motion to dismiss, concluding that tribal immunity arises out of the tribe's status as a dependent domestic nation, and thus, belongs to the tribe itself and not to employees who are not tribe members and who are sued as individuals.  Furthermore, the trial court held that the mere employment relationship of the defendants with the tribe or its entities did not grant them the right to assert the tribe's sovereign immunity.
>
> We reverse the trial court's decision and order that the defendants' motion to dismiss be granted, albeit on different grounds.  We conclude that the trial court did not have subject matter jurisdiction

over the present action because the proper forum for relief is the
Mohegan Gaming Disputes Court.

*Kizis,* 794 A.2d at 501 (emphasis added). Similar to *Diepenbrock,* the court's ruling in *Kizis* was

wholly dependent on the fact that the Connecticut Gaming Compact with the Mohegan Tribe

reserved exclusion jurisdiction over tort claims occurring on the reservation to the Mohegan Tribe.

> *Exclusive jurisdiction for the Tribe over disputes* arising out of or in
> connection with the Gaming, the actions of the Tribal Gaming
> Authority, or contracts entered into by The Mohegan Tribe or the
> Tribal Gaming Authority in connection with Gaming, *including
> without limitation,* disputes arising between any person or entity and
> the Tribal Gaming Authority, or any person or entity which may be
> in privity with such persons or entities as to Gaming matters *shall
> be vested in the Gaming Disputes Court*[.]

*Kizis,* 794 A.2d at 504 (emphasis added). The Gaming Compact between the State of New Mexico

and Defendant Laguna provides, "any…claim may be brought in state district court, including

claims arising on tribal land[.]" Motion, Exhibit B, Gaming Compact, Section 8(A).

## CONCLUSION

This Court should not grant Defendant's Motion, as it fails based on clear precedent which

allows claims against non-Indian tortfeasors by non-Indian claimants and by New Mexico law

which waives sovereign immunity as to the claims brought by Plaintiffs. Defendant attempts to

escape any responsibility for its role in the death of Rolanda Lahi. This is after refusing to

cooperate in assisting police with their investigation of the subject crash and what appears to be

non-compliance with the Gaming Compact. Furthermore, Defendant continues to withhold

information from Plaintiff that may be relevant to Plaintiff's response to this Motion. Ultimately,

none of the case law cited by Defendant supports Defendant's position or dismissal of this matter.

Defendant has failed to meet its burden and its Motion should be denied.

WHEREFORE, Plaintiffs pray that the Court strike Defendant Route 66's Motion and grant such further relief as the Court deems just and proper.

DELARA | SUPIK | ODEGARD P.C.

By ____/s/ Christopher J. DeLara_____
     Christopher J. DeLara
     Christopher J. Supik
     David C. Odegard
     P.O. Box 91596
     Albuquerque, NM 87199-1596
     (505) 999-1500
     chris@delaralaw.com
     supik@delaralaw.com
     odegard@delaralaw.com
     *Attorneys for Plaintiffs*

I HEREBY CERTIFY that on the 5th day of April, 2022, I filed the foregoing Plaintiffs' Response in Opposition to Defendant Laguna Development Corporation's Amended Motion to Dismiss electronically through the State of New Mexico's Odyssey File & Serve system, requesting that the following counsel be served through Odyssey:

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
Durham, Pittard & Spalding, L.L.P.
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
(505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com
*Attorneys for Plaintiffs*

E. Todd Tracy
The Tracy Firm
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000
ttracy@vehiclesafetyfirm.com
*Attorneys for Plaintiffs*

David W. Peterson
Jennings Haug Keleher McLeod LLP
P.O. Box AA
Albuquerque, NM 87103
(505) 346-4646
dwp@jhkmlaw.com
*Attorneys for the Route 66 Defendants*

Philip Thompson
Pegue & Thompson
202 East Marcy Street
Santa Fe, NM 87501
(505) 395-9558
pht@peguethompsonlaw.com
*Attorney for New Mexico Department of Transportation*

*/s/ Christopher J. DeLara*

E.      "Compliance Report" is the report submitted annually to the State Gaming Representative by the Tribal Gaming Agency according to the requirements set forth in the Appendix attached to this Compact.

F.      "Effective Date" has the meaning set forth in Section 9(A) of this Compact.

G.      "Free Play" means play on a Class III Gaming Machine initiated by points or credits provided to patrons without monetary consideration, and which have no cash redemption value.

H.      "Gaming Employee" means a person connected directly with the conduct of Class III Gaming, handling the proceeds thereof, or handling any Gaming Machine; but "Gaming Employee" does not include:

        1.      Bartenders, cocktail servers or other persons engaged solely in preparing or serving food or beverages;

        2.      Secretarial or janitorial personnel;

        3.      Stage, sound and light technicians; or

        4.      Other nongaming personnel.

I.      "Gaming Enterprise" means the tribal entity created and designated by the Tribe as having authority to conduct Class III Gaming pursuant to this Compact.

J.      "Gaming Facility" means each separate physical building or structure in which Class III Gaming is conducted on the Tribe's Indian Lands.

K.      "Gaming Machine" means a mechanical, electromechanical or electronic contrivance or machine that, upon insertion of a coin, token or similar object, or upon payment of any consideration in any manner, is available to play or operate a game of chance in which the outcome depends to a material degree on an element of chance, notwithstanding that some skill may be a factor, whether the payoff is made automatically from the Gaming Machine or in any other manner; but Gaming Machine does not include a Card Minder or a Table Game or any devices utilized in Table Games.  Additional clarification of the definitions of a Gaming Machine and a Table Game is set forth in the attached Appendix.

L.      "Indian Lands" means:

        1.      all lands within the exterior boundaries of the Tribe's reservation and its confirmed grants from prior sovereigns; or

        2.      any other lands title to which is either held in trust by the United States for the exclusive benefit of the Tribe or a member thereof or is held by the Tribe or a member thereof subject to restrictions against alienation imposed by the United States, and over which the Tribe exercises jurisdiction and governmental authority, but not including any land within a

**EXHIBIT 1**



New Mexico

**STATE-TRIBAL GAMING COMPACTS**
June 2015
**Effective Dates (Date Published in the Federal Register)**


| June 22, 2015 | Jicarilla Apache Nation, Mescalero Apache Tribe, Navajo Nation, Pueblo of Acoma and Pueblo of Jemez |

June 22, 2015    Jicarilla Apache Nation, Mescalero Apache Tribe, Navajo
               Nation, Pueblo of Acoma and Pueblo of Jemez

July 28, 2015    Pueblo of Isleta

July 29, 2015    Pueblo of Taos

August 13, 2015  Ohkay Owingeh (Pueblo of San Juan)

August 14, 2015  Pueblo of Zuni

October 23, 2015  Pueblo of Laguna, Pueblo of Santa Clara and Pueblo of Tesuque

December 29, 2015  Pueblo of Nambe

April 4, 2016    Pueblo of San Felipe and Pueblo of Sandia

December 30, 2016  Pueblo of Santa Ana

October 26, 2017  Pueblo of Pojoaque

**EXHIBIT 2**

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/7/2022 4:55 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRCT COURT

BARRY GREEN, as Personal Representative
Of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

        Plaintiffs,

v.                                          D-101-cv-2022-00034

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate OF LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC.

        Defendants.

**DEFENDANT FCA US LLC'S ANSWER
TO PLAINTIFFS' FIRST AMENDED COMPLAINT**

    Defendant FCA US LLC ("FCA US"), through counsel, Modrall, Sperling, Roehl, Harris

& Sisk, P.A. (Tomas J. Garcia), for its answer to the First Amended Complaint for Wrongful

Death, Negligence, Negligence Per Se, Dram Shop, Intentional Spoliation of Evidence and Loss

of Consortium ("First Amended Complaint"), admits, denies, and alleges as follows:

    1.      FCA US denies every allegation in the First Amended Complaint except those

allegations that are hereinafter admitted, qualified, or otherwise answered.

**PARTIES, JURISDICTION AND VENUE**

    2.      Responding to Paragraph 1 of the First Amended Complaint, FCA US admits that

Plaintiffs filed this wrongful death action seeking damages in relation to an automobile crash. FCA

US is otherwise without sufficient knowledge or information to form a belief as to the truth or

falsity of the remaining allegations contained in Paragraph 1 of the First Amended Complaint and, therefore, denies the same.

3.    Responding to Paragraphs 2, 3, 4 and 5 of the First Amended Complaint, FCA US is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in those Paragraphs and, therefore, denies the same.

4.    Paragraphs 6, 7, 8, 9, 10 and 11 of the First Amended Complaint are directed to defendants other than FCA US and, therefore, no answer from FCA US is required.

5.    Responding to Paragraph 12 of the First Amended Complaint, FCA US asserts that it is a limited liability company formed under the laws of Delaware, with its principal place of business located in Michigan. FCA US further admits that is authorized to do business in the State of New Mexico, maintains a registered agent in the State of New Mexico, and can be served through its registered agent in the State.

6.    Responding to Paragraphs 13 and 14 of the First Amended Complaint, FCA US states only that it does not object to jurisdiction or venue at this time. FCA US denies that it consented to the jurisdiction of the New Mexico Courts simply by registering to do business in New Mexico or that contacts unrelated to the subject crash can serve as a proper basis for jurisdiction under *Bristol Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction . . . there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.") (internal citation omitted); *see also Chavez v. Bridgestone Americas Tire Operations, LLC*, 2022-NMSC-006, ¶ 34, 503 P.3d 332 (holding that a foreign corporation does not consent to general personal jurisdiction in New Mexico by registering and appointing a registered agent within the state). Portions of

Paragraphs 13 and 14 of the Complaint are directed to defendants other than FCA US and, therefore, no answer from FCA US is required as to those portions. To the extent Paragraphs 13 and 14 contain additional allegations directed to, and requiring a response from, FCA US, it denies any further legal or factual assertions or allegations contained in those Paragraphs.

7.     Paragraphs 15 and 16 of the First Amended Complaint call for legal conclusions and set forth legal standards for which no response is required. To the extent a response is required, FCA US is without sufficient knowledge or information regarding the legal conclusions and standards and the bases for those conclusions contained in those Paragraphs and, therefore, denies the same.

## FACTUAL BACKGROUND

8.     FCA US responds to those allegations incorporated by reference in Paragraph 17 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

9.     FCA US is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraphs 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34 of the First Amended Complaint and, therefore, denies the same.

10.    FCA US denies the allegations contained in Paragraph 35 of the First Amended Complaint to the extent the allegations are directed at FCA US.  To the extent the allegations contained in Paragraph 35 of the First Amended Complaint are directed to defendants other than FCA US, no answer from FCA US is required as to those allegations.

11.    In response to Paragraphs 36, 37 38 and 39 of the First Amended Complaint, FCA US denies that it designed, manufactured, or assembled the 2007 Dodge Nitro (VIN 1D8GT58K07W587396) that is the subject of this litigation (the "subject vehicle"). FCA US affirmatively asserts that DaimlerChrysler Corporation was responsible for designing, testing,

manufacturing, marketing, and supplying many of the component parts of the subject vehicle, but some of the components assembled into the subject vehicle may have been manufactured, tested, and supplied by other manufacturers. FCA US denies that DaimlerChrysler Corporation is a predecessor corporation or entity of FCA US. Pursuant to a Purchase Agreement (a/k/a Master Transaction Agreement) dated on or about April 30, 2009, and all approved amendments thereto, Chrysler Group LLC, f/k/a New CarCo Acquisition LLC, agreed to assume liability for certain Product Liability Claims arising out of products sold by DaimlerChrysler Corporation. Effective on or about December 15, 2014, Chrysler Group LLC changed its name to FCA US LLC. FCA US denies any remaining allegations contained in Paragraphs 36 through 39 of the First Amended Complaint.

12.     FCA US denies the allegations contained in Paragraph 40 of the First Amended Complaint.

13.     Responding to Paragraphs 41, 42, 43, 44, 45 and 46 of the First Amended Complaint, FCA US is unable to simply admit or deny the assertions in these paragraphs because they are argumentative, and forming a proper response in the context of this Answer would be lengthy, unduly arduous, and inconsistent with the required form of pleadings under the New Mexico Rules of Civil Procedure. However, to the extent Paragraphs 41 through 46 allege that FCA US was negligent in any way in the design, manufacture or testing of the subject vehicle, FCA US specifically denies those allegations.

14.     FCA US is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraphs 47, 48, 49, 50, 51, 52 and 53 of the First Amended Complaint and, therefore, denies the same.

## COUNT I: WRONGFUL DEATH

15.     FCA US responds to those allegations incorporated by reference in Paragraph 54 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

16.     FCA US denies the allegations contained in Paragraphs 55, 56 and 57 of the First Amended Complaint to the extent the allegations in these paragraphs are directed at FCA US.  To the extent the allegations contained in Paragraphs 55, 56 and 57 of the First Amended Complaint are directed to defendants other than FCA US, no answer from FCA US is required as to those allegations. In addition, FCA US specifically asserts that exemplary and punitive damages are not permitted to be alleged against FCA US for accidents occurring on or after June 10, 2009, that involve Chrysler, Dodge, and Jeep vehicles manufactured prior to June 9, 2009. The exclusion of exemplary and punitive damages claims was approved by the U.S. Bankruptcy Court of the Southern District of New York on November 19, 2009, in connection with the Fourth Amendment to the Master Transaction Agreement among Fiat S.p.A., Chrysler Group LLC, and Old Carco, LLC (formerly Chrysler LLC).

## COUNT II: NEGLIGENCE

17.     FCA US responds to those allegations incorporated by reference in Paragraph 58 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

18.     Paragraphs 59, 60, 61, 62 and 63 of the First Amended Complaint are directed to defendants other than FCA US and, therefore, no answer from FCA US is required.

## COUNT III. NEGLIGENCE *PER SE*

19.    FCA US responds to those allegations incorporated by reference in Paragraph 64 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

20.    Paragraphs 65, 66, 67, 68, 69, 70 and 71 of the First Amended Complaint are directed to defendants other than FCA US and, therefore, no answer from FCA US is required.

## COUNT IV. DRAMSHOP, NEGLIGENCE AND NEGLIGENCE *PER SE*

21.    FCA US responds to those allegations incorporated by reference in Paragraph 72 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

22.    Paragraphs 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87 and 88 of the First Amended Complaint are directed to defendants other than FCA US and, therefore, no answer from FCA US is required.

## COUNT V: NEGLIGENCE

23.    FCA US responds to those allegations incorporated by reference in Paragraph 89 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

24.    Paragraphs 90, 91, 92 and 93 of the First Amended Complaint are directed to defendants other than FCA US and, therefore, no answer from FCA US is required.

## COUNT VI: INTENTIONAL SPOLIATION OF EVIDENCE

25.    FCA US responds to those allegations incorporated by reference in Paragraph 94 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

26.     Paragraphs 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109 and 110 of the First Amended Complaint are directed to defendants other than FCA US and, therefore, no answer from FCA US is required.

## COUNT VII: STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN, MANUFACTURE FAILURE TO WARN

27.     FCA US responds to those allegations incorporated by reference in Paragraph 111 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

28.     FCA US denies the allegations contained in Paragraph 112 of the First Amended Complaint. FCA US denies that it designed, manufactured, or assembled the subject vehicle. FCA US affirmatively asserts that DaimlerChrysler Corporation was responsible for designing, testing, manufacturing, marketing, and supplying many of the component parts of the subject vehicle, but some of the components assembled into the subject vehicle may have been manufactured, tested, and supplied by other manufacturers. FCA US denies that DaimlerChrysler Corporation is a predecessor corporation or entity of FCA US. Pursuant to a Purchase Agreement (a/k/a Master Transaction Agreement) dated on or about April 30, 2009, and all approved amendments thereto, Chrysler Group LLC, f/k/a New CarCo Acquisition LLC, agreed to assume liability for certain Product Liability Claims arising out of products sold by DaimlerChrysler Corporation. Effective on or about December 15, 2014, Chrysler Group LLC changed its name to FCA US LLC.

29.     FCA US denies the allegations contained in Paragraphs 113, 114, 115, 116, 117, 118, 119, 120, 121, including all subparts, and 122 and of the First Amended Complaint.

30.     FCA US is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraphs 123, 124 and 125 of the First Amended Complaint and, additionally to the extent they call for a legal conclusion and set forth a legal standard for which no response is required, and, therefore, denies the same.

31.    FCA US denies the allegations contained in Paragraph 126 of the First Amended Complaint.

## COUNT VIII: NEGLIGENCE

32.    FCA US responds to those allegations incorporated by reference in Paragraph 127 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

33.    FCA US denies the allegations contained in Paragraph 128 of the First Amended Complaint.

34.    FCA US asserts that Paragraphs 129, 130, 131, 132, 133, 134, 135 and 136 of the First Amended Complaint are argumentative and improper, call for legal conclusions, and set forth legal standards for which no response is required. To the extent a response is required, FCA US admits that its goal is to design, manufacture and sell safe vehicles. FCA US denies any remaining allegations or legal assertions contained in these Paragraphs.

35.    FCA US asserts that Paragraphs 137, 138, 139 and 140 of the First Amended Complaint are irrelevant because they do not relate to any alleged conduct by FCA US or to any relevant claim in this matter, particularly those paragraphs that reference other vehicle manufacturers and/or unnamed engineering associations, and, therefore, denies the same. However, to the extent that Paragraphs 137 through 140 assert or allege that the subject vehicle, or any of FCA US vehicles, are defective or unreasonably dangerous or that FCA US was negligent in any way in the design, manufacture, testing, assembling, and marketing of its vehicles, including the subject vehicle, FCA US specifically denies those allegations.

36.    FCA US denies the allegations contained in Paragraphs 141, 142, 143, 144 and 145 of the First Amended Complaint.

37.     Responding to Paragraph 146 of the First Amended Complaint, FCA US is unable to simply admit or deny the assertions in this paragraph because it is argumentative and forming a proper response in the context of this Answer would be lengthy and arduous. However, to the extent Paragraph 146 alleges that FCA US was negligent in any way in the design, manufacture or testing of the subject vehicle, FCA US specifically denies those allegations.

38.     Responding to paragraph 147 of the First Amended Complaint, FCA US admits that it is in possession and control of many technical materials and documents relating to the design, manufacture, and testing of the subject vehicle. FCA US denies, however, that it is in "exclusive" possession of these documents or that it is in possession of "all" of these documents. Some documents may be in the possession, custody and control of component suppliers.

39.     Responding to paragraphs 148 and 149 of the First Amended Complaint, FCA US is unable to simply admit or deny the assertions in this paragraph because they are not proper factual allegations for which FCA US can form a response. To the extent these paragraphs are an attempt to lay groundwork for a fishing expedition and/or assert some additional discovery burden on FCA US that is contrary to New Mexico law and the New Mexico Rules of Civil Procedure, FCA US denies the allegations in these paragraphs.

40.     FCA US denies the allegations contained in Paragraphs 150, including all subparts, 151 and 152 of the First Amended Complaint.

41.     FCA US is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraphs 152 and 153 of the First Amended Complaint and, additionally to the extent they call for a legal conclusion and set forth a legal standard for which no response is required, and, therefore, denies the same.

42.     FCA US denies the allegations contained in Paragraph 154 of the First Amended Complaint.

## COUNT IX: MISREPRESENTATION

43.    FCA US responds to those allegations incorporated by reference in Paragraph 155 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

44.    FCA US denies the allegations contained in Paragraphs 156, 157, 158, 159, 160 161 and 162 of the First Amended Complaint. Further answering, FCA US's goal is to design, manufacture and sell safe vehicles and it describes them as safe (and objects to the term "touted"). In addition, the allegations in Paragraphs 156 through 162 are wholly lacking in factual basis, inflammatory and irresponsible.

## COUNT X: LOSS OF CONSORTIUM

45.    FCA US responds to those allegations incorporated by reference in Paragraph 163 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

46.    FCA US is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 164 of the First Amended Complaint.

47.    FCA US denies the allegations contained in Paragraphs 165 and 166 of the First Amended Complaint.

## COUNT XI: PUNITIVE DAMAGES

48.    FCA US responds to those allegations incorporated by reference in Paragraph 167 of the First Amended Complaint as they were answered in the preceding paragraphs of this Answer.

49.    FCA US denies the allegations contained in Paragraphs 168 and 169 of the First Amended Complaint. In addition, Plaintiffs and FCA US filed a joint motion agreeing to dismiss plaintiffs' punitive damages claims against FCA US LLC from the First Amended Complaint. In

the event that the Court does not enter an order approving the stipulation or Plaintiffs later attempt to claim exemplary or punitive damages against FCA US, FCA US asserts that exemplary and punitive damages are not permitted to be alleged against FCA US for accidents occurring on or after June 10, 2009, that involve Chrysler, Dodge, and Jeep vehicles manufactured prior to June 9, 2009. The exclusion of exemplary and punitive damages claims was approved by the U.S. Bankruptcy Court of the Southern District of New York on November 19, 2009, in connection with the Fourth Amendment to the Master Transaction Agreement among Fiat S.p.A., Chrysler Group LLC, and Old Carco, LLC (formerly Chrysler LLC).

FCA US denies plaintiff is entitled to the relief and damages set forth following Paragraph 169 of the First Complaint.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The First Amended Complaint, in whole or in part, fails to state a claim upon which relief may be granted against FCA US.

### SECOND DEFENSE

The injuries and damages alleged in the First Amended Complaint, if any, were caused or contributed to by the negligence of plaintiff, co-defendants, non-parties, plaintiff's agents or employees, or the joint and concurrent negligence of plaintiff, and/or others over whom FCA US has no control, or right of control, and thus comparative negligence bars any recovery by plaintiff.

### THIRD DEFENSE

The plans and designs for the subject vehicle, and its component parts, and the method and technique of manufacturing, inspecting, and labeling the vehicle and its component parts, conformed with the state-of-the-art at the time the Subject Vehicle was sold.

### FOURTH DEFENSE

The proximate cause giving rise to this action may have been an alteration or modification of the subject vehicle and/or its component parts that was not reasonably foreseeable and made by a person or entity other than FCA US, subsequent to the time the subject vehicle was sold.

### FIFTH DEFENSE

The proximate cause of the incident giving rise to the action was the use of the vehicle for a purpose, in a manner, or in an activity other than which was reasonably foreseeable or the subject vehicle was used in a manner that was contrary to any express and adequate warnings or instructions appearing on, attached to, or delivered with the vehicle about which plaintiff, or plaintiff's agents, knew, or in the exercise of reasonable diligence, should have known.

### SIXTH DEFENSE

At the time and place referred to in the First Amended Complaint, the subject vehicle was subjected to abnormal use and/or misuse by plaintiff and the crash, the alleged injuries, and damages could have been avoided if the subject vehicle was not subjected to such abnormal use and/or misuse. Therefore, any damages and injuries sustained by plaintiff were proximately caused by such abnormal use and/or misuse of the subject vehicle.

### SEVENTH DEFENSE

The acts or omissions, if any, of FCA US were not substantial factors in bringing about the injuries of the plaintiff, and therefore, they were not a contributing cause. Rather, any acts or omissions by FCA US were superseded by the acts or omissions of others, which are independent, intervening, and proximate causes of all such injuries or damages allegedly suffered.

### EIGHTH DEFENSE

Some or all of plaintiff's claims are preempted by the Federal Motor Vehicle Safety Standards.

## NINTH DEFENSE

Plaintiff's alleged damages were the proximate result of an independent intervening cause, thereby barring recovery against FCA US.

## TENTH DEFENSE

No privity of contract existed between plaintiff and FCA US.

## ELEVENTH DEFENSE

Any express warranty made at the time of sale of the vehicle was not applicable to the condition alleged to have caused harm to plaintiff, or in the alternative, any such warranty or cause of action based upon such warranty is waived.

## TWELFTH DEFENSE

No implied warranty of fitness for a particular purpose, or of merchantability, existed with respect to any transaction alleged in this case to have been entered into by FCA US.

## THIRTEENTH DEFENSE

All implied warranties of merchantability or fitness were excluded by FCA US in any transaction alleged herein to have been entered into. *See* § 55-2-316, N.M.S.A. 1978 (exclusion or modification of warranties).

## FOURTEENTH DEFENSE

Any cause of action that plaintiff might have against FCA US alleging a breach of express or implied warranty is barred by failure to provide FCA US with notice of the alleged breach within a reasonable time after it occurred.

## FIFTEENTH DEFENSE

Any condition of the vehicle in question alleged to have constituted a breach of warranty by FCA US was not a proximate cause of plaintiff's alleged injuries.

## SIXTEENTH DEFENSE

Plaintiff did not rely upon any warranties alleged to have been given by FCA US.

## SEVENTEENTH DEFENSE

Any statements made by FCA US were substantially true or were reasonably believed by FCA US to be true.

## EIGHTEENTH DEFENSE

Plaintiff did not rely upon any statements or representations alleged to have been made by FCA US.

## NINETEENTH DEFENSE

Plaintiff's misrepresentation claim against FCA US necessarily involves averments of fraud or mistake, and Plaintiff's First Amended Complaint fails to state the alleged circumstances that constitute fraud or mistake with particularity as required by the New Mexico Rules of Civil Procedure.

## TWENTIETH DEFENSE

Plaintiffs' claim for punitive damages against FCA US LLC cannot be maintained because any claim for punitive damages against FCA US is barred by the Bankruptcy Court's June 1, 2009 Sale Order entered by the Bankruptcy Court in *In re Old Carco LLC*, Case No. 09-18 50002 (Bankr. S.D.N.Y.) and the Master Transaction Agreement. Section 2.09(j) of the Master Transaction Agreement expressly excludes "all Liabilities in . . . gross negligence or recklessness for acts or omissions prior to or ongoing at the Closing." (Master Transaction Agreement, section 2.09(j)). Subsequently, Amendment No. 4 to the Master Agreement was entered by the Bankruptcy Court which amended the Master Transaction Agreement, after FCA US LLC agreed to voluntarily accept *certain* product liability claims involving products manufactured by Old Carco LLC before the Sale Date that were involved in accidents that occurred after the Closing Date of June 10, 2009.

However, Section 2.08(h) of Amendment No. 4 is expressly limited to product liability claims involving lawsuits which do not include any claims for punitive or exemplary damages.

## TWENTY-FIRST DEFENSE

FCA US retains the right to assert any additional defense which they may learn through discovery.

## TWENTY-SECOND DEFENSE

After appropriate discovery, the following affirmative defenses may also be applicable: failure to mitigate damages, failure to join necessary and proper parties, spoliation, violation of statutes, Statute of Limitation, waiver, release, and failure of consideration. The extent to which plaintiffs' claims may be barred by one of the foregoing affirmative defenses cannot be determined until FCA US has had an opportunity to complete discovery.

WHEREFORE, FCA US LLC requests that Plaintiffs take nothing by the First Amended Complaint and that the Complaint be dismissed with prejudice on the merits; that FCA US LLC have and recover its costs, disbursements, and attorneys' fees incurred in this matter; and that FCA US LLC receives all other relief which this Court deems to be just and reasonable.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
    & SISK, P.A.

By: /s/ Tomas J. Garcia
    Tomas J. Garcia
    500 Fourth Street NW, Suite 1000
    Albuquerque, New Mexico 87102
    Telephone: 505.848.1800
    tomas.garcia@modrall.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing pleading was submitted for e-filing and service through "Odyssey File & Serve" and e-mailed to the following counsel of record this 7th day of April, 2022:

| | |
|---|---|
| Christopher J. DeLara<br>Christopher J. Supik<br>David C. Odegard<br>Delara Law<br>P.O. Box 91596<br>Albuquerque, NM 87199-1596<br>Chris@delaralaw.com<br>supik@delaralaw.com<br>odegard@delaralaw.com<br><br>Justin R. Kaufman<br>Rosalind B. Bienvenu<br>Caren I. Friedman<br>Durahm, Pittard & Spalding, LLC<br>505 Cerrillos Road, Suite A209<br>Santa Fe, NM 87501<br>jkaufman@dpslawgroup.com<br>rbienvenu@dpslawgroup.com<br>cfriedman@dpslawgroup.com<br><br>E. Todd Tracy<br>The Tracy Firm<br>4701 Bengal Street<br>Dallas, TX 75235<br>ttracy@vehiclesafetyfirm.com<br><br>*Attorneys for Plaintiffs* | David W. Peterson<br>Jennings Haug Keleher McLeod<br>201 Third Street NW, Suite 1200<br>Albuquerque, NM 87102<br>dwp@jhkmlaw.com<br>*Attorney for Laguna Development*<br>*Corporation d/b/a Route 66 Casino Hotel* |
| Philip Thompson<br>Pegue & Thompson<br>202 East Marcy Street<br>Santa Fe, NM 87501<br>pht@peguethompsonlaw.com<br>*Attorney for NM Department of*<br>*Transportation* | |

MODRALL SPERLING ROEHL HARRIS
   & SISK, P.A.

By: */s/ Tomas J. Garcia*
   Tomas J. Garcia

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/7/2022 4:59 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

BARRY GREEN, as Personal Representative                    D-101-cv-2022-00034
Of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

        Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate OF LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC.

        Defendants.

## JOINT MOTION TO DISMISS PLAINTIFFS' PUNITIVE DAMAGE CLAIMS AGAINST DEFENDANT FCA US LLC

COME NOW Plaintiffs and Defendant FCA US LLC ("FCA") by and through their undersigned counsel, and hereby file this Joint Motion to Dismiss Plaintiffs' Punitive Damage Claims Against Defendant FCA. In support, the parties state as follows:

1.    Plaintiffs filed their First Amended Complaint against Defendant FCA on March 2, 2022. The First Amended Complaint alleged claims of negligence, strict liability, breach of implied warranty, and punitive damages against Defendant FCA.

2.    Plaintiffs and FCA have conferred and have agreed to dismiss Plaintiffs' claims of punitive damages (Count XI) against Defendant FCA only with prejudice.

WHEREFORE, Plaintiffs and FCA US LLC respectfully request that the Court enter an order dismissing, with prejudice, Plaintiffs' claims of punitive damages against Defendant FCA US LLC only.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
    & SISK, P.A.

By: */s/ Tomas J. Garcia*
    Tomas J. Garcia
    500 Fourth Street NW, Suite 1000
    Albuquerque, New Mexico 87102
    Telephone: 505.848.1800
    tomas.garcia@modrall.com
    *Attorney for Defendant FCA US LLC*

- and -

By: */s/ approved Justin R. Kaufman on 4/7/2022*
DURHAM, PITTARD & SPALDING, LLP
    Justin R. Kaufman
    Rosalinda B. Bienvenu
    Caren I. Friedman
    505 Cerrillos Road, Suite A209
    Santa Fe, NM 87501

DELARA | SUPIK | ODEGARD PC
    Christopher J. DeLara
    Christopher J. Supik
    David C. Odegard
    PO Box 91596
    Albuquerque, NM 87199-1596

THE TRACY LAW FIRM
    E. Todd Tracy
    4701 Bengal Street
    Dallas, TX 75235

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing pleading was submitted for e-filing and service through "Odyssey File & Serve" and e-mailed to the following counsel of record this 7th day of April, 2022:

| | |
|---|---|
| Christopher J. DeLara<br>Christopher J. Supik<br>David C. Odegard<br>Delara Law<br>P.O. Box 91596<br>Albuquerque, NM 87199-1596<br>Chris@delaralaw.com<br>supik@delaralaw.com<br>odegard@delaralaw.com<br><br>Justin R. Kaufman<br>Rosalind B. Bienvenu<br>Caren I. Friedman<br>Durahm, Pittard & Spalding, LLC<br>505 Cerrillos Road, Suite A209<br>Santa Fe, NM 87501<br>jkaufman@dpslawgroup.com<br>rbienvenu@dpslawgroup.com<br>cfriedman@dpslawgroup.com<br><br>E. Todd Tracy<br>The Tracy Firm<br>4701 Bengal Street<br>Dallas, TX 75235<br>ttracy@vehiclesafetyfirm.com<br>*Attorneys for Plaintiffs* | David W. Peterson<br>Jennings Haug Keleher McLeod<br>201 Third Street NW, Suite 1200<br>Albuquerque, NM 87102<br>dwp@jhkmlaw.com<br>*Attorney for Laguna Development*<br>*Corporation d/b/a Route 66 Casino Hotel* |
| Philip Thompson<br>Pegue & Thompson<br>202 East Marcy Street<br>Santa Fe, NM 87501<br>pht@peguethompsonlaw.com<br>*Attorney for NM Department of*<br>*Transportation* | |

MODRALL SPERLING ROEHL HARRIS
   & SISK, P.A.


By:  /s/ Tomas J. Garcia
      Tomas J. Garcia

W4375221.DOCX

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/11/2022 12:57 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**                No. **D-101-cv-2022-00034**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

         **Plaintiffs,**

v.

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

         **Defendants.**

## REQUEST FOR HEARING

1.    Jury: **___X___**    Non Jury _____

2.    Judge to whom assigned: **Honorable Matthew J. Wilson**

3.    Specific matter(s) to be heard upon this request: **Rule 16(B) Scheduling Conference**

5.    Estimated time for hearing all parties and witnesses: **Fifteen (15) minutes**

6.    Date pretrial order was filed or date of pretrial conference: **N/A**

7.    There are/are not any hearings presently set; and if so when: **None**.

8.    Attach separate sheet(s) listing name, firm, capacity, address, and telephone number of all parties entitled to notice. **Attached.**

9.    Submitted by: **Counsel to Plaintiffs**

         Respectfully submitted,

         **DURHAM, PITTARD & SPALDING, L.L.P.**

<u>/s/ Justin R. Kaufman</u>
Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
505 Cerrillos Road, Suite A209
Santa Fe, NM  87501
Telephone:  (505) 986-0600
Facsimile:  (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

Christopher J. DeLara
Christopher J. Supik
David C. Odegard
**DELARA | SUPIK | ODEGARD P.C.**
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

E. Todd Tracy
**THE TRACY LAW FIRM**
4701 Bengal Street
Dallas, TX  75235
Telephone:  (214) 324-9000
ttracy@vehiclesafetyfirm.com

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the foregoing instrument will be served on all counsel via the e-filing system on the 11th day of April, 2022.

*/s/ Justin R. Kaufman*
Justin R. Kaufman

## <u>PARTIES ENTITLED TO NOTICE</u>

**<u>Plaintiffs' Counsel:</u>**
Christopher J. DeLara
Christopher J. Supik
David C. Odegard
**DELARA | SUPIK | ODEGARD P.C.**
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
**DURHAM, PITTARD & SPALDING, L.L.P.**
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
**THE TRACY FIRM**
4701 Bengal Street
Dallas, Texas 75235
Telephone: (214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

**<u>Defendants' Counsel:</u>**
Philip Thompson
**PEGUE & THOMPSON, A PARTNERSHIP**
210 Montezuma Avenue, Suite 220
Santa Fe, NM  87501
Telephone:  (505) 772-0437
pht@geguethompsonlaw.com

*Attorney for Defendant New Mexico*
*Department of Transportation*

David W. Peterson
**JENNINGS HAUG KELEHER MCLEOD LLP**
PO Box AA
Albuquerque, NM  87103
Telephone:  (505) 346-4646
Facsimile:  (505) 346-1370
dwp@jhkmlaw.com

*Attorneys for the LDC Defendants*

Tomas J. Garcia
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
500 Fourth Street NW, Suite 1000
Albuquerque, NM  87102
tomas.garcia@modrall.com

*Attorneys for Defendant FCA US LLC*

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/12/2022 9:04 AM
KATHLEEN VIGIL CLERK OF THE COURT
Marina Sisneros

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

BARRY GREEN, as Personal Representative
Of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

        Plaintiffs,

v.                                                                                    D-101-CV-2022-00034

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate OF LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC.

        Defendants.

## <u>ORDER GRANTING JOINT MOTION TO DISMISS<br>PUNITIVE DAMAGE CLAIMS AGAINST DEFENDANT FCA US LLC</u>

THIS MATTER having come before the Court upon the Plaintiffs' and FCA US LLC's

Joint Motion to Dismiss Plaintiffs' Punitive Damages Claims against Defendant FCA US LLC,

and the Court otherwise being fully advised of the agreement between Plaintiffs and FCA US LLC,

the Court hereby finds the Motion is well-taken and should be GRANTED.

It is therefore ORDERED that the Motion is GRANTED and Plaintiff's Punitive Damages

claims are dismissed with prejudice against Defendant FCA US LLC only.

IT IS SO ORDERED.

                                                       4/12/2022

                    THE HONORABLE MATTHEW J. WILSON
                    DISTRICT COURT JUDGE

APPROVED BY:

MODRALL, SPERLING, ROEHL, HARRIS
    & SISK, P.A.

By: */s/Tomas J. Garcia*
    Tomas J. Garcia
    500 Fourth Street NW, Suite 1000
    Albuquerque, New Mexico  87102
    Telephone: 505.848.1800
    tomas.garcia@modrall.com
    *Attorneys for Defendant FCA US LLC*

  -and-
DURHAM, PITTARD & SPALDING, LLP

By: *Approved via e-mail 4/7/22*
    Justin R. Kaufman
    Rosalinda B. Bienvenu
    Caren I. Friedman
    505 Cerrillos Road, Suite A209
    Santa Fe, NM 87501

DELARA | SUPIK | ODEGARD PC

    Christopher J. DeLara
    Christopher J. Supik
    David C. Odegard
    P.O. Box 91596
    Albuquerque, NM 87199-1596

THE TRACY LAW FIRM

    E. Todd Tracy
    4701 Bengal Street
    Dallas, TX 75235

*Attorneys for Plaintiffs*

*File0001.DOCX*

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/13/2022 4:43 PM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

        **Plaintiffs,**

**vs.**                    **No. D-101-CV-2022-00034**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

        **Defendants.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 13, 2022, I caused *Laguna Development*
*Corporation's Supplemental Answers to Plaintiff Barry Green, as Personal Representative of the*
*Wrongful Death Estate of Roland Lahi's Interrogatory Number 27 and Request for Production*
*Number 14,* along with bates-stamped documents labeled LDC000001-LDC000015 to be e-
mailed to the following counsel:

| | |
|---|---|
| DELARA \| SUPIK \| ODEGARD P.C. | Justin R. Kaufman |
| Christopher J. DeLara | Rosalind B. Bienvenu |
| Christopher J. Supik | Caren I. Friedman |
| David C. Odegard | DURHAM, PITTARD & SPALDING, L.L.P. |
| P.O. Box 91596 | 505 Cerrillos Road, Suite A209 |
| Albuquerque, NM 87199-1596 | Santa Fe, NM 87501 |
| (505) 999-1500 | (505) 986-0600 |
| chris@delaralaw.com | jkaufman@dpslawgroup.com |
| supik@delaralaw.com | rbienvenu@dpslawgroup.com |
| odegard@delaralaw.com | cfriedman@dpslawgroup.com |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |

E. Todd Tracy
THE TRACY FIRM
4701 Bengal Street
Dallas, TX 75235
(214) 324-9000
ttracy@vehiclesafetyfirm.com
*Attorneys for Plaintiffs*

PEGUE & THOMPSON, a Partnership
Philip Thompson
210 Montezuma Avenue Suite 220
Santa Fe, NM 87501
(505) 772-0437
pht@peguethompsonlaw.com
*Attorneys for Defendant*
*New Mexico Department of Transportation*

Tomas J. Garcia
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
500 Fourth Street NW, Suite 1000
Albuquerque, New Mexico 87102
Tel: (505) 848-1800
Tomas.garcia@modrall.com
*Attorneys for FCA US LLC*

Respectfully submitted,

JENNINGS HAUG KELEHER McLEOD LLP

By  */s/ David W. Peterson*
David W. Peterson
P. O. Box AA
Albuquerque, NM  87103
Telephone: (505) 346-4646
Facsimile: (505) 346-1370
*Attorneys for Defendant*
*Laguna Development Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of April, 2022, I filed the foregoing electronically through the Odyssey File & Serve System, which caused all parties or counsel to be served by electronic means, and, I also emailed the foregoing Certificate of Service to the following counsel of record:

DELARA | SUPIK | ODEGARD P.C.
Christopher J. DeLara
Christopher J. Supik
David C. Odegard
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com
*Attorneys for Plaintiffs*

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
DURHAM, PITTARD & SPALDING, L.L.P.
505 Cerrillos Road, Suite A209
Santa Fe, NM 87501
(505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com
*Attorneys for Plaintiffs*

E. Todd Tracy
THE TRACY FIRM
4701 Bengal Street
Dallas, TX 75235
(214) 324-9000
ttracy@vehiclesafetyfirm.com
*Attorneys for Plaintiffs*

PEGUE & THOMPSON, a Partnership
Philip Thompson
210 Montezuma Avenue Suite 220
Santa Fe, NM 87501
(505) 772-0437
pht@peguethompsonlaw.com
*Attorneys for Defendant*
*New Mexico Department of Transportation*

Tomas J. Garcia
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
500 Fourth Street NW, Suite 1000
Albuquerque, New Mexico 87102
Tel: (505) 848-1800
Tomas.garcia@modrall.com
*Attorneys for FCA US LLC*

*/s/ David W. Peterson*
David W. Peterson

NM13295.27/50D1611.DOC

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/13/2022 3:01 PM
KATHLEEN VIGIL CLERK OF THE COURT
Gloria Landin

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

           **Plaintiffs,**

v.

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

           **Defendants.**

**No. D-101-cv-2022-00034**

## NOTICE OF HEARING

    **NOTICE IS HEREBY GIVEN** that this matter has been called for hearing before the

Court, for the time, place, date and purpose indicated:

DATE:  **May 9, 2022**

TIME:  **3:00 p.m.**

PLACE:  **Via Google Meet**

PURPOSE OF HEARING:   **Rule 1-016(B) Scheduling Conference**

TIME ALLOCATED: **Fifteen (15) minutes**

JUDGE ASSIGNED:  **Honorable Matthew J. Wilson**


**Please see attached instructions for Case Scheduling Report**

**REMOTE ACCESS:**

Until the current operating guidelines for the New Mexico Courts that have been put in place concerning the Coronavirus are modified, parties and attorneys are to appear remotely for all hearings. Parties and attorneys may appear by video at **meet.google.com/bbu-aujx-qfx** (video appearance is preferred) or by calling **1-336-949-8079** and entering pin number **862702640#**. As changes are being made frequently, please visit the court website firstdistrictcourt.nmcourts.gov the day before your hearing. Once at the court website, click on District Court Judges and scroll down to Judge Matthew J. Wilson, Division IX, then click on View Calendar for up to date information on how to appear remotely.

**\*\*NOTE\*\*** Due to the high volume of cases in this Division, this Court may not be able to accommodate notices of dates of unavailability.

**\*\*\*NOTE\*\*** Parties are to assume all proceedings are on FTR. If the parties want transcripts, they should make arrangements in advance to provide their own court reporter.

_Jessica Vigil_
Trial Court Administrative Assistant

I hereby certify that I caused a true and correct copy of the foregoing pleading to be mailed to counsel on date of filing.

# PARTIES ENTITLED TO NOTICE

**Plaintiffs' Counsel:**
Christopher J. DeLara
Christopher J. Supik
David C. Odegard
**DELARA | SUPIK | ODEGARD P.C.**
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
**DURHAM, PITTARD & SPALDING, L.L.P.**
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
**THE TRACY FIRM**
4701 Bengal Street
Dallas, Texas 75235
Telephone: (214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

**Defendants' Counsel:**
Philip Thompson
**PEGUE & THOMPSON, A PARTNERSHIP**
210 Montezuma Avenue, Suite 220
Santa Fe, NM  87501
Telephone:  (505) 772-0437
pht@geguethompsonlaw.com

*Attorney for Defendant New Mexico*
*Department of Transportation*

David W. Peterson
**JENNINGS HAUG KELEHER MCLEOD LLP**
PO Box AA
Albuquerque, NM  87103
Telephone:  (505) 346-4646
Facsimile:  (505) 346-1370
dwp@jhkmlaw.com

*Attorneys for the LDC Defendants*

Tomas J. Garcia
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
500 Fourth Street NW, Suite 1000
Albuquerque, NM  87102
tomas.garcia@modrall.com

*Attorneys for Defendant FCA US LLC*

## Instructions for Case Scheduling Conference

Judge Matthew J. Wilson has adopted a case management process which includes an early case scheduling conference with the Court. The goal of the case management process is to put in place a schedule designed to achieve resolution of the case in as timely and inexpensive a manner as possible given the issues in the case. Most civil cases are resolved through settlement; therefore, one goal of the case management process is to schedule an early settlement conference, usually within four to six months of the date the answer is filed. Prior to the early settlement conference, discovery should be targeted toward those matters which are necessary to discuss early settlement of the case. If early settlement is not achieved, the case will proceed through additional discovery as necessary for trial.

In anticipation of the case scheduling conference, counsel is directed to meet and confer on the following issues:

**1. Ready for Trial Date**

In most cases, the court anticipates that cases will be ready for trial approximately 12 to 18 months after the answer is filed. Simpler cases may be ready earlier and complex cases may require additional time. In preparation for the Case Scheduling Conference, counsel must discuss a Ready for Trial Date. If counsel agrees upon a Ready for Trial Date, the court will set the matter on the first trial docket after the Ready for Trial Date. If counsel does not agree on a Ready for Trial Date, the court will set the case for trial at the Scheduling Conference. **Because the trial date will be established either by agreement of counsel or after consideration by the court at the case scheduling conference, counsel should assume that the trial will <u>not</u> be continued.**

**2. Estimated Length of Trial**

Counsel should make an effort to estimate the number of trial days needed for the trial of the case.

**3. Discovery Necessary for Early Settlement Conference**

Counsel should confer to determine what specific discovery is essential so that the parties can engage in good faith settlement discussions at the earliest possible date. Limited written discovery and targeted depositions are encouraged, focused on the issues necessary for good faith settlement discussions. If early settlement is not successful, the time remaining until the scheduled trial may be used for discovery for trial. Counsel should **not** expect that the trial date will be rescheduled if early settlement is not successful.

**4. Early Settlement Conference Deadline**

In most cases, the court anticipates that a case should be ready for early settlement conference within four to six months after the answer is filed. Counsel will be

required to file a report with the court on the outcome of the early settlement conference.

**5. Alternative Dispute Resolution Process**

The Court will order some form of alternative dispute resolution process for early settlement conference. The Court reserves the right to order additional settlement conferences if deemed appropriate. Counsel may agree or request one of the following options for ADR:

1) Agreement for referral to a specific settlement referee or mediator; or

3) Some other form of ADR to fully explore settlement prior to trial.

Counsel must meet and confer on the matters listed above in advance of the Case Scheduling Conference. Pro se parties are also required to meet and confer. **At least three (3) business days prior to the Case Scheduling Conference, counsel must file a Case Scheduling Status Report following the format attached.** Counsel must file the Case Scheduling Status Report even if agreement is not reached as to some matters. Counsel shall also provide a copy of the Case Scheduling Status Report to sfeddiv9proposedtxt@nmcourts.gov. Counsel may modify the Case Scheduling Status Report if there are other matters to be addressed at the conference.

**If counsel reach agreement as to all matters on the case scheduling status report and file the report at least three days prior to the case scheduling conference, the case scheduling conference will be vacated and the court will issue a scheduling order consistent with the dates agreed to by the parties.**

If counsel disagrees as to any matters in the Case Scheduling Status Report, the Scheduling Conference will proceed as scheduled. If it will reduce the cost to the client, counsel is encouraged to appear telephonically for the Scheduling Conference through Court Call. Counsel shall make arrangements through Court Call by calling (888)882-6878 at least three (3) business days prior to the hearing.

STATE OF NEW MEXICO
COUNTY OF
FIRST DISTRICT COURT

_____,

**Plaintiff,**

v.                                                    No. _____

_____,

**Defendants.**

## CASE SCHEDULING STATUS REPORT

Counsel having conferred on the matters as directed by the Court in the Instructions for

Case Scheduling Conference reports to the Court as follows:

This case is a [  ] Jury Trial    or    [  ] Non-Jury Trial

1.    **Ready for Trial Date**

    [  ]    Agreement Reached _____(mm/dd/yr)

    [  ]    Agreed, Ready for Trial

    [  ]    No Agreement Reached

2.    **Estimated Length of Trial**

    _____ Trial Days

3.    **Discovery Necessary for Early Settlement Conference**

    [  ]    Agreement Reached

    [  ]    Agreed Discovery    _____

    [  ]    Written Discovery    _____

    [  ]    Depositions:    _____

[ ]   Other Discovery: _____

[ ]   No Agreement Reached

**4.    Early Settlement Conference Deadline**

[ ]   Agreed Early Settlement Deadline _____(mm/dd/yr)

[ ]   No Agreement Reached

**5.    ADR  Process**

Date Complaint Filed: _____

Type of Case:

[  ]   Civil Rights
[  ]   Commercial / Business
[  ]   Contract / Debt and Money Due
[  ]   Construction
[  ]   Domestic Matters
[  ]   Employment / Labor
[  ]   Estates, Wills, Trusts, Probate
[  ]   Natural Resources
[  ]   Real Estate
[  ]   Tort Auto
[  ]   Tort Malpractice, Product Liability
[  ]   Tort Other

[ ]   Parties have agreed to the appointment of their own settlement referee or mediator

Name of settlement referee or mediator: _____

[ ]   Other ADR procedure agreed to by the parties as described below:

_____

[ ]   No Agreement Reached

**5.    Other Matters:** _____

_____

Respectfully submitted,

_____
Attorney Name, Address, and all contact
Information, including fax and email.
*Attorneys for Plaintiff*

_____
Attorney Name, Address, and all contact
Information, including fax and email.
*Attorneys for Defendant*

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/18/2022 4:52 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

BARRY GREEN, as Personal Representative
Of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as Guardian
ad Litem of A.S. and A.S., minor children,

      Plaintiff,

vs.            No. D-101-CV-2022-00034

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORATATION AND FCA US, LLC.,

   Defendants.

### DEFENDANT FCA US, LLC'S TWELVE PERSON JURY DEMAND

COMES NOW Defendant FCA US, LLC, by and through its attorneys, Modrall,

Sperling, Roehl, Harris & Sisk, P.A. (Tomas J. Garcia), and hereby demands a jury of twelve

(12) persons. A Jury Demand for a jury of six was previously filed by the Plaintiffs in this matter

on January 6, 2022.  A Demand for Jury Trial was filed by New Mexico Department of

Transportation on March 1, 2022.  Pursuant to Rule 1-038 NMRA, Defendant FCA US, LLC

tenders to the Clerk of the Court herewith the sum of $150.00 for an additional six (6) persons.

      MODRALL, SPERLING, ROEHL, HARRIS
       & SISK, P.A.

     By:*/s/ Tomas J. Garcia*
       Tomas J. Garcia
       500 Fourth Street NW, Suite 1000
       Albuquerque, New Mexico  87102
       Telephone: 505.848.1800
       tomas.garcia@modrall.com
       *Attorney for FCA US, LLC*

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing pleading was submitted for e-filing and service through "Odyssey File & Serve" and e-mailed to the following counsel of record this 18th day of April, 2022:

| | |
|---|---|
| Christopher J. DeLara<br>Christopher J. Supik<br>David C. Odegard<br>Delara Law<br>P.O. Box 91596<br>Albuquerque, NM 87199-1596<br>Chris@delaralaw.com<br>supik@delaralaw.com<br>odegard@delaralaw.com<br><br>Justin R. Kaufman<br>Rosalind B. Bienvenu<br>Caren I. Friedman<br>Durahm, Pittard & Spalding, LLC<br>505 Cerrillos Road, Suite A209<br>Santa Fe, NM 87501<br>jkaufman@dpslawgroup.com<br>rbienvenu@dpslawgroup.com<br>cfriedman@dpslawgroup.com<br><br>E. Todd Tracy<br>The Tracy Firm<br>4701 Bengal Street<br>Dallas, TX 75235<br>ttracy@vehiclesafetyfirm.com<br><br>*Attorneys for Plaintiffs* | David W. Peterson<br>Jennings Haug Keleher McLeod<br>201 Third Street NW, Suite 1200<br>Albuquerque, NM  87102<br>dwp@jhkmlaw.com<br>*Attorney for Laguna Development*<br>*Corporation d/b/a Route 66 Casino Hotel* |
| Philip Thompson<br>Pegue & Thompson<br>202 East Marcy Street<br>Santa Fe, NM 87501<br>pht@peguethompsonlaw.com<br>*Attorney for NM Department of*<br>*Transportation* | |

MODRALL SPERLING ROEHL HARRIS
    & SISK, P.A.


By:  */s/ Tomas J. Garcia*
     Tomas J. Garcia

W4384699.DOCX

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/21/2022 3:17 PM
KATHLEEN VIGIL CLERK OF THE COURT
Leticia Cunningham

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICAL DISTRICT

D-101-CV-2022-00034

BARRY GREEN, as Personal Representative
of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as
Guardian ad Litem of A.S. and A.S., minor
children,

       Plaintiffs,

v.

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORTATION, and FCA US LLC,

      Defendants.

## CERTIFICATE OF SERVICE

    The undersigned certifies that Plaintiff Barry Green, as Personal Representative of the

Wrongful Death Estate of Rolanda Lahi's First Set of Interrogatories and Requests for Production

to Defendant Jesse Orozco; Plaintiff Barry Green, as Personal Representative of the Wrongful

Death Estate of Rolanda Lahi's First Set of Interrogatories and Requests for Production to

Defendant Edward Khader; as well as Plaintiff Barry Green, as Personal Representative of the

Wrongful Death Estate of Rolanda Lahi's First Set of Interrogatories and Requests for Production

to Defendant Adrian Fox were emailed on this 21st day of April, 2022 to:

David W. Peterson
Jennings Haug Keleher McLeod LLP
P.O. Box AA
Albuquerque, NM 87103
(505) 346-4646
dwp@jhkmlaw.com
*Attorneys for the Route 66 Defendants*

And to:

Philip Thompson
Pegue & Thompson
202 East Marcy Street
Santa Fe, NM 87501
(505) 395-9558
pht@peguethompsonlaw.com
*Attorney for New Mexico Department of
Transportation*

Tomas J. Garcia
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
500 Fourth St. NW, Suite 1000
Albuquerque, NM 87102
(505) 848-1800
tomas.garcia@modrall.com
*Attorney for FCA US, LLC*

DELARA | SUPIK | ODEGARD P.C.


By ___*/s/ Christopher J. Supik*___
       Christopher J. DeLara
       Christopher J. Supik
       David C. Odegard
       P.O. Box 91596
       Albuquerque, NM 87199-1596
       (505) 999-1500
       chris@delaralaw.com
       supik@delaralaw.com
       odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
DURHAM, PITTARD & SPALDING, L.L.P.
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
THE TRACY FIRM
4701 Bengal Street
Dallas, Texas 75235
Telephone: (214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

I HEREBY CERTIFY that on the 21st day of April, 2022, I filed the foregoing Certificate of Service electronically through the State of New Mexico's Odyssey File & Serve system, requesting that the following counsel be served through Odyssey:

David W. Peterson
Jennings Haug Keleher McLeod LLP
P.O. Box AA
Albuquerque, NM 87103
(505) 346-4646
dwp@jhkmlaw.com
*Attorneys for the Route 66 Defendants*

Philip Thompson
Pegue & Thompson
202 East Marcy Street
Santa Fe, NM 87501
(505) 395-9558
pht@peguethompsonlaw.com
*Attorney for New Mexico Department of Transportation*

Tomas J. Garcia
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
500 Fourth St. NW, Suite 1000
Albuquerque, NM 87102
(505) 848-1800
tomas.garcia@modrall.com
*Attorney for FCA US, LLC*


*/s/ Christopher J. Supik*

4

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/22/2022 9:15 AM
KATHLEEN VIGIL CLERK OF THE COURT
Monica Chavez Crespin

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

       **Plaintiffs,**

**vs.**                                          **No. D-101-CV-2022-00034**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

       **Defendants.**

**STIPULATED CONFIDENTIALITY ORDER**
**REGARDING SURVEILLANCE VIDEO OF TRIBAL GAMING ENTERPRISE**

THIS MATTER having come before the Court upon the stipulation of the parties for an

order approving disclosure of confidential materials and providing for confidentiality.

THIS COURT FINDS THAT casino surveillance video that Laguna Development

Corporation intends to produce are confidential records entitled protection from disclosure as

provided herein.

IT IS THEREFORE ORDERED that counsel receiving surveillance video from Laguna

Development shall not disseminate or disclose the surveillance videos, except to their employees,

expert witness, their direct client, a lawyer acting as mediator of this case, and at hearing or trial

of the instant matter. *Prior to allowing such employees, expert, client, or mediator view the*

*surveillance video, the parties shall first obtain from that person a written agreement that such*

*person is bound by the force of this Order.* This requirement may be satisfied by obtaining the signature of any such person on a copy of this Order after having explained the contents and meaning of this Order to such person.

Also, hard copy records produced pursuant to this order shall be returned to Defendant Laguna's counsel for destruction at the conclusion of the last legal proceeding underlying the incident subject to the instant lawsuit.

Nothing herein is intended to waive claims or defenses including jurisdictional defenses, to waive or concede any discovery objections, or preclude any party from arguing to the Court any position regarding discovery.

Nothing herein shall be deemed a waiver of or limit Plaintiffs' motion practice in relation to any disputed issues of confidentiality. However, any such motion practice shall await the Court's determination of the Laguna Development Defendants' Rule 1-012(B)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Nothing herein shall be deemed a waiver of any of Plaintiffs' causes of action against Defendant Laguna and its employees and/or agents, including Plaintiffs' claim for Intentional Spoliation of Evidence.

4/22/2022

HONORABLE MATTHEW JUSTIN WILSON
DISTRICT COURT JUDGE

Submitted by:

JENNINGS HAUG KELEHER McLEOD LLP

By  */s/ David W. Peterson*
David W. Peterson
P. O. Box AA
Albuquerque, NM  87103
Telephone: (505) 346-4646
Facsimile: (505) 346-1370
dwp@jhkmlaw.com
*Attorneys for Defendant*
*Laguna Development Corporation*

Approved by:

 *Via email on 4/14/2022*
Christopher J. Supik
Christopher DeLara
David C. Odegard
DeLara | Supik | Odegard P.C.
P.O. Box 91596
Albuquerque, NM 87199
Telephone: (505) 999-1500
supik@delaralaw.com
chris@delaralaw.com
odegard@delaralaw.com
*Attorneys for Plaintiffs*

        and

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
DURHAM, PITTARD & SPALDING, L.L.P.
505 Cerrillos Road, Suite A209
Santa Fe, NM 87501
(505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com
*Attorneys for Plaintiffs*

        and

E. Todd Tracy
THE TRACY FIRM
4701 Bengal Street
Dallas, Texas 75235
Tel: (214) 324-9000
ttracy@vehiclesafetyfirm.com
*Attorneys for Plaintiffs*


Approved by:


  *Via email on 3/11/2022*
Philip Thompson
PEGUE & THOMPSON
202 East Marcy Street
Santa Fe, New Mexico 87501
Tel: (505) 395-9558
pht@peguethompsonlaw.com
*Attorney for New Mexico Department of Transportation*


Approved by:


  *Via email on 4/21/2022*
Tomas J. Garcia
MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.
500 Fourth Street NW, Suite 1000
Albuquerque, New Mexico 87102
Tel: (505) 848-1800
Tomas.garcia@modrall.com
*Attorneys for FCA US LLC*


NM13295-27/D-101-CV-2022-00034, Stipulated
Confidentiality Order re Surveillance Video.doc

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/22/2022 1:23 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICAL DISTRICT COURT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

        **Plaintiffs,**

v.

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

        **Defendants.**

**No. D-101-cv-2022-00034**

## CASE SCHEDULING STATUS REPORT

Counsel having conferred on the matters as directed by the Court in the Instructions for

Case Scheduling Conference reports to the Court as follows:

This case is a [**X**] Jury Trial   or    [ ] Non-jury Trial

**1.**    **Ready for Trial Date**

    [**X**]    Agreement reached

    [**X**]    Agreed, Ready for Trial:    **October/November 2023**

    [ ]    No agreement reached

**2**.    **Estimated Length of Trial:**

    **15 Trial Days**

**3.**    **Discovery Necessary for Early Settlement Conference**

    [**X**]    Agreement reached

    [ ]    Agreed discovery:       _____

    [**X**]    Written discovery:    **RFPs, Rogs, and RFAs to Defendants, RFPs,**

                                              **Rogs, and RFAs to Plaintiffs**

[X]   Depositions:         **Defendants, Defendants' employees and agents, investigating police, emergency responders, representatives from the Office of the Medical Examiner (OMI), Rosana Tom, and Defendants' Corporate Representatives**

[ ]   Other discovery:     _____

[ ]   No Agreement Reached

**4.**    **Early Settlement Conference Deadline**

    [X]   Agreed Early Settlement Deadline:    **July 7, 2023**

    [ ]   No Agreement reached

**5.**    **ADR Process**

    Date complaint filed:  **January 6, 2022**

    Type of Case:

    [ ]   Civil Rights
    [ ]   Commercial/Business
    [ ]   Contract/Debt and Money Due
    [ ]   Construction
    [ ]   Domestic Matters
    [ ]   Employment/Labor
    [ ]   Estates, Wills, Trusts, Probate
    [ ]   Natural Resources
    [ ]   Real Estate
    [ ]   Tort Auto
    [ ]   Tort Malpractice, Product Liability
    [ ]   Tort
    [ ]   Workers Compensation

    [X]   Parties have agreed to appointment of their own settlement referee or mediator

             Name of settlement referee/mediator: **TBD by the Parties**

[ ]    Other ADR procedure agreed to by the parties as described below:

_____

[ ]    No agreement reached

6.    **Other Matters:** _____ **None**

Respectfully submitted,

**DURHAM, PITTARD & SPALDING, L.L.P.**

By: /s/ *Justin R. Kaufman* _____
    Justin R. Kaufman
    Rosalind B. Bienvenu
    Caren I. Friedman
    505 Cerrillos Rd., Suite A209
    Santa Fe, New Mexico 87501
    Telephone:  (505) 986-0600
    Facsimile:  (505) 986-0632
    jkaufman@dpslawgroup.com
    rbienvenu@dpslawgroup.com
    cfriedman@dpslawgroup.com

    Christopher J. DeLara
    Christopher J. Supik
    David C. Odegard
    **DELARA | SUPIK | ODEGARD P.C.**
    P.O. Box 91596
    Albuquerque, NM 87199-1596
    (505) 999-1500
    chris@delaralaw.com
    supik@delaralaw.com
    odegard@delaralaw.com

    E. Todd Tracy
    **THE TRACY LAW FIRM**
    4701 Bengal Street
    Dallas, TX  75235
    Telephone:  (214) 324-9000
    ttracy@vehiclesafetyfirm.com

3

*Attorneys for Plaintiff*

**Approved By:**

/s/ *Philip Thompson*
Philip Thompson
**PEGUE & THOMPSON, A PARTNERSHIP**
210 Montezuma Avenue, Suite 220
Santa Fe, NM  87501
Telephone:  (505) 772-0437
pht@geguethompsonlaw.com

*Attorney for Defendant New Mexico*
*Department of Transportation*

/s/ *David W. Peterson*
David W. Peterson
**JENNINGS HAUG KELEHER MCLEOD LLP**
PO Box AA
Albuquerque, NM  87103
Telephone:  (505) 346-4646
Facsimile:  (505) 346-1370
dwp@jhkmlaw.com

*Attorneys for the LDC Defendants*

/s/ *Tomas J. Garcia*
Tomas J. Garcia
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
500 Fourth Street NW, Suite 1000
Albuquerque, NM  87102
tomas.garcia@modrall.com

*Attorneys for Defendant FCA US LLC*

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the foregoing has been e-served to all counsel of record on the 22nd day of April, 2022, via electronic service:

<u>/s/ Justin R. Kaufman</u>
Justin R. Kaufman

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/28/2022 1:53 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

BARRY GREEN, as Personal Representative
Of the Wrongful Death Estate of ROLANDA
LAHI, deceased, and FELIZ RAEL, as Guardian
ad Litem of A.S. and A.S., minor children,

        Plaintiff,

vs.                                      No. D-101-CV-2022-00034

LAGUNA DEVELOPMENT CORPORATION
d/b/a ROUTE 66 CASINO HOTEL, EDWARD
KHADER, ADRIAN FOX, JESSE OROZCO,
the Estate of LUCAS LEE, STATE OF NEW
MEXICO, NEW MEXICO DEPARTMENT OF
TRANSPORATATION AND FCA US, LLC.,

        Defendants.

## CERTIFICATE OF SERVICE

    I hereby certify that on the 28th day of April, 2022, Defendant, FCA US, LLC's Responses to Plaintiff's First Set of Requests for Production, along with a copy of this Certificate of Service were served via e-mail to:

| | |
|---|---|
| Christopher J. DeLara<br>Christopher J. Supik<br>David C. Odegard<br>Delara Law<br>P.O. Box 91596<br>Albuquerque, NM 87199-1596<br>Chris@delaralaw.com<br>supik@delaralaw.com<br>odegard@delaralaw.com | David W. Peterson<br>Jennings Haug Keleher McLeod<br>201 Third Street NW, Suite 1200<br>Albuquerque, NM  87102<br>dwp@jhkmlaw.com<br>*Attorney for Laguna Development*<br>*Corporation d/b/a Route 66 Casino Hotel* |

| | |
|---|---|
| Justin R. Kaufman<br>Rosalind B. Bienvenu<br>Caren I. Friedman<br>Durahm, Pittard & Spalding, LLC<br>505 Cerrillos Road, Suite A209<br>Santa Fe, NM 87501<br>jkaufman@dpslawgroup.com<br>rbienvenu@dpslawgroup.com<br>cfriedman@dpslawgroup.com<br><br>E. Todd Tracy<br>The Tracy Firm<br>4701 Bengal Street<br>Dallas, TX 75235<br>ttracy@vehiclesafetyfirm.com<br>*Attorneys for Plaintiffs* | |
| Philip Thompson<br>Pegue & Thompson<br>202 East Marcy Street<br>Santa Fe, NM 87501<br>pht@peguethompsonlaw.com<br>*Attorney for NM Department of Transportation* | |

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By: */s/Tomas J. Garcia*
    Tomas J. Garcia
    Amanda Krasulick
    500 Fourth Street NW, Suite 1000
    Albuquerque, New Mexico  87102
    Telephone: 505.848.1800
    tomas.garcia@modrall.com
    amanda.krasulick@modrall.com
    *Attorneys for Arizona Public Service Co.*

*W4394849.DOCX*

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/29/2022 2:58 PM
KATHLEEN VIGIL CLERK OF THE COURT
Bernadette Hernandez

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

**BARRY GREEN, as Personal Representative**
**of the Wrongful Death Estate of ROLANDA**
**LAHI, deceased, and FELIZ RAEL, as**
**Guardian ad Litem of A.S. and A.S., minor**
**children,**

        **Plaintiffs,**

vs.                                                                     **No. D-101-CV-2022-00034**

**LAGUNA DEVELOPMENT CORPORATION**
**d/b/a ROUTE 66 CASINO HOTEL, EDWARD**
**KHADER, ADRIAN FOX, JESSE OROZCO,**
**the Estate of LUCAS LEE, STATE OF NEW**
**MEXICO, NEW MEXICO DEPARTMENT OF**
**TRANSPORTATION, and FCA US LLC,**

        **Defendants.**

<u>**RULE 16(B) SCHEDULING ORDER**</u>
<u>**JURY**</u>

      Pursuant to Rule 1-016(B), NMRA, the Court herewith establishes the following schedule

governing this case:

      1.   **MEDIATION/SETTLEMENT CONFERENCE DEADLINE.** The parties shall

conduct a mediation or settlement conference on or before <u>**July 7, 2023,**</u> unless the parties have

already completed a mediation or settlement conference.  This deadline may <u>not</u> be extended by

agreement of counsel and will only be extended by Court Order for truly exceptional circumstances.

Counsel shall complete the discovery necessary for good faith settlement discussions in advance of

the mediation or settlement conference.  Counsel shall either file a Request for Referral to Settlement

Conference for a referral to a qualified settlement facilitator through the Court's Alternative Dispute

Resolution ("ADR") Program, or they may make their own arrangements for a private mediator or

settlement facilitator. An information sheet with directions for using the Court's ADR Program is attached. Within five days of the mediation or settlement conference, counsel or the mediator/settlement facilitator shall file a Certificate of Compliance to report on the outcome of the settlement conference.

2. **JOINDER OF PARTIES.** Additional parties shall not be joined unless otherwise ordered by the Court. If additional parties are joined, such joinder must occur in a sufficiently timely manner so that the Mediation/Settlement Conference deadline and trial setting are not affected.

3. **AMENDMENT OF PLEADINGS.** Motions to Amend the Complaint or Answer will be filed within **four (4) weeks of the date of entry of this Order,** unless otherwise ordered by the Court.

4. **MOTIONS.** Motions addressed to the pleadings (e.g. motions under Rule 1-012(B), (D), (E), or (F) NMRA) shall be filed **within eight (8) weeks of the date of entry of this Order**, unless otherwise ordered by the Court. Motions for Summary Judgment pursuant to Rule 1-056 NMRA and motions to exclude expert testimony, including *Daubert-Alberico* motions, shall be filed no later than **July 17, 2023** unless otherwise ordered by the Court. **All motions will be submitted to the Court via email to sfeddiv9proposedtxt@nmcourts.gov pursuant to the motion package rule in L.R. 1-201(D).**

5. **DISCOVERY.** The time to complete discovery ends **July 3, 2023**, unless otherwise ordered by the Court. Discovery requests shall be served in sufficient time to allow response before the close of the discovery period. Motions to compel are due no later than **five business days after the close of discovery.** Counsel may not by agreement extend this due date. Failure to provide the motion package on motions to compel within 30 days of the discovery deadline set forth herein may result in the trial setting being vacated.

6. **WITNESSES.** The parties shall file a list of expert witnesses expected to testify at trial on or before the dates set forth below:

    **Plaintiff's expert(s) –**    <u>**May 8, 2023**</u>

    **Defendant's Expert(s) –**    <u>**June 5, 2023**</u>.

At the time the expert witnesses are identified, the party presenting the expert witness shall provide to all other parties the following: 1) a current *curriculum vita* of the expert; 2) a written summary of the opinions and the bases therefor that the expert will present at trial; and 3) any written reports that have been prepared by the expert.

The parties shall file a list of all non-expert witnesses expected to testify at trial on or before **<u>April 10, 2023.</u>**

7. **EXHIBITS.** The parties shall file a list of all exhibits expected to be submitted at trial no later than **four (4) weeks before Docket Call**. Parties will file and present a copy to the Court of an exhibit list that contains the exhibits numbered as they will be introduced at trial, identified by name or description, and with three columns to indicate "tendered," "admitted," "objection." Plaintiff will number exhibits Plaintiff's Exhibit P - #; Defendant will number exhibits Defendant's Exhibit D - # (Defendant will not use letters). If there are more than one party per side, then each party will number exhibits with the first letter of the lead party on that side, e.g. if there are two plaintiffs – Brown and Martinez – Brown's exhibits will be marked: Plaintiff's Exhibit B - # and Martinez's exhibits will be marked Plaintiff's Exhibit M - #. Within five working days of service of a party's exhibit list, any party objecting to authenticity shall file written notice of objection.

8. **WITNESSES.** The parties shall file a final list of witnesses expected to testify at trial no later than **four (4) weeks before Docket Call**. Witnesses should be listed as may-call or will-call witnesses. All witnesses should be listed except for rebuttal witnesses, the need for whose testimony

cannot reasonably be anticipated.

9. **DEPOSITION DESIGNATIONS.** The parties shall submit page and line designation of all depositions that each party intends to present at trial **four (4) weeks before Docket Call.** A party shall file objections to the other party's designations and counter-designations **three (3) weeks before Docket Call. If counsel cannot agree on the deposition designations, the proponent of the deposition shall submit to the Court the deposition with page and lines indicated and the objections seven days before the Docket Call.**

10. **MOTIONS IN LIMINE.** Motions *in limine*, except for *Daubert/Alberico* motions shall be filed on or before **six weeks before Docket Call. Responses must be filed four weeks before the Docket Call. No reply briefs are required, and movant must submit the package to the Court four weeks before the Docket Call.** Counsel are reminded that motions in limine are not to be used for matters which are properly addressed in motions for summary judgment or motions to exclude expert testimony. Motions in Limine are to address specific items of evidence or argument, not general propositions.

11. **PRE-TRIAL CONFERENCE.** The pre-trial conference mandated by Rule 1-016(C) NMRA shall be held **November 6, 2023, at 9:00 a.m.** at the **Judge Steve Herrera Judicial Complex, 225 Montezuma Avenue, Santa Fe, New Mexico.** Trial counsel must attend the pre-trial conference.

12. **PRE-TRIAL ORDER.** Plaintiff shall prepare plaintiff's portion of the Pre-Trial Order and submit it to opposing counsel no later than **the date of the pre-trial conference.** Opposing counsel shall file the Pre-Trial Order no later than **two (2) weeks after the pre-trial conference.**

13. **JURY INSTRUCTIONS.** Jury instructions shall be filed and presented to the Court in three packets. One packet shall consist of those instructions which are stipulated to by both parties.

A second packet shall consist of the Plaintiff's additional proposed instructions. The third packet shall consist of the Defendant's additional proposed instructions. All proposed jury instructions shall be filed on or before **seven days before Docket Call**.

14. **TRIAL/DOCKET CALL.** Trial of this matter is set for a trailing docket on **December 4, 2023 at 8.30 A.M.**, at the Judge Steve Herrera Judicial Complex, 225 Montezuma Avenue, Santa Fe, New Mexico. At that time, attorneys and parties must appear for case scheduling and jury selection. **Because the trial date has been set either by agreement of counsel or by the Court at the Scheduling Conference, the trial date will not be continued except in truly exceptional circumstances.** The Court will attempt to work around scheduling conflicts within the trial docket; however, counsel should arrange to have co-counsel or substitute counsel available to try the case if such conflicts cannot be resolved.

**IT IS SO ORDERED.**

4/28/2022

Matthew J. Wilson
District Judge, Division 9

**REMOTE ACCESS:**
Until the current operating guidelines for the New Mexico Courts that have been put in place concerning the Coronavirus are modified, parties and attorneys are to appear remotely for all hearings. Parties and attorneys may appear by video at **meet.google.com/bbu-aujx-qfx** (video appearance is preferred) or by calling **1-336-949-8079** and entering pin number **862702640#**. As changes are being made frequently, please visit the court website firstdistrictcourt.nmcourts.gov the day before your hearing. Once at the court website, click on District Court Judges and scroll down to Judge Matthew J. Wilson, Division IX, then click on View Calendar for up to date information on how to appear remotely.

**REGARDING EXHIBITS:**
If the matter to be heard is an evidentiary hearing and if a party intends to introduce exhibit(s) into evidence at this hearing, the party seeking the introduction of the exhibit(s) into evidence shall provide a copy of the exhibit(s) to the other party. A copy of the exhibit(s) shall be provided to the Court at least 2 days before the hearing in an envelope or a binder with the case caption clearly marked on the envelope or binder. The Court will not review the exhibit(s) prior to the hearing. At the hearing, the Court will review the exhibit(s) for evidentiary purposes if there is no objection to the

admission of the exhibit(s) or the moving party is able to introduce the exhibit(s) into evidence through an appropriate witness or otherwise.

**NOTE** Due to the high volume of cases in this Division, this Court may not be able to accommodate notices of dates of unavailability.

***NOTE** Parties are to assume all proceedings are on FTR. If the parties want transcripts, they should make arrangements in advance to provide their own court reporter.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that copies of this order were e-served on the date of acceptance for e-filing to counsel who registered for e-service as required by the rules and mailed to pro se parties, if any to:

**Plaintiffs' Counsel:**
Christopher J. DeLara
Christopher J. Supik
David C. Odegard
**DELARA | SUPIK | ODEGARD P.C.**
P.O. Box 91596
Albuquerque, NM 87199-1596
(505) 999-1500
chris@delaralaw.com
supik@delaralaw.com
odegard@delaralaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
**DURHAM, PITTARD & SPALDING, L.L.P.**
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

E. Todd Tracy
**THE TRACY FIRM**
4701 Bengal Street
Dallas, Texas 75235

Telephone: (214) 324-9000
ttracy@vehiclesafetyfirm.com

*Attorneys for Plaintiffs*

**Defendants' Counsel:**
Philip Thompson
**PEGUE & THOMPSON, A PARTNERSHIP**
210 Montezuma Avenue, Suite 220
Santa Fe, NM  87501
Telephone:  (505) 772-0437
pht@geguethompsonlaw.com

*Attorney for Defendant New Mexico
Department of Transportation*

David W. Peterson
**JENNINGS HAUG KELEHER MCLEOD LLP**
PO Box AA
Albuquerque, NM  87103
Telephone:  (505) 346-4646
Facsimile:  (505) 346-1370
dwp@jhkmlaw.com

*Attorneys for the LDC Defendants*

Tomas J. Garcia
**MODRALL, SPERLING, ROEHL, HARRIS & SISK, P.A.**
500 Fourth Street NW, Suite 1000
Albuquerque, NM  87102
tomas.garcia@modrall.com

*Attorneys for Defendant FCA US LLC*

Jessica Vigil
TCAA for Judge Matthew J. Wilson

# HOW TO USE THE COURT'S ALTERNATIVE DISPUTE RESOLUTION (ADR) PROGRAM TO REQUEST A REFERRAL TO SETTLEMENT CONFERENCE

1.      Let the Court know you want a settlement conference. If you were referred to a settlement conference by a judge's scheduling order, you must still follow this procedure. This procedure is also used to request a referral to foreclosure mediation.

a.      **Obtain the proper forms:**  get them from the Self Help Center or from the ADR Office: call 505.455.8146 or email:  sfedselfserv@nmcourts.gov.  You can also download the forms from the Court's website:  http://firstdistrictcourt.com.  Use *only* these forms; *do not* make up your own forms.

*If you want the Court to assign a Settlement Facilitator from the Court's list:* Obtain a Request for Referral to Settlement Conference form.  Complete the form.  Settlement Facilitators on the Court's list are attorneys with at least 5 years of experience in the subject matter area who have mediation training and experience.

*If you and the other party have agreed on a Settlement Facilitator (who may be, but is not required to be, a person on the Court's list) and just need a Referral Order,* obtain a "Stipulated Request for Referral to Settlement Conference".  Complete the form.

Then make enough **copies** of the Request for Referral to Settlement Conference for yourself, the judge, the ADR Office, and all the parties.  Make 2 sets of self-addressed, stamped **envelopes** to provide copies of the Request and the Referral Order to all parties or their attorneys.

b.              Then **file the Request in the Court Clerk's office**.

> Effective July 1, 2015 all **attorneys are required to efile all pleadings**.  If you are a Court appointed attorney for Settlement Facilitation, you do not have to pay a fee for efiling Certificates of Compliance, Notices of Non-Compliance, or Requests for Replacement Settlement Facilitator.  Individual attorneys must set up their own accounts to waive filing fees for these cases.  Under the firm admin tab in the Odyssey File and Serve page, set up an account with a name, such as OBO State of NM or Court Appointee, and as a waiver account.  When you are submitting something to be efiled, you will select the "waiver account".  If you have questions about efiling, please contact Tyra J. Martinez at 505.455.8200 or sfedtjm@nmcourts.gov.

> ***Pro se parties:*** **file the Request in the Court Clerk's office** The Clerk's office will keep the original.  Ask the filing clerk to endorse (stamp) each of the copies.  *If you can't go to the Courthouse in person*, you can file by fax (505.455.8280) or mail by mailing the original and copies to the Court Clerk's Office, First Judicial District Court, P. O. Box 2268, Santa Fe, NM 87504-2268.  Be sure to include stamped envelopes, one with your name and address, and one for each party with their name and address.  Include a letter asking the Court Clerk to file your Request, return endorsed copies to you and the other party by mail, and provide a copy to the ADR Office.

c.      Pro se parties:  Take another endorsed copy to the Self Help Center (next to the Court Clerk's offices), along with one set of the self-addressed, stamped envelopes.

d.      *You must also provide copies of the Request you file to all parties.* Use the other set of envelopes to mail the Request to all parties. You must do this yourself; court employees will not mail copies of the Request to the other parties for you.

2.      The ADR Office will assign a settlement facilitator, and will generate a Referral Order, which will be given to the judge's assistant along with the envelopes.

3.      The judge's assistant will get the Order signed by the judge and entered in the court file, and then mail it to the Settlement Facilitator and all parties using the envelopes provided by the person who filed the Request.

**An Order of Referral to Settlement Conference is a court order and *all* of its terms MUST be obeyed by every person to whom it applies!  DO NOT IGNORE ANY PART OF THE REFERRAL ORDER!**

4.      Each party **MUST contact the Settlement Facilitator** within 10 days after entry of the Order to schedule a Settlement Conference. Scheduling of settlement conferences is NOT done by the ADR Office.

5.      Each party must provide the information described on the **Settlement Conference Information Sheet** to the Settlement Facilitator no later than 5 business days before the date selected for the Settlement Conference. *Do not return the Settlement Conference Information Sheet to the ADR Office.* Fill it out completely, and be as specific as you can about the issues. The more information the Settlement Facilitator has, the better he or she will be able to help you.

6.      All the participants – parties *and* their attorneys - in the Settlement Conference except the Settlement Facilitator must complete a short, anonymous, confidential, **evaluation** of the Settlement Facilitator's performance within 5 business days after the Settlement Conference concludes. Completed form should be returned to the Court Constituent Services Division, ADR Office as directed on the evaluation form.

7.      Within 5 business days after the settlement conference, the **Settlement Facilitator** will **file** a **Certificate of Compliance** with the Court Clerk.

8.      If any participant at any time does not comply with any term of the Order, the other participants should remind him/her of the terms of the Order. If non-compliance continues, any other participant may file a **Notice of Non-Compliance** using the court's form. The judge may take any appropriate action in response to the Notice of Non-Compliance.

9.      The Settlement Facilitator or any party may file a **Request for Replacement Settlement Facilitator** using the proper form. *No explanation is required for requesting that the Settlement Facilitator be replaced.* If you use this form, the ADR Office will assign a replacement Settlement Facilitator from the Court's list. If you and the other parties agree on a replacement Settlement Facilitator, use the **Stipulated Request for Replacement Settlement Facilitator.** The rest of the procedures are the same as for a Request for Referral to Settlement Conference.

10.     If your case is referred to settlement conference and you do not feel that a settlement conference will be helpful in resolving it, you may ask the Court's permission not to have a settlement

conference by filing a Motion for Excusal from Settlement Conference (get the form from the FJDC website or the Self Help Center). *Remember, just because you ask for excusal doesn't mean the judge will grant your request.  You must continue to comply with the Referral Order until it is modified by another court Order.*

11.    Settlement Facilitators on the Court's list are paid $500.00, plus applicable taxes, for the first 4 hours, which may include up to an hour of preparation time.  If the case does not settle during that time and the parties agree to continue, the rate is $150.00 per hour, plus applicable taxes, for the next 4 hours.  If the case does not settle within that time, and the parties agree to continue the settlement conference, the parties and the Settlement Facilitator shall agree in writing upon an hourly rate to be paid to the Settlement Facilitator.

Usually, each party will be responsible for payment of one-half of the Settlement Facilitator's fee, plus applicable taxes.

Payment for the first 4 hours must be made prior to the beginning of the settlement conference, unless other arrangements have been made in writing with the Settlement Facilitator.

If you use a settlement facilitator who is not on the Court's list, the Court's fee schedule will not apply.

12.    If you feel you cannot afford the cost of a settlement facilitator, you may file a **Motion for Free or Reduced-Cost Settlement Facilitation.**   Follow the same filing procedures described above for filing a Request for Referral to Settlement Conference.